# EXHIBIT 2

## DECLARATION OF JASON LEWIS

I, Jason Lewis, hereby declare as follows:

1.  I am over 18 years old and I am competent to make this declaration. This declaration is based on my personal knowledge of the facts stated herein.

2.  I am a resident of the State of Missouri in Saint Louis County.

3.  I am currently employed as the General Counsel in the Missouri Attorney General's Office ("AGO").

4.  I began my employment at the AGO on February 1, 2016, as an Assistant Attorney General in the Governmental Affairs Section. In approximately July 2019, I became Assistant Deputy Attorney General for Special Litigation. In approximately July 2021, I became Chief Counsel for the Governmental Affairs Section. In approximately December 2023, I became the AGO's General Counsel.

5.  Given my current position and my history in the AGO, I understand the strategies the AGO uses to recruit and retain attorneys, as well as the motivations of many applicants and employees to join the AGO and work in government service.

6.  Prior to attending law school, I had aspired to work in public service for a government agency. I believe that it is important for citizens, and especially attorneys, to devote time to serving the public and contributing to the functions of government.

7.  There are not many government-agency attorney positions in the St. Louis metropolitan region that matched my interests when I joined the AGO or even now.

1

8.  Following my graduation from law school in 2013, I began working as an Associate at a large law firm in St. Louis, Greensfelder, Hemker & Gale (now UB Greensfelder). I started at Greensfelder in approximately late August or early September 2013. I stayed at the firm until I left to join a smaller law firm in St. Louis County, Dolley Law LLC, where I started on February 2, 2015.

9.  Eventually, I was hired by the Attorney General's Office in early 2016, when a position became available that matched my interests and I was lucky enough to receive an offer after applying. My starting salary was $45,000, which was consistent with the starting salary of an Assistant Attorney General in the AGO with my years of practice at that point. My salary was substantially less than the salary I earned in private practice.

10. In order to attend law school, I needed to assume debt to finance my education.

11. During the course of my law school education, I took out federal Perkins loans, unsubsidized Stafford loans, subsidized Stafford loans, and Graduate PLUS loans. I did not take out any private loans. I did not have, and still do not have, any undergraduate student loans.

12. Shortly after my law school graduation date, I had approximately $150,000 in outstanding federal student loans.

13. In late 2013, after making regular monthly payments and additional large one-time payments to further reduce my loan balance, I consolidated my loans into a direct federal consolidation loan.

2

14. I know many current and former colleagues who were initially attracted to public service not only because of the rewarding and valuable work, but also because eventual public-service loan forgiveness ("PSLF").

15. When I joined the Attorney General's Office, I was drawn by two things. First, I intended to work in government service for about two years in order to do the rewarding work of a government attorney. Second, I knew that if I enjoyed the work, PSLF would be a long-term option that would permit me to stay. It would not be financially feasible for me to have continued to work at a comparatively lower salary without the prospect of student loan forgiveness in 10 years. At the time I joined the Attorney General's Office, I still had over $100,000 in loans even though I was making regular payments.

16. While the comparative benefits of the PSLF program was not the primary factor to my decision to join the AGO unlike with some of my colleagues, it has been critical to my decision to continue to work in public service. The longer I have stayed, the more the comparative benefits of the PSLF program have grown. Those comparative benefits have become a significant part of why I have continued to work in public service.

17. I understand those benefits to be incentivizing employment at lower or comparable wages in public service, which facilitates lower monthly debt payments and the prospect of forgiveness substantially earlier than what is possible via private-industry employment. At any point during my career in the AGO, if programs were rolled out that would have reduced my lower monthly payments or allowed my loans

to be forgiven earlier, it would have been less likely that I would have chosen to advance my career in public service and the AGO.

18. I have no reason to believe that my student loan balance will not be forgiven. I used the federal government's consolidation program to consolidate the different types of loans I had, I did not have any disqualifying private loans, I have consistently worked in qualifying public service employment, and I have been making qualifying payments (or any payment obligations were subject to administrative forbearance) for approximately eight years.

19. The closer I get to making the qualifying 120 payments in order to achieve student loan forgiveness, the more the unique benefits of the PSLF program matter. I have approximately 24 payments left in order to achieve that point.

20. Presently, my student loan balance is at approximately $112,078.11 in principal plus $14,006.13 in accrued interest, with a payoff amount of approximately $126,084.24 as of today's date. The time value of money means that forgiveness of that sum is more valuable at this point than it was over eight years ago when I joined the AGO. In other words, leaving public service when forgiveness is on the horizon would require a substantially higher offer from private-practice law firms in order to make up for losing out on the unique benefits of the PSLF program and public service employment.

21. During the course of my employment in the AGO, I have occasionally searched for other employment opportunities mostly to ensure the benefits of remaining in public service and the AGO (e.g., lower monthly student loan payments

4

through a comparatively lower salary, and the time value of public service loan forgiveness) is still as, or more, financially attractive as it was when I started in the AGO, and I also have been approached by private firms looking to hire me. For example, in late 2021, one private law firm offered me a position that came with a salary, plus a bonus, that was more than I was earning at the AGO. However, it made more financial sense to continue working in public service and the AGO, as at that point I was just over 4 years away from achieving public-service loan forgiveness. My student loan balance at the time was not substantially different than it is now, as most of my regular monthly payments go towards reducing interest and not a meaningful reduction in principal. Thus, at that point, the law firm would have needed to present an offer that was at least $30,000 per year greater than it did in order to offset the benefits of PSLF forgiveness, or a one-time bonus larger than my student loan balance payoff amount. That needed amount is certainly higher now.

22. If my monthly student loan payments were reduced significantly enough without needing to work in qualifying public service employment, then there would also be less financial reason for me to continue employment with the AGO or public service more generally. Furthermore, if my loans would be forgiven between 10 and 20 years, I would also have less reason to continue employment with the AGO or public service more generally.

23. If there were other forms of student loan forgiveness available that would be less generous than the benefits of PSLF (and the generally lower monthly payments through lower salaries in public service) but more generous than existing

5

income-driven repayment programs like the Income-Based Repayment program, I would have less incentive to join the AGO or stay as long as I have.

24. The work of the AGO and public service is extremely rewarding, but it comes at a financial cost. For many of my colleagues, the comparatively lower student loan payments with the prospect of forgiveness is a significant part of the decision to join and stay at the AGO, and thus allows those employees to perform that rewarding work even though the annual salary is often a comparative disadvantage to other forms of legal employment. The AGO relies heavily on promoting those benefits when recruiting law school graduates and experienced lawyers.

25. For me, those were some of the reasons why I did choose to join the office. And the longer I am with the AGO and employed in public service, the more important PSLF's benefits are.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2024 in the State of Missouri.

*Jason K. Lewis*
Jason K. Lewis