# EXHIBIT 7




*Phillip L. Swagel, Director*

March 13, 2023

Honorable Virginia Foxx
Chairwoman
Committee on Education and
the Workforce
U.S. House of Representatives
Washington, DC 20515

Honorable William Cassidy, M.D.
Ranking Member
Committee on Health, Education,
Labor, and Pensions
United States Senate
Washington, DC 20510

*Re: Costs of the Proposed Income-Driven Repayment Plan for Student Loans*

Dear Chairwoman Foxx and Ranking Member Cassidy:

This letter responds to questions you asked about the cost of the Administration's proposed rule for a new income-driven repayment (IDR) plan for federal student loans, as published by the Department of Education in the *Federal Register* on January 11, 2023.[1]

The Congressional Budget Office estimates that if the final rule was unchanged from the proposed rule, the cost of the federal student loan program would rise by about $230 billion, on a net-present-value basis, over the 2023–2033 period.[2]

- The cost of outstanding loans would rise by $76 billion, which would be recorded as an increase in the deficit in 2023, the year in which the terms of those loans would be modified; and

- The cost of new loans originated over the 2023–2033 period would rise by $154 billion, which would be recorded as adding to the deficit in the years in which loans are originated.[3]

Under current law, borrowers may choose from several income-driven and fixed-length repayment plans. For most borrowers, the proposed IDR plan would be more generous than existing IDR plans, and many borrowers selecting the proposed IDR plan would pay less in principal and interest than they would otherwise. In addition, some students who are already expected to borrow would borrow more, and additional students would borrow because of

the proposed plan's more generous terms. The expected net costs to the Treasury over the life of each cohort of loans are reported here as present values, which are calculated by discounting the government's outlays and the payments it receives, using methods specified in the Federal Credit Reform Act of 1990.[4]

The added costs are relative to CBO's February 2023 baseline projections, which account for the Administration's plan to cancel outstanding debt for certain borrowers. If the Supreme Court fully invalidates that cancellation, the cost of the proposed IDR plan would be higher because some borrowers whose loans would have been partially or entirely canceled would instead choose to repay their loans under the proposed plan. In that case, CBO estimates that the costs for outstanding loans would increase by another $46 billion in 2023.[5] Thus, without cancellation, the costs would total $276 billion for outstanding and new loans, recorded on a net-present-value basis over the 2023–2033 period.

If the Department of Education changes the proposed IDR plan before issuing the final rule or if the Supreme Court invalidates only a portion of the Administration's proposed debt cancellation (as opposed to upholding or fully invalidating the cancellation plan as discussed in this letter), CBO's estimates would differ from the amounts discussed here.

CBO's estimates for the proposed IDR plan depend on expected responses by students and postsecondary education institutions. Those factors and the uncertainty surrounding them are discussed below.[6]

**Overview of the Proposed Income-Driven Repayment Plan**

Student borrowers currently are eligible for several repayment plans. Payments under IDR plans are based on borrowers' income and family size (some plans cap payment amounts), and those plans offer forgiveness after a certain number of years in repayment. The proposed IDR plan would replace REPAYE, an existing IDR plan created through regulation. PAYE, another IDR plan created through regulation, would be phased out altogether. The current Income-Based Repayment (IBR) plan, created by law, would continue to be available.[7] The largest changes in the proposed IDR rule would:

- Increase the amount of income exempted from the calculation of monthly payments from 150 percent to 225 percent of the federal poverty guideline, which varies by family size. Payment amounts are calculated on the basis of discretionary income, defined as income above the exempted amount.

- Reduce from 10 percent to 5 percent the amount of discretionary income that borrowers must pay if they have undergraduate loans only. Borrowers with only graduate loans would continue to pay 10 percent of their discretionary income. Borrowers with undergraduate and graduate loans would pay a percentage of their discretionary income based on the weighted average of their combined loan amounts. The existing IBR plan requires all borrowers to pay 10 percent of their income above 150 percent of the applicable federal poverty guideline, but it caps payments at the amount the borrower would have paid upon entering repayment under the standard 10-year plan. Consequently, some higher-income borrowers could pay less each month in the IBR plan.

- Eliminate accrual of unpaid interest when a borrower's payment does not cover the entire amount of interest due. Current IDR plans either waive 50 percent of that interest or waive none at all. The IBR plan generally does not waive any interest.

- Allow student borrowers who initially borrowed less than $22,000 to have their outstanding balance forgiven after 10 to 20 years in repayment, depending on the amount borrowed. Undergraduate borrowers with a balance above that amount would receive forgiveness after 20 years in repayment; graduate borrowers would receive forgiveness after 25 years. In this regard, the proposed IDR plan would be less generous for some graduate borrowers than the IBR plan, which permits graduate loans to be forgiven after 20 years in repayment.

- Authorize the Department of Education to automatically enroll borrowers in an IDR plan if their payments are 75 days delinquent and if they have authorized disclosure of income and tax return information to the department.

**Estimated Costs of the Proposed IDR Plan: Outstanding Loans**

At the end of fiscal year 2022, the amount of outstanding direct loans to students, excluding loans to parents, totaled $1.3 trillion. (That amount does not account for the Administration's planned cancellation of loans.) Data from the department indicate that about 50 percent of the volume of direct student loans in a repayment plan is owed by borrowers in an IDR plan. In CBO's February 2023 baseline projections, around $900 billion of the $1.3 trillion total remains after the Administration's planned loan cancellation; 57 percent of that volume is in IDR plans.[8]

Under the proposed rule and in keeping with an assumption that the Administration's loan cancellation will take effect, CBO estimates that the outstanding volume in IDR plans would increase to 66 percent, as borrowers in fixed-length repayment plans select the proposed IDR plan and as eligible borrowers whose loans are 75 days delinquent are automatically enrolled in that plan. If the Supreme Court fully invalidates the Administration's planned loan cancellation, CBO estimates that outstanding volume in IDR plans would increase from about 50 percent to about 60 percent.

To assess the likelihood of borrowers' choosing to enroll in the proposed IDR plan, CBO developed a statistical model using historical usage rates for income-driven repayment plans that is based on data from the National Student Loan Data System (NSLDS)—discussed below in "Sources of Evidence." The model uses the present value of the payment reduction that borrowers could receive under the proposed IDR plan to determine the likelihood of their changing plans. Because the payment reduction under the proposed plan is larger than the reduction for existing plans, CBO expects that borrowers would be more likely to choose the proposed IDR plan.

To project rates of automatic enrollment in the proposed IDR plan, CBO analyzed historical data from the NSLDS concerning borrowers with delinquent balances.[9]

**Estimated Costs of the Proposed IDR Plan: New Loans**

In the absence of the proposed IDR plan, and excluding loans to parents, CBO projects that under current law about $900 billion in new loans will be originated over the 2023–2033 period. On average, in CBO's assessment, 52 percent of that volume each year will be originated to borrowers who eventually choose an IDR plan; that includes 34 percent of undergraduate loan volume and 66 percent of graduate loan volume.

**Selection of IDR Plans by Borrowers Currently Projected to Use an IDR Plan.** CBO anticipates that before any increase in IDR enrollment, about 80 percent of the loan volume originated to borrowers who are projected to enroll in IDR plans will be repaid under the proposed IDR plan; the remaining 20 percent will be originated to borrowers who select the IBR plan. That estimate incorporates CBO's expectation that some borrowers would select the IBR plan because its terms would be more generous if their income or debt falls within certain ranges.

**Increased Use of IDR Plans.** CBO projects that under the proposed IDR plan, loan volume would be shifted away from fixed-length repayment plans and into IDR plans. The share of loan volume originating to borrowers who

eventually enroll in any IDR plan would increase from 52 percent to 73 percent. That change in volume incorporates increases from 34 percent to 66 percent for undergraduate loans and from 66 percent to 79 percent for graduate loans, arising from two main factors:

- More borrowers are likely to benefit from the proposed IDR plan and would select it rather than a fixed-length repayment plan. CBO used the methodology previously discussed to assess the likelihood of borrowers' choosing that plan.

- Nearly all borrowers whose payments are 75 days delinquent would automatically be enrolled in the proposed IDR plan. As was the case for estimating cohorts of outstanding loans, CBO's analysis relies on data from the NSLDS.

**Increased Borrowing.** CBO estimates that under the proposed IDR plan, by fiscal year 2027 the total volume of student borrowing would rise by about 12 percent annually (or about $10 billion) above the amounts in the February 2023 baseline. That represents an increase of about 15 percent in undergraduate borrowing and about 10 percent in graduate borrowing. Almost all of the expected increase in borrowing would be by students who ultimately would participate in the proposed IDR plan. In CBO's assessment, the rise in volume would be an expected consequence of two main factors:

- Students who already would be expected to take out federal loans would borrow more because the proposed IDR plan would make borrowing less costly.

- Some students who would not borrow under current law would take out loans as they and postsecondary institutions respond to the availability of the proposed IDR plan.

CBO expects that most of the higher loan volume would come from students who, although they already fill out the Free Application for Federal Student Aid, either do not borrow at all or borrow less than they could. Currently, about half of undergraduate borrowers do not take out the maximum amount available to them in subsidized and unsubsidized loans (those amounts are bounded by statutory limits). Roughly half of graduate borrowers do not take out the maximum in unsubsidized Stafford loans, and only about 30 percent of graduate borrowers take out GradPLUS loans, which are limited only by the cost of attendance.

Because few researchers have examined whether people are more likely to borrow if they have access to loans with better terms, CBO's analysis in part used research concerning postsecondary grant programs and student borrowing limits. In CBO's judgment, it would be difficult for most students to evaluate their potential savings from the proposed IDR plan the way they assess grant offers. Consequently, the possibility of repaying loans under the proposed IDR plan would probably have a substantially smaller effect on their decisionmaking than would the prospect of grant offers. Similarly, policy changes affecting limits on amounts students could borrow would have different effects on their decisions about how much to borrow than would changes to loan terms while the limits on amounts borrowed remain intact.

Some research indicates that changes in loan generosity in the form of the availability of lower interest rates can lead to small increases in borrowing. To inform the estimates here, CBO compared the proposed IDR plan's value to borrowers with the value of a change in interest rates alone.

In addition, there is some evidence that postsecondary institutions can influence students' borrowing decisions by including loan offers in financial aid letters, and CBO anticipates that the proposed IDR plan would lead more institutions to recommend federal loan programs to students who would not otherwise borrow.

CBO expects that some institutions will raise tuition in response to increased borrowing under the proposed plan. That, in turn, would probably lead to more borrowing.

The automatic enrollment of delinquent borrowers into the proposed IDR plan also would probably lead to increased borrowing, especially among students enrolled in for-profit institutions and community colleges. Currently, if too high a percentage of borrowers from an institution default on their loans within three years after entering repayment, that institution can become ineligible for federal financial aid. Some schools do not participate in the loan program or discourage borrowing in part to help maintain their eligibility. The proposed IDR plan would prevent or delay many early defaults, thus reducing the likelihood that institutions could lose eligibility under this metric even if the number of enrolled borrowers increased.

The Administration has announced plans to issue a proposed rule about gainful employment in April 2023 that could offset some of the increased borrowing. A previous gainful-employment rule, which required institutions to meet benchmarks for debt-to-earnings rates among people who complete programs, was repealed in 2019.

**Sources of Evidence**

For this analysis, CBO used administrative data from the NSLDS for a representative sample of borrowers, along with survey data from the National Postsecondary Student Aid Study. The agency supplemented that information with other data as inputs to project borrowers' lifetime earnings and repayment of loans.[10] CBO also consulted with a range of experts on postsecondary student aid and reviewed literature on postsecondary enrollment, tuition, and borrowing.

**Baseline Treatment**

The rules that CBO follows when it updates baseline projections include a long-standing convention for incorporating the effects of proposed and final rules. The current baseline, which was completed before the publication of the proposed rule, has been adjusted since it was released in February 2023 to incorporate 50 percent of the estimated costs of the proposed IDR plan.[11] Thus, if legislation permanently blocked the proposed IDR plan, CBO would project that direct spending for student loans would decrease by $115 billion, or 50 percent of the total, over the 2023–2033 period.[12]

Once the Department of Education publishes a final rule, CBO will update its estimate to account for any changes, and the baseline will incorporate 100 percent of the estimated cost. CBO also will update the baseline if the Supreme Court issues a decision that fully or partially invalidates the Administration's planned loan cancellation.

Each spring, CBO typically releases updated budget projections in conjunction with its analysis of the President's budgetary proposals. Updates of the factors underpinning CBO's estimates of the federal student loan program could change the estimated costs described here.

**Comparison With the Department of Education's Estimate**

In its January 11, 2023, publication in the *Federal Register,* the Department of Education estimated that the total cost of implementing the proposed IDR plan would be $138 billion over the 2023–2032 period. The department's total includes increased costs of $77 billion for outstanding loans and $61 billion for new loans originated over the 2023–2032 period.

Most of the differences between CBO's and the department's estimated costs stem from the department's assumptions that there would be no increase in enrollment in the proposed IDR plan among current or future borrowers and no increase in borrowing among eligible students in the future. The

department's estimate also covers the period from 2023 to 2032, one year less than the 11-year projection period for CBO's February 2023 baseline.

Aside from those important factors (and without regard to differences in CBO's and the department's assessments of students' decisions about borrowing), differences between the two sets of estimates may be found in projected income, tax-filing status, interest rates, discount rates, loan volume, and baseline enrollment in IDR plans.

**Uncertainty of Estimates**

Although CBO has endeavored to develop estimates of the budgetary effects of the proposed IDR plan that are in the middle of the distribution of potential outcomes, those estimates are highly uncertain. In particular, it is difficult to anticipate the ways students and postsecondary institutions would respond to the availability of the plan. If more or fewer borrowers enroll in the proposed IDR plan or if additional borrowing grows by more or less than CBO projects, the costs could differ significantly from those presented here. For example, broader publicity about the plan could generate unprecedented use and larger costs. Alternatively, use and costs could be low, as they have been in the past for repayment plans that appeared to be more generous than existing plans—perhaps because IDR plans are complex and the total amount borrowers will pay can initially be unclear.

In addition, estimating repayments and forgiveness for borrowers in IDR plans requires projecting borrowers' earnings, rates of fertility and marriage, and tax-filing decisions—all of which are inherently uncertain. The uncertainty is further complicated by difficulty in anticipating changes in the composition or characteristics of enrollees in the proposed IDR plan relative to those under current law.

I hope this information is helpful to you. Please let me know if you have further questions.

Sincerely,

Phillip L. Swagel
Director

cc: Honorable Robert C. "Bobby" Scott
Ranking Member
House Committee on Education and the Workforce

Honorable Bernie Sanders
Chair
Senate Committee on Health, Education, Labor, and Pensions

---

1. See "Improving Income-Driven Repayment for the William D. Ford Federal Direct Loan Program," 88 Fed. Reg. 1894 (January 11, 2023), https://tinyurl.com/465r5ad3.
2. A present value is a single number that expresses a flow of current and future income or payments in terms of an equivalent lump sum received or paid at a specific time. The value depends on the rates of interest, known as the discount rates, used to translate future cash flows into current dollars. The Federal Credit Reform Act of 1990 specifies those discount rates as the rates on Treasury securities with similar terms to maturity.
3. This represents CBO's estimate of the change in the cost of the federal student loan programs. It does not include any changes in spending for other federal programs, such as the Federal Pell Grant Program, or any changes in revenues stemming from changes in deductible interest payments, amounts of loan forgiveness subject to taxation, or taxpayers' filing status.
4. A cohort is a set of loans originated during the same fiscal year.

5. In fiscal year 2022, the Administration recorded a cost of $379 billion for loan cancellation—its estimate of the net present value of that proposal. If the Supreme Court invalidates the cancellation in its entirety, CBO expects that the Administration would record savings of a similar amount in fiscal year 2023. The deficit for 2022 would not change, but the deficit for 2023 would be lower by a roughly offsetting amount.

   For details about debt cancellation, see Alexandra Hegji, *The Biden Administration's One-Time Student Loan Debt Relief Policy,* Report IN11997, version 7 (Congressional Research Service, December 29, 2022), https://tinyurl.com/yc27b3cj.

6. This letter describes expected increases in the use of IDR plans and in borrowing, which CBO estimates would have the largest effects on the cost of the proposed plan. The estimate of costs also incorporates other responses by borrowers, such as an increase in the number of married borrowers whose federal tax filing status would change to filing separately and in the use of Public Service Loan Forgiveness, which are not described here.

7. For information about the history and details of existing IDR plans, see Alexandra Hegji, David P. Smole, and Elayne J. Heisler, *Federal Student Loan Forgiveness and Loan Repayment Programs,* Report R43571, version 11 (Congressional Research Service, November 20, 2018), https://tinyurl.com/4mmvs5xe.

8. The percentage totals in this letter are percentages of dollar volume rather than percentages of borrowers. In addition, the totals include only federal loans to students and exclude loans to parents, who generally do not enroll in income-driven repayment plans.

9. Under the Administration's suspension of loan payments and its Fresh Start initiative, no outstanding loans are currently considered delinquent.

10. For a technical description of CBO's modeling of income-driven repayment plans, see Nadia Karamcheva, Jeffrey Perry, and Constantine Yannelis, *Income-Driven Repayment Plans for Student Loans*, Working Paper 2020-02 (Congressional Budget Office, April 2020), www.cbo.gov/publication/56337.

11. For more information about the treatment of rules in the baseline, see Congressional Budget Office, *How CBO and JCT Analyzed Coverage Effects of New Rules for Association Health Plans and Short-Term Plans* (January 2019), www.cbo.gov/publication/54915, and Congressional Budget Office, letter to the Honorable John M. Spratt Jr. explaining how CBO reflects anticipated administrative actions in its baseline projections (May 2, 2007), www.cbo.gov/publication/18615.

12. For the purposes of estimating the budgetary effects of any proposed legislation, CBO will use its own estimate of changes to the costs of outstanding future cohorts of loans. The amounts recorded in the budget will be determined by the Administration's Office of Management and Budget. For the purposes of projecting the deficit, CBO's baseline will incorporate the cost for outstanding loans as recorded by the Administration. CBO will report those amounts in its *Monthly Budget Review* after they are recorded.