## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| STATE OF MISSOURI, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 4:24-cv-520-JAR |
| JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

## <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLARIFICATION</u>

Plaintiffs move to clarify this Court's June 24, 2024 Preliminary Injunction. ECF No. 36. As a general matter, Defendants do not oppose the idea of clarification, which would ensure that all parties operate from a shared understanding of the reach of the Court's order, going forward.

Nevertheless, Plaintiffs err in urging the Court to "clarify" that it subtly enjoined all future loan forgiveness under the terms of *all* income-contingent repayment (ICR) plans—even plans that predated the Final Rule (sometimes by several decades), which were never challenged in this lawsuit, and which remain in effect today. That would not be a "clarification," but a significant and unwarranted expansion of the preliminary injunction in this case. The plain text of the injunction, which is expressly limited to forgiveness "under the Final Rule's SAVE plan," *id.* at 1, cannot support that unexpected result.

Instead, for the reasons that follow, the Court should clarify that the operative language in the Court's injunction means what it says: future loan forgiveness under the terms of "the Final Rule's SAVE Plan," *id.*—*i.e.*, the only income-contingent repayment plan that Plaintiffs have ever challenged—has now been enjoined. Loan forgiveness under the terms of other preexisting (and still-existing) ICR plans—such as the original ICR plan, PAYE, and REPAYE—has not.

**BACKGROUND**

Thirty years ago, the Secretary first carried out his statutory mandate to create an ICR plan for the repayment of federal direct student loans (the original ICR plan). At that time, the Secretary observed that "[s]ome borrowers in the ICR plan may not earn sufficient income to fully repay their loans within the statutory 25-year time period." *William D. Ford Federal Direct Loan Program*, 59 Fed. Reg. 61,664, 61,666 (Dec. 1, 1994). In such an instance, the Secretary specified, he would "forgive any outstanding loan balance (principal plus interest) that is unpaid after 25 years." *Id.* That approach to loan forgiveness was repeated in 2012 when, under the name "PAYE," a new ICR plan was created that (among other changes) shortened the timeline to forgiveness to 20 years for some borrowers. *Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 77 Fed. Reg. 66,088, 66,089 (Nov. 1, 2012). A third iteration of an ICR plan providing for forgiveness of outstanding loan balances at the end of a 20- or 25-year period arrived in 2015 (as "REPAYE"). *Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program*, 80 Fed. Reg. 67,204, 67,205 (Oct. 30, 2015). And finally, most recently, the Secretary promulgated a new ICR plan, SAVE, last July, through the Final Rule at issue in this case. *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023). In SAVE, the Secretary hewed closely to the original ICR plan, PAYE, and REPAYE in providing for the forgiveness of outstanding loan balances after the maximum period of repayment pursuant to regulation had elapsed.

Both the original ICR plan and the PAYE plan remain in effect today, *see* 88 Fed. Reg. at 43,827, with several million enrolled borrowers. *See* Dep't of Education, *Federal Student Aid*, https://studentaid.gov/data-center/student/portfolio. SAVE was intended to amend and fully replace REPAYE on July 1, 2024, *see* 88 Fed. Reg. at 43,820, so the universe of borrowers enrolled in REPAYE and borrowers enrolled in SAVE is entirely coextensive.

Of these four ICR plans, promulgated across 30 years, Plaintiffs challenged only the most recent one when they brought this lawsuit, explicitly and repeatedly targeting in their request for relief the July 2023 Final Rule that enacted the SAVE Plan, which sought to amend REPAYE (as relevant

here) by offering many borrowers a shorter timeline to forgiveness. *See* Compl. ¶¶ 75-103, ECF No. 1 (describing the Final Rule); *id.* ¶¶ 112-60 (alleging harms stemming from the Final Rule); *id.* ¶¶ 168-78 (alleging that the Final Rule exceeds the Department's statutory authority); *id.* ¶¶ 179-202 (claiming violations of the APA related to the Final Rule's promulgation); *id.* at 60, Prayer for Relief (seeking relief as related to the Final Rule). Correspondingly, when the Court held that Plaintiffs had satisfied the test for a preliminary injunction, it granted (partial) relief tailored to the legal theories and harms that Plaintiffs alleged. The Court's order thus reads as follows:

> **IT IS HEREBY ORDERED** that Defendants are preliminarily enjoined from any further loan forgiveness for borrowers under the Final Rule's SAVE plan until such time as this Court can decide the case on the merits.

Prelim. Inj. at 1. The Court denied all other relief that Plaintiffs requested.

On June 27, Defendants filed a notice of appeal. ECF No. 37. The next day, Plaintiffs filed a notice of cross-appeal. ECF No. 42. Plaintiffs also moved for an injunction pending appeal, ECF No. 41, which the Court denied a few hours later.[1] That motion included a footnote that expressed "concern[s]" with Defendants' interpretation of the Court's preliminary injunction order. Mot. for Inj. Pending Appeal at 3 n.3.

Shortly thereafter, Defendants filed a notice of compliance, ECF No. 44, confirming that, "[u]pon receipt of the preliminary injunction and in compliance with it, Defendants immediately ceased processing any additional loan forgiveness for borrowers enrolled in SAVE on the shortened

---

[1] Plaintiffs' motion for an injunction pending appeal requested time-sensitive relief from this Court and represented that Plaintiffs would soon be seeking time-sensitive relief in the Eighth Circuit. *See, e.g.*, Mot. for Inj. Pending Appeal at 1 ("As directed by Fed. R. App. P. 8(a)(1)(C), Plaintiff States must move this Court for an injunction pending appeal before so moving in the Eighth Circuit."); *id.* at 7 ("In the alternative, the States ask for a temporary administrative injunction lasting only long enough for the Eighth Circuit to rule on the States' forthcoming motion."). But after the Court considered Plaintiffs' motion on an expedited basis and denied it, Order, ECF No. 45, Plaintiffs never moved for relief in the Eighth Circuit. As a result, all parts of the SAVE Plan that were not enjoined by this Court have now taken effect—in part because the Tenth Circuit granted in full Defendants' motion for a stay pending appeal of an injunction in parallel litigation, on the afternoon of Sunday, June 30. *See* Order, *Alaska v. Dep't of Educ.*, No. 24-3089 (10th Cir. June 30, 2024). Plaintiffs in the *Alaska* case have since filed an emergency application with the Supreme Court of the United States, seeking vacatur of the stay pending appeal that was issued by the Tenth Circuit.

timelines provided for in the Final Rule."  In the interest of transparency and for the avoidance of doubt, Defendants also made clear that "Defendants do not understand the injunction to apply, in contrast, to the Department's preexisting programs that were not challenged in this lawsuit, including other income-contingent repayment plans (*i.e.*, REPAYE) that authorize loan forgiveness after 20 or 25 years of payments."  *Id.*[2]

In sum, and as discussed further below, *see infra* at 9-10, the status quo is now as follows: The original ICR plan and the PAYE plan remain in full effect, with several million borrowers still enrolled in those plans.  REPAYE has now almost entirely been replaced by SAVE, with the notable exception being the REPAYE provisions governing the amount of time spent in repayment before a borrower is eligible for forgiveness of his or her remaining loan balance.  In other words, because the Court has enjoined Defendants from implementing the forgiveness-related provisions of "the Final Rule's SAVE Plan," those provisions of SAVE have *not* replaced the corresponding provisions of REPAYE.  As a result, all SAVE borrowers (and all REPAYE borrowers, which, to be clear, is the same group of borrowers), are now, by operation of the Court's order, enrolled in something of a hybrid, which falls short of the agency's original intent.  Currently, that plan is governed by the terms of the Final Rule's SAVE Plan in all respects *except* for the criteria regarding time spent in repayment before eligibility for loan forgiveness; those criteria have now reverted to the terms of REPAYE, in compliance with this Court's injunction.

Plaintiffs now ask the Court to "clarify" that its preliminary injunction "does not permit Defendants to use ICR authority to forgive loans for any borrowers enrolled in the SAVE plan."  Pls.' Mot. for Clarification at 2, ECF No. 48 ("Pls.' Mot.").  The Court ordered Defendants to file a response by today.  ECF No. 49.

---

[2] Plaintiffs say that Defendants' notice of compliance was filed "only after prodding by Plaintiff States."  Pls.' Mot. at 1.  If Plaintiffs are implying that Defendants would not have filed their notice in the absence of the footnoted language in Plaintiffs' motion for a stay pending appeal, they are mistaken.  Defendants were in the process of finalizing their notice for filing when Plaintiffs filed their motion.

# ARGUMENT

Plaintiffs' interpretation of the Court's preliminary injunction is unmoored from the text of the order, from the relief requested in Plaintiffs' own filings, and from the Federal Rules of Civil Procedure. On Plaintiffs' view, although they never challenged any plan other than the SAVE Plan in this lawsuit, the Court's injunction should now be construed as prohibiting loan forgiveness under all prior ICR plans, too—at the very least, with respect to borrowers enrolled in the SAVE Plan (though the precise boundaries of Plaintiffs' interpretation is at times difficult to discern from their filing). Regardless, Plaintiffs' interpretation should be rejected, and the Court should reaffirm that its injunction applies only to future loan forgiveness under the terms of "the Final Rule's SAVE Plan," Prelim. Inj. at 1—not to forgiveness under the terms of any of the other preexisting (and still operational) ICR plans, including the original ICR Plan, PAYE, and (in relevant part) REPAYE.

1. The text of the Court's preliminary injunction order is enough to resolve the matter: "Defendants are preliminarily enjoined from any further loan forgiveness for borrowers *under the Final Rule's SAVE plan* until such time as this Court can decide the case on the merits." *Id.* (emphasis added). That language means what it says. Any new loan forgiveness under the terms of "the Final Rule's SAVE Plan" is now enjoined. Loan forgiveness under the terms of other income-contingent repayment plans is not. The Court need go no further than that to reject Plaintiffs' interpretation, which would curtail the agency's authority to provide loan forgiveness under the terms of preexisting ICR plans that are not "the Final Rule's SAVE Plan," including REPAYE.

2. Even setting aside the text of the Court's injunction order, the context in which it was issued resolves any doubt. *See, e.g.*, *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2012) ("Although the parties to an injunction must be able to ascertain from the four corners of the order precisely what acts are forbidden, that rule does not preclude an examination of context."). It is unsurprising that the Court's injunction is expressly limited to forgiveness under the authority of "the Final Rule's SAVE Plan." Prelim. Inj. at 1. That is because Plaintiffs in this case have never challenged any income-contingent repayment plan other than "the Final Rule's SAVE Plan," *id.*—including the forgiveness

provisions of REPAYE, which remain in effect (in relevant part) because of the Court's injunction preventing the changes contemplated by the Final Rule from taking effect.

Plaintiffs began this case by explicitly identifying "the subject of this lawsuit" as the "new rule" issued by the Department of Education, "referred to by Defendants as the 'SAVE Plan,'" which was "set to take full effect on July 1, 2024." Compl. ¶ 7; *see also id.* ¶ 6 ("The Final Rule is titled 'Improving Income Driver Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL Program).' *See* 88 Fed. Reg. 43,820."). As they explained, "[t]he Final Rule makes several significant changes to preexisting regulations," including, as relevant here, to "accelerate[] cancellation to as quick as 10 years." Compl. ¶ 81. As a result, "[u]nder the Final Rule, loans are eligible for complete cancellation after 10 years if the original balance was less than $12,000," and then "the number of years increases for every $1,000 in original principle [sic] balance." *Id.* ¶ 82. Plaintiffs described this as a "significant change of course from past practice" created by the Final Rule because, previously, under the terms of all other income-contingent repayment plans, "loans would only be forgiven after 20-25 years." *Id.* ¶ 237.

As for their statutory claims, Plaintiffs alleged that, "[b]ecause the Final Rule violates separation of powers" and "is contrary to the HEA," it "should be set aside." *Id.* ¶¶ 178, 204. And in their prayer for relief, Plaintiffs asked the Court to "temporarily restrain and preliminarily and permanently enjoin implementation and enforcement of the Final Rule." *Id.* at 60, Prayer for Relief ¶ (d). Nowhere in the complaint did Plaintiffs challenge (let alone seek any relief relating to) any of the three preexisting ICR plans.

Just as they did in their complaint, Plaintiffs also explicitly requested relief against the SAVE Plan—but no other repayment plan—in their motions for injunctive relief:

> Under 5 U.S.C. § 705, Plaintiff States move for a stay of the Final Rule titled "Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program." *See* 88 Fed. Reg. 43,820. In the alternative, Plaintiffs move for a preliminary injunction under Fed. R. Civ. P. 65 to enjoin Defendants from implementing or enforcing that rule.

Pls.' Mot. for a Stay or Prelim. Inj., ECF No. 7; *see also* Pls.' Mot. for a Stay or TRO, ECF No. 6 (using the same language, except replacing "preliminary injunction" with "temporary restraining order"). Similarly, the concluding paragraph of Plaintiffs' brief in support of those motions also made two more explicit references to "the Final Rule," but no references to any other ICR plan.  Mem. in Supp. of Pls.' Mots. for a Stay or a TRO & Prelim. Inj. at 50, ECF No. 10.

This was not the only conceivable approach.  In fact, in parallel litigation in the District of Kansas, another group of plaintiff States explicitly requested broader relief—not just against SAVE, but also any other plan "not expressly authorized by Congress":

> Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiffs States . . . move for a Preliminary Injunction enjoining Defendants . . . from implementing or acting pursuant to the Final Rule promulgated by the Department of Education titled "Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program," 88 Fed. Reg. 43,820, or from undertaking any form of student debt relief not expressly authorized by Congress.

Pls.' Mot. for Prelim. Inj. at 1, *Alaska v. Cardona*, No. 24-cv-01057, ECF No. 23 (D. Kan. Apr. 5, 2024). In that case, Defendants argued (and the district court agreed) that that bolder request for relief was meritless and overbroad.  *Alaska v. Cardona*, No. 24-cv-1057, 2024 WL 3104578, at *17 (D. Kan. June 24, 2024) ("This vague request—asking the court to enjoin defendants from undertaking any form of unlawful debt relief—is not helpful. . . . The court will not enter such a broad, unguided injunction."). But the approach of the *Alaska* Plaintiffs stands in stark contrast to Plaintiffs here, who challenged the SAVE Plan alone.

Plaintiffs have, to be sure, at times suggested that they believe that at least some other loan-forgiveness plans are unlawful.  *See, e.g.*, Compl. ¶ 42 (asserting that the loan-forgiveness provisions of the original ICR plan were issued "without explicit authorization" from Congress).  But that belief, stated vaguely and in passing, is not enough to obtain judicial relief, especially the "extraordinary remedy" of a preliminary injunction, *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008), against other agency actions that were not actually challenged in the complaint or in Plaintiffs' motion for a preliminary injunction.

Plaintiffs argue that some language in the Court's opinion casts doubt on the legality of other (decades-old) ICR plans.  But rationales do not amount to injunctions.  If Plaintiffs had challenged any of those plans, Defendants might, for example, have raised arguments of laches or the statute of limitations.  *See, e.g., Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 22-1008, 2024 WL 3237691, at *4 (U.S. July 1, 2024) (in an APA case, "[t]he default statute of limitations for suits against the United States requires 'the complaint [to be] filed within six years after the right of action first accrues'" (quoting 28 U.S.C. § 2401(a))).  And Defendants would have had even stronger equitable arguments about Plaintiffs' extensive delay before seeking a TRO and a preliminary injunction from this Court.  *See* Mem. & Order at 56, ECF No. 35 ("Because of Plaintiffs' delay, some alleged harms have already occurred, which also weighs against Plaintiffs' position.").  After all, although Plaintiffs waited nine months to challenge the SAVE Plan, they (in this hypothetical) would have waited 10 years to challenge REPAYE, 80 Fed. Reg. at 67,204, 12 years to challenge PAYE, 77 Fed. Reg. at 66,088, and 30 years to challenge the original ICR plan, 59 Fed. Reg. at 61,664.  Because of Plaintiffs' litigation choices, those issues (and others) have never been briefed.  So those questions are simply not before this Court, and never have been.

In sum, the Court's order is expressly limited to future loan forgiveness "under the Final Rule's SAVE plan."  Prelim. Inj. at 1.  Interpreting that language to prohibit loan forgiveness (for any borrowers) under the terms provided for in other preexisting ICR plans would be impossible to square not only with the text of the order, but also with Plaintiffs' intentional and repeated choice to seek narrower relief.

**3.**  In response to Defendants' notice of compliance, Plaintiffs seem not to dispute that they challenged only the SAVE Plan.  Instead, Plaintiffs argue that "the REPAYE program no longer exists; it was replaced by SAVE," which (in their view) means that "[a] challenge to SAVE is thus necessarily a challenge to REPAYE, which became SAVE."  Pls.' Mot. at 3.  This (partial) response—which, as Plaintiffs seem to concede, applies only to Defendants' arguments about REPAYE, rather than to PAYE or the original ICR plan, *see id.* at 3 n.2—cannot withstand scrutiny.

It is true that the Department of Education intended and expected that, starting on July 1, 2024, REPAYE would "no longer exist[]," and instead would be "replaced by SAVE" in its entirety. Pls.' Mot. at 3; *see also* 88 Fed. Reg. at 43,900.  But due to this litigation, the agency's anticipated outcome has now been prevented, in relevant part, by the very injunction that Plaintiffs purportedly seek to clarify—which expressly *prohibits* Defendants from implementing the portions of the SAVE Plan relating to loan forgiveness.  Prelim. Inj. at 1.  As a result of the injunction, then, those changes to REPAYE are now on hold, until further notice, as required by this Court's order.  Accordingly, the status quo that existed before this lawsuit (and before the SAVE Plan)—that is, loan forgiveness governed by the terms of REPAYE, after 20 or 25 years of qualifying payments, 80 Fed. Reg. at 67,205—is now in effect, rather than the forgiveness criteria provided for by the (now partially enjoined) SAVE Plan.  That is a scenario that Plaintiffs should have anticipated when they challenged the "change of course from past practice" reflected in the Final Rule's provisions for faster loan forgiveness.  Compl. ¶ 237.  As a result, on the specific issue of loan forgiveness, Plaintiffs are incorrect to say that "the REPAYE program no longer exists" or that "it was replaced by SAVE."  Pls.' Mot. at 3.[3]  Instead, on the issue of loan forgiveness, the REPAYE criteria remain operative, unless and until the changes contemplated by SAVE are permitted to take effect.[4]

For similar reasons, Plaintiffs are mistaken to say that "Defendants are continuing to forgive loans under the SAVE plan."  *Id.* at 4.  In fact, as Plaintiffs acknowledge in their own complaint, *see* Compl. ¶ 81, the loan forgiveness provisions of the SAVE Plan make one (and only one) change that is implicated by the Court's injunction: to allow some borrowers "to receive forgiveness after as few as 10 years" of payments, when "[p]reviously, all income-contingent loans would only be forgiven

---

[3] Plaintiffs point to similar language on the Department of Education's website, Pls.' Mot. at 3, which was published before this Court's injunction and had not yet been updated as of the date of Plaintiffs' motion.  The Department of Education is working to update all language on the many relevant websites to describe the status quo more accurately—a status quo that has been a moving target in recent days.

[4] For the same reasons, had the Court granted the full scope of relief that Plaintiffs requested— that is, an injunction against the Final Rule's SAVE Plan in its entirety, rather than just the provisions about loan forgiveness—then REPAYE would be in full effect today.

after 20-25 years." *Id.* ¶ 236-37. Again, that "change of course from past practice" has now been enjoined, *id.* ¶ 237, which is why, "[u]pon receipt of the preliminary injunction and in compliance with it, Defendants immediately ceased processing any additional loan forgiveness for borrowers enrolled in SAVE on the shortened timelines provided for in the Final Rule." Defs.' Notice of Compliance. Nothing more was required. The fact that Defendants may continue to forgive loans (for any borrower) under the terms provided for by *other* ICR plans does not mean that "Defendants are continuing to forgive loans under the SAVE plan." Pls.' Mot. at 4. It just means that the previous status quo that existed *before* the SAVE Plan—that is, in Plaintiffs' words, under which "all income-contingent loans would only be forgiven after 20-25 years," Compl. ¶ 236—is now back in effect.

**4.** Plaintiffs' motion for clarification does not address the actual language of the Court's preliminary injunction. Instead, Plaintiffs lean heavily on quotations from the Court's opinion— divorced from their context—that Plaintiffs interpret to cast doubt on the legality of other income-contingent repayment plans that they never actually challenged. For example, Plaintiffs repeatedly quote the Court as saying "Congress has made it clear under what circumstances loan forgiveness is permitted, and the ICR plan is not one of those circumstances." Pls.' Mot. at 1-2 (quoting Mem. & Order at 44). But that very paragraph concludes, just a few sentences later, with a far less definitive statement, which also makes explicit reference to the SAVE Plan: that "Defendants' interpretation is questionable," and thus that "Plaintiffs, therefore, have a 'fair chance' of success on the merits on their claim that the Secretary has overstepped its authority by promulgating a loan forgiveness provision *as part of the SAVE program*." Mem. & Order at 45 (emphasis added). Although that language supports Plaintiffs' interpretation of the statute, on the merits—at least at this early stage—it does not purport to be a definitive pronouncement about the Court's views, let alone a binding order. And even if it were, the Court's stated conclusion was expressly limited to "the SAVE program." *Id.*; *see also, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.").

Of course, a court's opinion can provide useful "context" for interpreting "the four corners of the order," *Garrido*, 731 F.3d at 1159, particularly if the order is ambiguous. But, as discussed above,

the "context" here confirms that the SAVE Plan was the only ICR plan ever before this Court. And ultimately, it is the Court's order that controls. A federal court "afford[s] relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (emphasis in original); *see also, e.g.*, *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992) ("[A] judgment and the reasons given in support of it are two different things."). The Court's opinion—although of great interest to the parties and the public—itself has no coercive power. That is why the Court appropriately included separate, bolded language at the end of its Memorandum & Order at 61, ECF No. 35, and then also issued a separate document—captioned "**PRELIMINARY INJUNCTION**"—which sets forth the precise terms with which Defendants are legally obligated to comply, Prelim. Inj. at 1.

That separate decretal language was not some superfluous formality. Rather, it was required by Federal Rule of Civil Procedure 65(d), which provides that "[e]very order granting an injunction . . . must . . . state its terms specifically," and "describe in reasonable detail . . . the act or acts restrained." Rule 65 includes this requirement for good reason: such specificity and precision is the only way for Defendants to know, exactly, what is and is not enjoined, and thus what conduct will or will not subject Defendants to the risk of contempt. *See, e.g.*, *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."). Thus, on Defendants' interpretation of the injunction, the Court complied fully with the requirements of Rule 65(d) by specifying in a separate order that the injunction applies only to future loan forgiveness "under the Final Rule's SAVE Plan," Prelim. Inj. at 1.

By contrast, on Plaintiffs' view, to determine what is or is not enjoined, Defendants would have had to parse a 60-page opinion, distinguishing the sentences that purported to operate as binding legal obligations from the sentences that merely reflect the Court's discussion of various arguments and counterarguments—and then risk contempt for any misstep about the Court's subjective intent. That is the sort of outcome that is prevented by Rule 65(d), and by the short, separate order that the

Court issued in compliance therewith.  After all, "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Schmidt*, 414 U.S. at 476; *accord Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 444 (1974) ("[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.").  These concerns are heightened in a case like this one, in which the judiciary is being forced to referee a dispute between sovereigns.  *Cf. Gunn v. Univ. Comm. to End War in Vietnam*, 399 U.S. 383, 389 (1970) (Rule 65(d) "is essential in cases where private conduct is sought to be enjoined. . . .  It is absolutely vital in a case where a federal court is asked to nullify a law duly enacted by a sovereign State.").

Indeed, Plaintiffs' own motion for clarification itself is unable to settle on any single, definitive interpretation of what is or is not enjoined.  *See, e.g.*, Pls.' Mot. at 3 n.2 (arguing in a footnote, in the alternative, that "[e]ven if SAVE had not replaced REPAYE, Defendants would at most be permitted by the injunction to forgive loans on other plans, not loans enrolled in the SAVE plan").  An interpretation of the Court's order in which Defendants (or even Plaintiffs) "are left to guess about its intended" scope should be rejected out of hand, *Granny Goose*, 415 U.S. at 444—especially in the context of what purports to be a motion for "clarification."

In any event, even focusing on the opinion alone, the Court's bottom-line conclusion was that Plaintiffs "are *likely* to be successful on the merits" of the claim "that the Secretary lacks the requisite congressional authority to forgive loans *under the SAVE plan*."  Mem. & Order at 60 (emphases added).  There is no basis to expand that conclusion now to reach other questions that were not before the Court during the actual briefing on Plaintiffs' motion for a preliminary injunction.

**5.**  Finally, Plaintiffs argue that "Defendants' position makes no sense for the additional reason that they are trying to forgive loans between 20 and 25 years for borrowers who were never in any previous ICR program."  Pls.' Mot. at 4.  But Plaintiffs offer no explanation as to why that "makes no sense," *id.*, or how that approach would violate this Court's order.  It is true that many borrowers signed up for (what they thought would be) the SAVE Plan who had not previously signed up for

other income-contingent repayment plans. *See* Dep't of Education, *Federal Student Aid*, https://studentaid.gov/data-center/student/portfolio. But as long as this Court's preliminary injunction is in effect, none of those recent enrollees (nor anyone else) will receive loan forgiveness under the terms of the SAVE Plan (rather than under the terms of other ICR plans, like REPAYE). Regardless, the proportion of recent enrollees has nothing to do with the extent of the Department's legal authorities. Nothing in the Court's preliminary injunction purports to cut off past, present, or future enrollment for any group of borrowers, in any plan. And borrowers often switch between different repayment plans. *See* 20 U.S.C. § 1087e(d)(3); 34 C.F.R. § 685.210(b). So Plaintiffs' observation about recent SAVE enrollees has nothing to do with the question before the Court.

## CONCLUSION

For these reasons, the Court should clarify that it has preliminarily enjoined future loan forgiveness only under the terms of "the Final Rule's SAVE Plan," Prelim. Inj. at 1—not under the terms of any other income-contingent repayment plans, such as REPAYE, PAYE, or the original ICR Plan.

Dated: July 8, 2024                     Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        MARCIA BERMAN
                                        Assistant Branch Director

                                        */s/ Stephen M. Pezzi*
                                        STEPHEN M. PEZZI (D.C. Bar No. 995500)
                                        Senior Trial Counsel
                                        SIMON G. JEROME (D.C. Bar No. 1779245)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, DC 20005
                                        Tel: (202) 305-8576
                                        Email: stephen.pezzi@usdoj.gov

                                        *Counsel for Defendants*