**ATTACHMENT 1**
**MEMORANDUM IN SUPPORT OF THE MOTION FOR LEAVE TO INTERVENE AND EXHIBITS**

**[BEGINS ON THE FOLLOWING PAGE]**

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| STATE OF MISSOURI, *et al*., | |
| Plaintiffs, | |
| v. | **Civil Action No. 4:24-cv-000520-JAR** |
| DONALD J. TRUMP, *et al*., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF THE MOTION FOR LEAVE TO INTERVENE

### INTRODUCTION

As a result of this Court's June 2024 enjoining of the SAVE Plan, those with loans in that Plan, like the proposed intervenor Taylor Anthony Story ("Proposed Intervenor") had their loans placed in a zero-interest forbearance. Or, at least, they were supposed to. Since then, however, Proposed Intervenor's loan balances and accrued interest have continued to rise. In some instances, the balance increase has outpaced the interest added – without any explanation. And such increases have continued even as Proposed Intervenor made numerous payments during the period.

The loan servicer says only the Department of Education ("Department") can fix those issues. No one at the Department seems able to help. And the Department's online portal for raising such issues remains "unavailable" to this day. Nor can the Department's Office of Inspector General ("OIG") help. The OIG says the issues must be submitted through the online portal. The same one that still does not work.

1

Now, the Government seeks to reinstate and restart interest accrual on these loans on August 1, 2025. Which it asserts it must do so to comply with this Court's recent order. However, it seemingly has no interest in fixing the issues it has caused with Proposed Intervenor's loans during the zero-interest forbearance period. After all, according to the Department's email to affected borrowers sent this week "your federal student loan balance [ ] has not grown during your forbearance." For Proposed Intervenor, that is not true.

The increase in balances and accrued interest, and addition of other unaccounted for sums during the zero-interest forbearance has resulted in significant financial harm to Proposed Intervenor. Permitting the Government to reinstate and restart interest without first fixing those numerous errors will result in increased significant financial injury to Proposed Intervenor. Injuries that will grow daily.

For those reasons, Proposed Intervenor respectfully asks this court to immediately enter a temporary restraining order ("TRO") enjoining the Government from reinstating and restarting interest accrual before correcting the numerous errors made on Proposed Intervenor's student loans during the zero-interest forbearance period. In the alternative, Proposed Intervenor respectfully requests this Court enter a preliminary injunction enjoining the same.

## BACKGROUND

I.  **Procedural History**.

On April 9, 2024, seven states, led by the state of Missouri (the "Plaintiffs"), sued the then-President Jospeh Biden and Secretary of Education Miguel Cardona,[1] and the United States

---

[1] Pursuant to Federal Rule of Civil Procedure President Donald J. Trump and Secretary of Education Linda McMahon were substituted as parties for the President and Secretary of Education. Fed. R. Civ. P. 25(d).

Department of Education (collectively the "Government") challenging the SAVE Plan for student loans implemented by the Biden Administration. This Court's previous Memorandum and Order, ECF No. 35 (Jun. 24, 2024), and the recent opinion of the United States Court of Appeals for the Eighth Circuit, *Missouri v. Trump*, No. 24-2332, ECF No. 66 (Feb. 18, 2025), thoroughly recount the procedural background to that point.

Following the Eighth Circuit's decision, this Court entered an Order "preliminarily enjoin[ing] [Defendants] from implementing the [Department of Education] Final Rule's SAVE plan and the hybrid rule that was implemented following the Court's previous preliminary injunction until such time as this Court can decide the case on the merits." ECF No. 69 (Apr. 14, 2025). The Court directed the parties to submit a joint status report advising on all outstanding matter and a joint proposed scheduling plan by May 5, 2025. *Id*. After that joint status report was submitted, ECF No. 70 (May 5, 2025), the Court entered another order directing the provision of an updated joint status report by the parties no later than August 4, 2025, ECF No. 71 (May 6, 2025).

Following this Court's July 2024 injunction, Defendant Department of Education (hereinafter individually "Department") announced that loans in the SAVE Plan would be placed into a zero-interest forbearance during the pendency of litigation. On July 9, 2025, the Department issued a press release titled "U.S. Department of Education Continues to Improve Federal Student Loan Repayment Options, Addresses Illegal Biden Administration Actions. *See U.S Department of Education Continues to Improve Federal Student Loan Repayment Options*, *U.S. Department of Education Addresses Illegal Biden Administration Actions*, U.S. DEPARTMENT OF EDUCATION,

3

(Jul 9, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-continues-improve-federal-student-loan-repayment-options-addresses-illegal-biden-administration-actions. It provided, as relevant here, that the Department had directed student loan servicers to reinstate and restart interest accrual on August 1, 2025. *Id*. Which the Department asserts is necessary to comply with this Court's most recent order. For conciseness, the period from July 2024 when the zero-interest forbearance went into effect through the present day (and up to August 1, 2025) is hereinafter referred to as the "Forbearance Period."

II.    **Factual Background**.

Proposed Intervenor is one of the millions of individuals who has taken out federal student loans to finance the cost of post-secondary education. He is also one of the numerous people who applied for and had his loans placed into the SAVE Plan shortly. From the date those loans were placed into the SAVE Plan until earlier this year there was relatively little issue with the loans. Then, chaos ensued. Fortunately, as far back as October 2024, Proposed Intervenor has recorded the balance of each of loan as of the start and end of every month. *See* Exhibit 1 Proposed Intervenor's Recorded Loan Balance Records.[2]

---

[2] Proposed Intervenor has provided excerpts from his personally kept monthly financial records to avoid providing the entirety of his personal financial information. Proposed Intervenor has also redacted such information that is within those provided excerpts.

On December 1, 2024, the Missouri Higher Education Loan Authority ("MOHELA") sent Proposed Intervenor the following breakdown of his student loans:

**LOAN INFORMATION**

| Loan Sequence | Original Principal Amount | Current Balance | Interest Rate | Unpaid Accrued Interest To Date |
|---|---|---|---|---|
| 1-01 | $4,500.00 | $4,342.73 | 0.000% | $43.13 |
| 1-02 | $5,500.00 | $5,333.37 | 0.000% | $42.01 |
| 1-03 | $20,500.00 | $16,369.93 | 0.000% | $0.00 |
| 1-04 | $20,500.00 | $20,500.00 | 0.000% | $92.97 |
| 1-05 | $20,500.00 | $20,090.93 | 0.000% | $0.00 |

(hereinafter the "December Letter"). *See* Exhibit 2 December Letter from MOHELA, Pg. 3. At that time, the Forbearance Period had already begun. So, this is the first record, other than Proposed Intervenor's own regularly recorded records, of the balances on his student loans during the Forbearance Period before numerous errors began to occur. To provide clarity, the history is broken down loan-by-loan.

**a. Loan 1-01.**

As of the December Letter, Loan 1-01 had a balance of $4,342.73 and unpaid accrued interest of $43.13. Exhibit 2, Pg. 3. By the start of January 2025, the balance had increased to $4,355.87. The accrued interest remaining unchanged. *See* Exhibit 1, Pg. 3. An April 2, 2025, letter from MOHELA, sent in response to a request for the financial activity history made by Proposed Intervenor, shows the balance and unpaid accrued interest still unchanged (hereinafter the "April Letter"). *See* Exhibit 3 April Letter from MOHELA, Pg. 3. By the end of April, however, the balance had increased to $4,393.52. *See* Exhibit 1, Pg. 6. The accrued interest again remained the same. Because this loan had the least number of issues, Proposed Intervenor paid off the loan on

5

May 3, 2025, in the amount of $4,393.52. *See* Exhibit 8 Loan 1-01 Pay Off, Pg. 2. Which is $50.79 higher than the balance stated in the December Letter. *See* Exhibit 2, Pg. 3.

    b. **Loan 1-02**.

       As of the December Letter, Loan 1-02 had a balance of $5,333.37 and $42.01 in existing accrued interest. Exhibit 2, Pg. 3. Yet, Proposed Intervenor's records of that date show that the online portals listed a balance of $5,291.36. *See* Exhibit 1, Pg. 2. By the end of December, the balance had increased to $5,352.67, with the accrued interest remaining the same. Both remained unchanged through the start of February 2025. *See* Exhibit 1, Pgs. 3-4. On February 2, 2025, Proposed Intervenor made a $100.00 targeted payment on the loan as part of a larger targeted payment. At the end of February, the balance was $5,252.67. *See* Exhibit 1, Pg. 4. By the end of March, it had risen to $5,576.52. *See* Exhibit 1, Pg. 5. By the end April, it had risen to $5,621.40. *See* Exhibit 1, Pg. 6. Yet, the April Letter stated a current balance of $5,418.06. *See* Exhibit 3, Pg. 3. Which also matched the listed balance stated in a June 1, 2025, MOHELA letter (hereinafter "June Letter"). *See* Exhibit 5, June Letter from MOHELA, Pg. 3. However, as of the date of this memorandum, both MOHELA and the Department's online portals show a current balance of $5,621.40 and unpaid accrued interest of $203.34 *See* Exhibit 4 Current Status of loans, Pgs. 2-3.

    c. **Loan 1-03.**

       As of the December Letter, Loan 1-03 had a balance of $16,369.93 and $0.00 in existing accrued interest. *See* Exhibit 2, Pg. 3. On December 22, 2024, Proposed Intervenor made a targeted

payment of $250.00.[3] Yet, the balance at the end of December was $16,303.62, a decrease of just $66.31. *See* Exhibit 1, Pg. 2. On January 7, 2025, another targeted payment of $200.00 was made. At the end of January and start of February, the balance was $16,103.62.[4]

On February 2, 2025, another $200.00 targeted payment was made. At the end of February and start of March, the balance was $15,903.62. *See* Exhibit 1, Pgs. 4-5. Another $300.00 targeted payment was made at the start of March. By the end of March and the start of April, the balance had increased to $16,654.36. *See* Exhibit 1, Pgs. 5-6. However, the April Letter states a balance of $16,397.11. *See* Exhibit 3, Pg. 3. By the end of April, the stated balance had increased to $16,855.83. *See* Exhibit 1, Pg. 6. However, the June Letter states a current balance of $16,397.71, and accrued interest of $458.12. *See* Exhibit 5, Pg. 3. As of the date of this memorandum, both online portals show a current balance of $16,855.83, and the unpaid interest of $458.12. *See* Exhibit 4, Pgs. 4-5.

d. **Loan 1-04**.

As of the December Letter, Loan 1-04 had a balance of $20,500.00 and existing accrued interest of $92.97. *See* Exhibit 2, Pg. 3. By the end of December, the balance had increased to $20,698.74. *See* Exhibit 1, Pg. 2. On January 7, 2025, Proposed Intervenor made a $100.00 targeted payment. The balance at the end of January was $20,598.74. *See* Exhibit 1, Pg. 3. Another $100.00 targeted payment was made on February 2, 2025. At the end of February, the balance was $20,498.74. *See* Exhibit 1, Pg. 4. Another targeted payment of $200.00 was made on March 1,

---

[3] Despite there being no existing unpaid interest as of the December Letter, the April Letter states that the targeted payment went to interest. Which is more concerning when one considers that as of the December Letter, the total existing unpaid interest across all loans was just $178.11.
[4] While this reflects the more recent $200.00 payment, it still omits $66.31 of the first targeted payment.

7

2025. Yet, by the end of March, the balance had increased to $20,618.45. *See* Exhibit 1, Pg. 5. As of today's date, both online portals list the same current balance, but unpaid accrued interest is now listed at $118.45. *See* Exhibit 4, Pgs. 6-7. It is worth noting that the balance increase has outpaced the increase in accrued interest, without any explanation.

    **e.  Loan 1-05**.

    For Loan 1-05, the December Letter lists a balance of $20,090.93 and $0.00 existing accrued interest. *See* Exhibit 2, Pg. 3. At the start of April, the balance and accrued interest remained the same. *See* Exhibit 1, Pg. 6. By April 14, 2025, the balance had increased to $20,544.38 and the unpaid interest had gone from $0.00 to $447.80. *See* Exhibit 9 April 14 Status Loan 1-05. Unlike the other loans, it no longer showed a 0.00% interest rate. Instead, it now showed an active interest rate of 4.30%. *See* Exhibit 9. By the end of April, the balance in Proposed Intervenor's records show the balance had increased to $20,584.60 and but the interest had decreased to $424.14. See Exhibit 1, Pg. 6. By the end of May, the balance had increased to $20,657.94, and the interest had increased to $433.61. By the end of June, the balance had decreased to $20,156.40, but the accrued interest had risen to $561.36. As of today's date, the balance remains at $20,156.40. Yet, the accrued interest is now just $59.82. *See* Exhibit 4, Pgs. 8-9. Unlike the other loans, no targeted payments were made towards this loan after the December Letter.

## LEGAL STANDARD

A prospective intervenor must "establish Article III standing in addition to the requirements of [Federal Rule of Civil Procedure] 24." *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).

To establish standing, the prospective intervenor must show at a minimum "an injury in fact, meaning the actual or imminent invasion of a concrete and particularized legal interest; a causal connection between the alleged injury and the challenged action of defendant; and a likelihood that the injury will be redressed by a favorable decision of the court." *Kuehl v. Sellner*, 887 F.3d 845, 850 (8th Cir. 2018) (quoting *Sierra Club v. Kimbell*, 623 F.3d 549, 556 (8th Cir. 2010)).

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right and requires granting intervention where: (1) the motion to intervene is timely; (2) the movant claims an interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may impair or impede the movant's ability to protect that interest; and (4) the movant's interest is inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a); *Nat'l Parks Conservation Ass'n v. U.S. Env. Prot. Agency*, 759 F.3d 969, 975 (8th Cir. 2014).

Federal Rule of Civil Procedure 24(b) allows a court to permit intervention where the movant makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). In

9

the context of permissive intervention, "[t]he Eighth Circuit has advised district courts to err on the side of intervention." *Henderson v. Black & Decker (U.S.) Inc*., Civ. No. 1:20-cv-00173, 2021 WL 1546139, at *3 (E.D. Mo. Apr. 20, 2021) (citing *Corby Recreation, Inc. v. Gen. Electric Co*., 581 F.2d 175, 177 (8th Cir. 1978)). When assessing a motion to intervene, a court "must accept as true all material allegations" and "construe the motion in favor of the prospective intervenor." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 973. "Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Id*. at 975 (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).

## ARGUMENT

I. **Proposed Intervenor has Standing to Intervene**.

    a. **Injury-in-Fact**.

An injury-in-fact sufficient to confer standing is an injury "that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citation omitted). Financial harms, no matter how minor, constitute injuries-in-fact. *See, e.g., Czyzewski v. Jevic Holding Corp*., 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury'"); *Demarais v. Gurstel Chargo, P.A*., 869 F.3d 685, 693 (8th Cir. 2017) (same). Intangible harms can also constitute concrete harms. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (gathering sources). And future injuries can support standing so long as "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

10

Proposed Intervenor has student loans in the SAVE Plan. In July 2024, the Government placed such loans into zero-interest forbearance. Or, at least, it said that it did. In an email sent just days ago, the Department asserts that:

> In July 2024, a federal court injunction blocked parts of the Saving on a Valuable Education (SAVE) Plan. *As a result, your federal student loans were placed in forbearance with a 0% interest rate.* **Because interest has not accrued, your federal student loan balance (which includes principal and interest) has not grown during your forbearance.**

Exhibit 6 July 15, 2025, Department Email (emphasis added).

For Proposed Intervenor's student loans that is simply not the case. During the Forbearance Period, his loan balances and accrued interest have continually risen. *See supra* Pgs. 4-8. Demonstrating the actual, concrete and particularized, financial injury to Proposed Intervenor requires looking at what the balances would be today if the loans had actually been at zero-interest throughout the Forbearance Period - which the Government contented is the case. For Loan 1-01, Proposed Intervenor paid it off in the amount of $4,393.52, *see* Exhibit 8 Loan 1-01 Pay Off, even though the balance before all the issues during Forbearance Period was just $4,342.72, *see* Exhibit 2, Pg. 3. Meaning Proposed Intervenor was financially injured by being required to repay an extra $50.79.[5]

For Loan 1-02, the financial injury is the actual and concrete and particularized financial injury resulting from the $288.03 added to the outstanding balance and the $161.33 added to the

---

[5] To the extent it is suggested that Proposed Intervenor actualized his own injury with respect to Loan 1-01 by paying off the errant balance such contentions should be rejected. After all, Proposed Intervenor only paid off this loan because it contained the least number of egregious errors among his loans. In paying it off, Proposed Intervenor aimed to mitigate the harm from increasing any further. Which, when one considers what has occurred with the remaining four loans, can hardly be dismissed as improper.

accrued interest during the Forbearance Period. Once those errors are corrected, the $100.00 targeted payment made on the loan during the Forbearance Period would still need to be subtracted. *See supra* Pg. 6. For Loan 1-03, the financial injury is the actual and concrete and particularized injury resulting from the $458.90 added to the outstanding balance and the $458.12 added to the accrued interest during the Forbearance Period. Once those errors are corrected, the failure to properly credit the first $250.00 would need correcting and then the $950.00 in targeted payments made during the Forbearance Period would still need to be subtracted. *See supra* Pgs. 6-7.

For Loan 1-04, the financial injury is the actual and concrete and particularized financial injury resulting from the $118.45 added to the outstanding balance and the $25.48 added to the accrued interest during the Forbearance Period. Once those errors are corrected, the $400.00 in targeted payments made during the Forbearance Period would still need to be subtracted. *See supra* Pgs. 7-8. Lastly, for Loan 1-05, the financial injury is the actual and concrete and particularized financial injury resulting from the $65.47 added to the outstanding balance and the $59.82 added to the accrued interest during the Forbearance Period. *See supra* Pg. 8.

To summarize the existing financial injuries, during the same period in which zero-interest forbearance was in effect, during which the Government asserts loan balances and accrued interest did not grow, Proposed Intervenor's balance has grown by $981.64. The accrued interest has grown by $704.75. And he has made $1,450.00 that were not properly deducted from the corrected balance. Totaling an already existing financial injury of $3,136.39.

Before turning to the future injuries, Proposed Intervenor pauses to note multiple complications with ascertaining the exact injury amount. On at least one occasion, payment has

12

not been properly accounted for. Following the December 22, 2024, targeted $250.00 payment made on Loan 1-03. Yet, the balance went from $16,369.93 to $16,303.62, a decrease of just $66.31. *See supra* Pgs. 6-7. In other instances, loans have had random amount of interest added, then partially reduced, then partially added back. For example, at the start of April 2025, Loan 1-05 still had $0.00 in accrued interest. Fourteen days later the interest had jumped to $447.80. By the end of the month, it had jumped to $424.14. By the end of June, it had again jumped to $561.36. Yet, as of this date it has decreased to $59.82. *See supra* Pg. 8.

That set of occurrences illustrates yet another complication. For example, between the December Letter and the end of April the balance of Loan 1-05 had increased by $493.67. *Id*. But the accrued interest had only risen by $424.14, leaving $69.53 of the increase unexplained. *Id*. Lastly, before all the changes in balances and interest began, the total outstanding accrued interest was just $178.11 ($134.98 if Lon 1-01 is excluded). *Id*. at Pg 4. From that date to present, Proposed Intervenor has made $1,450.00 in targeted payments. Yet, the April Letter providing the financial activity on the account asserts that the $1,450.00 in payments made during the Forbearance Period went exclusively towards interest. *See* Exhibit 3, Pg. 6. Several other discrepancies that exist; however, these sufficiently illustrate the difficult task of calculating the exact extent of the financial injury.

Turning now to the imminent future injuries. If the Government reinstates and restarts interest accrual on August 1, 2025, Proposed Intervenor will be forced to pick between the lesser of two injuries. He can continue making payments which will only further complicate remedying the already existing errors. Or he can withhold from making payments until the issues are fixed

13

which result in additional interest accruing daily, with no guarantee the Government will fix the errors. Which is not completely implausible given the Government's apparent belief that Proposed Intervenor's loan balances have not grown since July 2024. *See* Exhibit 6, Pg. 2. If the restart is permitted to go into effect, Proposed Intervenor's injuries will grow further through the increased interest accrual that will result from interest being calculated on the inflated balances. That, in turn, will lead to Proposed Intervenor paying back even more than he otherwise would.

If the balances and accrued interest are not corrected before August 1, 2025, Proposed Intervenor will also have higher monthly payments than he otherwise would. Thus, injuring him through the loss of funds he would otherwise use for daily life.  While the Government contends that required payments will not be required immediately, not making payments will only lead to further interest accumulation.

All of those will also lengthen the time it takes Proposed Intervenor to pay off his loans. After all, he will have to first pay off all the added amounts, during which time interest will keep accruing, before he can return to paying down the amount that should remain. And, all these harms are certainly impending given the Government's August 1, 2025, restart date and given the Government's seeming unawareness of the issues and dis-interest in redressing them, there is a substantial risk of the financial injury's occurrence.

For all those reasons, Proposed Intervenor has demonstrated a sufficient injury-in-fact to establish standing. *See, e.g., Czyzewski*., 137 S. Ct. at 983; *Demarais*, 869 F.3d at 693.

14

b. **Causation**.

To establish causation, the proposed intervenor must demonstrate that the injury is fairly traceable to the defendants' conduct. *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (citation omitted); *see Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019) ("Article III requires no more than de facto causality.").

Proposed Intervenor's existing and imminent financial injuries are fairly traceable to the Government. Federal student loans are established and governed by federal statute: The Higher Education Act of 1965. *Biden v. Nebraska*, 600 U.S. ___, No 22-506 at *7 (2023). While entities like MOHELA administer student loans, the Government – through the Department – holds those loans. Consistent with that framework, the Government decided to implement the zero-interest forbearance. In fact, the Government's most recent announcement explicitly declares such control. *See* U.S. DEPARTMENT OF EDUCATION, *supra* Pgs. 3-4. The Government failure to place Intervenor's qualifying student loans in the zero-interest forbearance, the resulting financial harm, and the resulting impending harm, are traceable to the Government.

The occurrences to date further support that traceability. Proposed Intervenor initially contacted MOHELA to remedy the issues. Each time MOHELA's representative stated that they could not do anything to rectify the sums added because such action could only be taken by the Department. So, the MOHELA representative directed Proposed Intervenor to contact the Department regarding the issue. *See infra* Pgs. 20-21.

15

c. **Redressability**.

A proposed intervenor "[ ] satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself," though "[h]e need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (effectuating "a partial remedy satisfies the redressability requirement") (cleaned up). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Here, the redressability prong is satisfied for the existing ongoing injuries and the imminent future injuries. A court order enjoining the Government from reinstating and restarting interest accrual will, at minimum, prevent the further exacerbation of Proposed Intervenor's injuries and prevent remedy those injuries from becoming even more difficult. If the Court enjoin such action until such time as the Government can show it has rectified the issues with Proposed Intervenor's student loans, that will also redress the existing injuries. Even if the Court was unwilling to impose the additional requirement on the Government, the relief provided need not fully resolve all injuries to satisfy Article III requirements. *See Massachusetts v. U.S. Env. Prot. Agency*, 549 U.S. 497, 525 (2007) (finding redress- ability where a court order could provide partial relief). Such relief would also avoid imposing upon Proposed Intervenor the further burden of seeking other relief, which is likely to be expensive and exceedingly difficult given that the Government has essentially foreclosed existing avenue to remedy the issue without litigation. *See infra* Pgs. 20-21.

16

II.     **Proposed Intervenor is Entitled to Intervention as of Right**.

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit anyone to intervene who: (1) files a timely motion to intervene; (2) "claims an interest relating to the property or transaction that is the subject of the action"; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties. *See* Fed. R. Civ. P. 24(a)(2); *see also South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Rule 24 should be construed liberally, with all "doubts resolved in favor of the proposed intervenor." *Turn Key Gaming*, 164 F.3d at 1081 (citing *United States v. Union Electric Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995).

a.  **Proposed Intervenors' Motion Is Timely**.

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993).

Intervenor did not delay seeking intervention. The Government announced its intention to reinstate and restart accrual on July 9, 2025. Intervenor brings his request to intervene within days of that announcement. The litigation has also not progressed to a significant degree to prevent intervention. The case essentially remains in the posture when this Court originally enjoined the SAVE Plan in April 2024. Since then, the Eighth Circuit heard the appeal and issued a decision,

17

and this Court entered another order in April 2025 implementing the Eight Circuit's decision. That injunction remains in effect. A case management order has also not been entered in the case, so no traditional deadlines exist. The only current deadline is the filing of the next joint status report.

Intervention also poses no risk of prejudice to the existing parties. The Court has already granted the Plaintiff's request to enjoin the SAVE Plan, and the plan remains enjoined to date. Permitting intervention will also not interfere with Plaintiff's ultimate requested relief – invalidation of the SAVE Plan. Nor does the request pose any risk of prejudice to the Government. After all, Proposed Intervenor does not seek to prevent the Government from reinstating interest or restarting interest accrual on the loans; instead, he seeks only for the Government to do as it promised before doing so: leave the balance and accrued interest on those loans at what it was when the Forbearance Period began. *See Union Elec. Co.*, 64 F.3d at 1159 (prejudice arises from delay—not because intervention may cause "the nature, duration, or disposition of the lawsuit to change").

   b.  **Proposed Intervenor has a Recognized Interest in the Subject Matter of this Litigation**.

To intervene, an intervenor must have "a recognized interest in the subject matter of the litigation," *see Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996), "that goes beyond a generalized preference that the case come out a certain way," *Mt. Hawley Ins. Co. v. Kaashagen & Sons, Inc.*, Civ. No. 17-cv-4465, 2018 WL 11220338, at *6 (D. Minn. Apr. 13, 2018). This test is not a stringent one. *See Union Elec.*, 64 F.3d at 1162.

Proposed Intervenor has loans in the SAVE Plan, the very plan at the heart of this litigation. Because of that his loans were supposed to be placed into zero-interest forbearance. As is now

18

apparent, that did not happen. *See supra* Pgs. 4-8. The Government now asserts that it is ending the zero-interest forbearance to comply with this Court's most recent order. A point which neither the Eighth Circuit, nor this Court, seemingly explicitly addressed in their previous decision.

Thus, Proposed Intervenor has a very real interest in the subject matter of this litigation. One which extends well beyond a generalized preference in the outcome of this case. In fact, Proposed Intervenor takes no position on the validity of the SAVE Plan. Instead, he seeks only to prevent the Government from inflicting significant financial harm upon him and using this Court as the guise under which to do it. The existence of a financial stake in the subject matter of the litigation is sufficient to satisfy Rule 24(a)(2)'s interest requirement. *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976.

### c. Resolution of this Action Would Practically Impair and Impede Proposed Intervenor's Ability to Protect his Interest.

An intervenor must demonstrate that "disposition of the lawsuit may as a practical matter impair or impede [the intervenor's] ability to protect its interest." *Id*. at 975. This is a low threshold. Proposed Intervenors need only demonstrate that their interests "may be" impaired, not that they necessarily "would be." *Union Elec*., 64 F.3d at 1161 (citing *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc*., 60 F.3d 1304, 1307 (8th Cir. 1995)).

Proposed Intervenor clearly overcomes that low threshold. As a practical matter, disposition of this matter, without permitting intervention, would significantly impair Proposed Intervenor's ability to prevent the Government from doing the opposite of what it promised – place loans like his into zero-interest forbearance during the pendency of this matter. It would also impair Proposed Intervenor's ability to have those extra sums removed from his loans. And it would all

19

but certainly impair his ability to do so before the Government began charging him significant amounts extra in interest by calculating it on inflated balances.

If that is not sufficient, consider again the Department of Education's July 15th email to Proposed Intervenor. Which reads in relevant part as follows:

> In July 2024, a federal court injunction blocked parts of the Saving on a Valuable Education (SAVE) Plan. *As a result, your federal student loans were placed in forbearance with a 0% interest rate.* ***Because interest has not accrued, your federal student loan balance (which includes principal and interest) has not grown during your forbearance.***
>
> In February 2025, a second federal court injunction ended this 0% interest rate. To comply with this injunction, your loan(s) in the SAVE forbearance will begin accruing interest on Aug. 1, 2025.

Exhibit 6, Pg. 2 (emphasis added).

The Government itself contends that balances on those loans have not increased because zero- interest forbearance was in effect. As Proposed Intervenor's experience demonstrates, that is simply false. Not only have the balances increased and interest added, but also extra unexplained sums have been added as well. A point which the Government seems completely unaware of.

If that is likewise insufficient, consider the further practical implications of denying intervention when the Government has effectively foreclosed every meaningful avenue to remedy the issues. When the issues first arose, Proposed Intervenor contacted MOHELA multiple times. After waiting more than three hours, when Proposed Intervenor called MOHELA on April 2, 2025, he was told that MOHELA could not do anything, only the Department can address such issues. Once the financial activity report came, Proposed Intervenor again contacted MOHELA. After waiting a few hours, he was told he needed to talk to a different department and was transferred

20

there. After waiting a few more hours, someone finally picked up. But it was the same answer again.

Proposed Intervenor then attempted to contact the Department. No one could seemingly help there either. And when he attempted to submit an online complaint through the Department's Student Aid website, he was redirected after filling in all of the required information to a page that read "[t]his Page in currently unavailable," and "[w]e're unable to take your feedback right now. We are working to resolve this issue as quickly as possible. Please come back later to resubmit. We apologize for the inconvenience." Each time Proposed Intervenor has attempted to submit a complaint since then (from March through today's date), the same currently unavailable page comes up.

After multiple failed attempts to submit an online complaint, Proposed intervenor submitted a complaint to the Department Office of Inspector General ("OIG"). The OIG responded, sometime later, that it had "determined the [Department's] Office of Federal Student Aid (FSA) is the appropriate office to address your concerns." And that Proposed Intervenor "should file a complaint at the FSA Feedback Center Submit a Complaint (studentaid.gov) and reference the OIG case number provided in this email." See Exhibit 7 Department OIG Email, Pg. 2. (The same online complaint form that has not worked since these issues began.

For those reasons, disposing of this suit without permitting intervention would not just impair or impede Proposed Intervenor's ability to protect its interest. It would all but destroy it. *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (citing *Natural Res. Def. Council v. Castle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (examining "the 'practical consequences' of denying

21

intervention, even where the possibility of a future challenge to the regulation remained available")).

    d.  **Proposed Intervenors are not Adequatley Represented by the Parties**.

"A proposed intervenor typically need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties. *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (quoting *Mille Lacs*, 989 F.2d at 999) (internal quotations omitted). Adequacy is assessed by comparing "the interests of the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992).

Proposed Intervenor clearly satisfies the minimal burden. Plaintiffs' filed suit seeking to enjoin and ultimately nullify the SAVE Plan. The Government actively defended the SAVE Plan. Plaintiffs', however, successfully obtained injunctive relief. But now here is now ample reason to believe the Government will abandon its defense of the SAVE Plan following the change of administration, *see* U.S. DEPARTMENT OF EDUCATION, *supra* Pgs. 3-4, and changes stemming from legislation put forth by the new administration and recently signed into law. Instead, it now appears that Plaintiffs' and the Government's now share a common legal goal. Meaning that none of the parties share a "common legal goal" with Proposed Intervenor. *Kan. Pub. Emps. Ret. Sys.*, 60 F.3d at 1309.

Notwithstanding, the original goals asserted by both parties are wholly different than Proposed Intervenor's interest. Proposed Intervenor does not seek intervention to litigate the question of the SAVE Plan's validity. Instead, he seeks to intervene to enjoin the Government

from reinstating and restarting interest accrual until it fixes the numerous errors it had made with Prospective Intervenor's student loans. Thus, Proposed Intervenor interest is not represented by any of the existing parties.

Proposed Intervenor notes that the state Florida, his state of domiciliary, is a party in this matter, as is a federal governmental agency, the Department. Under the concept of *parens patriae*, when one of the existing parties is a state or governmental agency "and the case concerns a matter of sovereign interest, the bar is raised, because in such cases the government is presumed to represent the interests of all its citizens." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (internal quotations omitted) (citing *Mausolf*, 85 F.3d at 1302; *Mille Lacs*, 989 F.2d at 999).

Proposed Intervenor's asserted interest is not a sovereign one. It a specific and narrow interest in preventing the Government's ongoing and impending significant financial harm on Proposed Intervenor. Specifically, he seeks to enjoin the implementation of interest and accrual until such time as the Government remedies it numerous wrongs with respect to Prospective Intervenor's student loans. The result of which would increase the already significant financial burden. *See Mille Lacs*, 989 F.2d at 1001 (*parens patriae* doctrine did not apply because "[t]he counties' interests in land are narrower interests not subsumed in the general interest Minnesota asserts in protecting fish and game"); *Union Elec. Co.*, 64 F.3d at 1170 (holding that EPA did not adequately represent proposed intervenors' "parochial" interest in avoiding liability).

Even if the asserted interest is viewed as a sovereign one, sufficient reason exists to overcome the presumption of adequate representation. As detailed previously, the existing parties'

23

interests use to be adverse. One side wanted the SAVE Plan struck down. The other wants it upheld. Proposed Intervenors interest diverge from those interests in so far as his interest is more than constitutional assertions and procedural formality, it is a narrow and specific interest in preventing significant financial harm to himself based on the Government's actions. Moreover, as noted earlier, the parties no longer appear to have adverse interests as the new administration likewise wants to do away with the SAVE Plan.

Notwithstanding, the record here alone is adequate to overcome the presumption. The loan servicer MOHELA says it cannot fix the issues, the Department cannot help, and its online submission form does not work, and the Department's OIG says that the only way to address the issue is through Department's broken online submission form. To put is simply, to the extent the *parens patriae* concept applies, Proposed Intervenor has provided demonstrate sufficient reason to overcome the presumption of adequate representation given that neither party seems to have any interest in the interests asserted by Proposed Intervenor and the Government has essentially foreclosed each avenue through which those interests could be presented for consideration.

III.    **<u>Alternatively, Proposed Intervenor should be permitted to Intervene under Rule 24(b)</u>**.

Federal Rule of Civil Procedure 24(b) provides that a court may permit intervention where an intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," taking into consideration "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Courts have discretion to grant permissive intervention, and "[t]he Eighth Circuit has advised

district courts to err on the side of intervention." *Henderson*, 2021 WL 1546139, at *3 (citing *Corby Recreation*, 581 F.2d at 177).

Proposed Intervenor should be permitted to intervene permissively if he is not entitled to under Rule 24(a)(2). Proposed Intervenors motion is timely as detailed above. Proposed Intervenor's interests share, at minimum, significant factual questions with the main action – the SAVE Plan and loans within that plan. It also shares a factual and legal question with regards to the alleged forbearance and zero interest rate that such loans were supposed to have during this litigation. It also appears that common legal and factual questions exist with respect to injunctive relief.

Although, as previously noted, those interests have not been presented or advanced by the existing parties and there is sufficient reason to believe that the existing parties now share a common legal objective. Even if that were not the case, Proposed Intervenor's specific interest satisfies this requirement.

Lastly, there are no indications that intervention would cause any delay or prejudice the adjudication of the original parties' rights. After all, if it is believed that the parties are each attempting to advanced what they believe is the true public interest, underlying both of those assertions would seem to be that "the public's true interest lies in the correct application of the law." *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022); *see also Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). *See also Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2490 (2021) (per curiam) ("our system does not permit agencies to act unlawfully even in pursuit of desirable ends.")

25

## CONCLUSION

For the foregoing reasons, Proposed Intervenor respectfully request that this Court grants his motion for leave to intervene under Rule 24(a), or, in the alternative, Rule 24(b).


Date: July 21, 2025

<div style="margin-left:50%">

Respectfully submitted,

*/s/ Taylor A. Story*
Taylor A. Story
Proposed Intervenor
244 Exuma Way, Apt. 121
Santa Rosa Beach, FL 32459
(850) 419-6730
taylorstory2025@gmail.com

</div>

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025, a true and accurate copy of the foregoing document was sent via email to all counsel of record.

Service upon a represented party must be made on the party's attorney, Fed. R. Civ. P. 5(b)(1), through the Court's ECF system or through other electronic means that the person has consented to, Fed. R. Civ. P. 5(b)(2). Consistent with Local Rule 2.12(A) and Section II(G) and Appendix B, of the District's Case Management/Electronic Filing (CM/ECF) Procedures, such service has been made via email to all counsel of record, which constitutes effectives service.

*/s/ Taylor A. Story*
Taylor A. Story
Proposed Intervenor
244 Exuma Way, Apt. 121
Santa Rosa Beach, FL 32459
(850) 419-6730
taylorstory2025@gmail.com

27

**EXHIBIT 1**

**PROPOSED INTERVENOR'S RECORDED LOAN BALANCE RECORDS**

Excerpt from December 2024 Monthly Financial Records

| | L | M | N | O |
|---|---|---|---|---|
| | | **Liabilites** | | |
| | | Start | End | |
| | Amex | ██████████ | ██████████ | |
| | Chase | | | |
| | Freedom | ██████████ | ██████████ | |
| | Saphire | ██████████ | ██████████ | |
| | Citi | ██████████ | ██████████ | |
| | Capitol One | ██████████ | ██████████ | |
| | Student Loans | | | |
| | 1-01 D-S | $4,299.60 | $4,355.87 | |
| | 1-02 D-S | $5,291.36 | $5,352.67 | |
| | 1-03 D-U | $16,369.93 | $16,303.62 | |
| | 1-04 D-U | $20,592.97 | $20,698.74 | |
| | 1-05 D-U | $20,090.93 | $20,090.92 | |
| | **Total Liabilites** | ██████████ | ██████████ | |

Excerpt from January 2025 Monthly Financial Records

| L | M | N | O |
|---|---|---|---|
| **Credit/Liabilites** | | | |
| | Start | End | |
| Amex | ███ | ███ | |
| Chase | | | |
|    Freedom | ███ | ███ | |
|    Saphire | ███ | ███ | |
| Citi | ███ | ███ | |
| Capitol One | ███ | ███ | |
| **Total Credit Bal.** | ███ | ███ | |
| | | | |
| **Student Loans** | | | |
| 1-01 S (3.51%) | $4,355.87 | $4,355.87 | |
| 1-02 S (4.2%) | $5,352.67 | $5,352.67 | |
| 1-03 U (6.35%) | $16,303.62 | $16,103.32 | |
| 1-04 U (5.83%) | $20,698.74 | $20,598.74 | |
| 1-05 U (4.05%) | $20,090.92 | $20,090.92 | |
| **Total Remaining** | ███ | ███ | |

Excerpt from February 2025 Monthly Financial Records

| L | M | N | O |
|---|---|---|---|
| **Credit/Liabilites** | | | |
| | Start | End | |
| Amex | ██████ | ██████ | |
| Chase | | | |
|    Freedom | █████ | █████ | |
|    Saphire | █████ | █████ | |
| Citi | █████ | █████ | |
| Capitol One | █████ | █████ | |
| **Total Credit Bal.** | █████ | ██████ | |
| | | | |
| **Student Loans** | | | |
| 1-01 S (3.51%) | $4,355.87 | $4,355.87 | |
| 1-02 S (4.2%) | $5,352.67 | $5,252.67 | |
| 1-03 U (6.35%) | $16,103.32 | $15,903.62 | |
| 1-04 U (5.83%) | $20,598.74 | $20,498.74 | |
| 1-05 U (4.05%) | $20,090.92 | $20,090.92 | |
| **Total Remaining** | ██████ | ██████ | |

Excerpt from March 2025 Monthly Financial Records

| L | M | N | O | P |
|---|---|---|---|---|
| **Credit/Liabilites** | | | | |
| | Start | End | | |
| Amex | ███ | ███ | | |
| Chase | | | | |
| Freedom | ███ | ███ | | |
| Saphire | ███ | ███ | | |
| Citi | ███ | ███ | | |
| Capitol One | ███ | ███ | | |
| **Total Credit Bal.** | ███ | ███ | | |
| | | | | |
| **Student Loans** | | | | |
| 1-01 S (3.51%) | $4,355.87 | $4,355.87 | $4,500.00 | I: 0.00 |
| 1-02 S (4.2%) | $5,252.67 | $5,576.52 | $5,500 | I: 158.46 |
| 1-03 U (6.35%) | $15,903.62 | $16,654.36 | $20,500 | I: 256.65 |
| 1-04 U (5.83%) | $20,498.74 | $20,618.45 | $20,500 | I: 118.45 |
| 1-05 U (4.05%) | $20,090.92 | $20,090.92 | $20,500 | I: 0.00 |
| **Total Remaining** | ███ | | | |

Excerpt from April 2025 Monthly Financial Records

| L | M | N | O | P | Q |
|---|---|---|---|---|---|
| | **Credit/Liabilites** | | | | |
| | Start | End | | | |
| Amex | ██████ | ██████ | | | |
| Chase | | | | | |
|   Freedom | ██████ | ██████ | | | |
|   Saphire | ██████ | ██████ | | | |
| Citi | ██████ | ██████ | | | |
| Capitol One | ██████ | ██████ | | | |
| **Total Credit Bal.** | ██████ | ██████ | | | |
| | **Student Loans** | | | | |
| 1-01 S (3.51%) | $4,355.87 | $4,393.52 | $4,500.00 | I says $0; but inccreased by $37.56 | |
| 1-02 S (4.2%) | $5,576.52 | $5,621.40 | $5,500 | I: 158.46 | |
| 1-03 U (6.35%) | $16,654.36 | $16,855.83 | $20,500 | I: 256.65 | |
| 1-04 U (5.83%) | $20,618.45 | $20,618.45 | $20,500 | I: 118.45 | |
| 1-05 U (4.05%) | $20,090.93 | $20,584.60 | $20,500 | I: 424.14 | |
| **Total Remaining** | ██████ | ██████ | | | |

Excerpt from May 2025 Monthly Financial Records

| L | M | N | O | P |
|---|---|---|---|---|
| | **Credit/Liabilites** | | | |
| | Start | End | | |
| Amex | ███ | ███ | | |
| Chase | | | | |
|   Freedom | ███ | ███ | | |
|   Saphire | ███ | ███ | | |
| Citi | ███ | ███ | | |
| Capitol One | ███ | ███ | | |
| **Total Credit Bal.** | ███ | ███ | | |
| | | | | |
| | **Student Loans** | | | |
| 1-01 S (3.51%) | $4,393.52 | $0.00 | $4,500.00 | I: 0.00 |
| 1-02 S (4.2%) | $5,621.40 | $5,621.40 | $5,500 | I: 158.46 |
| 1-03 U (6.35%) | $16,855.83 | $16,855.83 | $20,500 | I: 256.65 |
| 1-04 U (5.83%) | $20,618.45 | $20,618.45 | $20,500 | I: 118.45 |
| 1-05 U (4.05%) | $20,584.60 | $20,657.94 | $20,500 | I: $433.61 |
| **Total Remaining** | ███ | ███ | | |
| | | | | |

Excerpt from June 2025 Monthly Financial Records

| L | M | N | O | P |
|---|---|---|---|---|
| **Credit/Liabilites** | | | | |
| | Start | End | | |
| Amex | ███████ | ███████ | | |
| Chase | | | | |
| Freedom | ████████ | ████████ | | |
| Saphire | ████████ | ████████ | | |
| Citi | ████████ | ████████ | | |
| Capitol One | ████████ | ████████ | | |
| **Total Credit Bal.** | ██████ | ██████ | | |
| | | | | |
| **Student Loans** | | | | |
| 1-01 S (3.51%) | $0.00 | $0.00 | $4,500.00 | I: 0.00 |
| 1-02 S (4.2%) | $5,621.40 | $5,621.40 | $5,500 | I: 203.34 |
| 1-03 U (6.35%) | $16,855.83 | $16,855.83 | $20,500 | I: 458.12 |
| 1-04 U (5.83%) | $20,618.45 | $20,618.45 | $20,500 | I: 118.45 |
| 1-05 U (4.05%) | $20,657.94 | $20,156.40 | $20,500 | I: 561.36; 59.82 |
| **Total Remaining** | ████████ | ████████ | | |
| | | | | |
| | | | | |

**EXHIBIT 2**

**DECEMBER LETTER FROM MOHELA**

**MOHELA**® | Official Servicer of
Federal Student Aid

633 Spirit Drive, Chesterfield, MO 63005

December 1, 2024



ACCT NUMBER: 2820196400-1

TAYLOR A STORY
19 BARRACUDA ST
SANTA RSA BCH FL 32459-4525

TAYLOR A STORY:

### Loan Update

In an effort to keep you updated on your federal loan(s), we have enclosed details about your loan(s), including the accrued interest, interest rate, and total balance. The loan(s) listed in this letter are currently in forbearance.

Although no payments are due at this time, interest continues to accrue on your loan(s) during the forbearance period. You have the option to pay the interest during forbearance.

**Here are some helpful tips to manage your account:**

- You may cancel the forbearance at any time to resume immediate repayment.
- Create an online account and enroll in eDelivery. Log in to mohela.studentaid.gov to keep tabs on your student loan balance.
- To obtain the outstanding principal and accrued interest balance on your loan(s), log in to your account online at mohela.studentaid.gov.
- Pay now vs. later. You are not required to make payments at this time. However, if you can afford to make even some payments, it can save you money down the road and reduce the total amount that you repay.
- You remain obligated to pay your loan(s), and payments will resume at the end of the forbearance.
- To make a payment, use one of the following methods:

**Payment Methods**

There are three easy ways to make your payment:

- Online: mohela.studentaid.gov
- Phone: 1-888-866-4352 (Toll Free)
- Mail: Include your account number on the check or money order made payable to MOHELA. Send your payment to:

U.S. Department of Education

P263

TTY Dial 711 | 1-888-866-4352 (Toll Free) |
mohela.studentaid.gov
Hours of Operation: Monday: 8 a.m.–9 p.m. Eastern time (ET)
Tuesday–Wednesday: 8 a.m.–8 p.m. ET
Thursday–Friday: 8 a.m.–6 p.m. ET
NMLS #1442770

2

MOHELA is an official servicer of Federal Student Aid,
an office of the U.S. Department of Education.

Learn more at StudentAid.gov
in @MOHELA  X @MOHELA  f @MOHELA.usa

MOHELA
PO Box 790453
St. Louis, MO 63179-0453

NOTE: Mailing your payment may delay its posting. This could result in additional outreach from MOHELA until the payment posts to your account. All payments must be withdrawn on U.S. financial institutions or TD Bank, and in U.S. currency.

**LOAN INFORMATION**

| Loan Sequence | Original Principal Amount | Current Balance | Interest Rate | Unpaid Accrued Interest To Date |
|---|---|---|---|---|
| 1-01 | $4,500.00 | $4,342.73 | 0.000% | $43.13 |
| 1-02 | $5,500.00 | $5,333.37 | 0.000% | $42.01 |
| 1-03 | $20,500.00 | $16,369.93 | 0.000% | $0.00 |
| 1-04 | $20,500.00 | $20,500.00 | 0.000% | $92.97 |
| 1-05 | $20,500.00 | $20,090.93 | 0.000% | $0.00 |

**Unpaid Accrued Interest To Date:**
The total amount of unpaid interest as of the date of this letter.

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your  loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or visting reportfraud.ftc.gov.

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

**EXHIBIT 3**

**APRIL LETTER FROM MOHELA**



**MOHELA** ® | Official Servicer of Federal Student Aid

633 Spirit Drive, Chesterfield, MO 63005

April 2, 2025

ACCT NUMBER: 2820196400-1

TAYLOR A STORY
19 BARRACUDA ST
SANTA RSA BCH FL 32459-4525

TAYLOR A STORY:

### Understanding Your Financial Activity Summary

- This summary only includes only financial activity for the loan(s) referenced.
- The summary reflects up to the most recent 50 financial transactions while being serviced at MOHELA. If additional financial transactions are needed, they can be accessed via your on-line account at mohela.studentaid.gov.
- Financial activity is subject to change (i.e., returned payments, financial adjustments, school enrollment updates, and refunds of payments).
- If you wish to pay off your loan(s), log in to mohela.studentaid.gov to obtain a payoff calculation, which includes accrued interest, or contact us using the contact information provided below.

K056

MOHELA is an official servicer of Federal Student Aid, an office of the U.S. Department of Education.

Learn more at StudentAid.gov

MOHELA | NMLS #1442770 | PO Box 790453 | St. Louis, MO 63179-0453
1-888-866-4352 (Toll Free) | mohela.studentaid.gov

in @MOHELA  X @MOHELA  f @MOHELA.usa

2

**Financial Activity Summary**

**Loan Information**

| First Disbursement Date | Original Principal Amount | Current Balance |
|---|---|---|
| 09/01/16 | $4,500.00 | $4,355.87 |
| 08/25/17 | $5,500.00 | $5,418.06 |
| 08/15/18 | $20,500.00 | $16,397.71 |
| 08/28/19 | $20,500.00 | $20,500.00 |
| 09/21/20 | $20,500.00 | $20,090.92 |

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your  loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or visiting reportfraud.ftc.gov.

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

5

**FINANCIAL TRANSACTIONS**

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|---|---|---|---|---|
| 03/01/25 | PAYMENT | $300.00 | $0.00 | $300.00 |
| 03/01/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 02/02/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 02/02/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 02/02/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 01/07/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 01/07/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 12/22/24 | PAYMENT | $250.00 | $0.00 | $250.00 |
| 11/11/24 | PAYMENT | $175.00 | $0.00 | $175.00 |
| 10/21/24 | PAYMENT | $75.00 | $72.77 | $2.23 |
| 10/21/24 | PAYMENT | $62.00 | $0.00 | $62.00 |
| 10/21/24 | PAYMENT | $60.00 | $0.00 | $60.00 |
| 10/21/24 | PAYMENT | $58.00 | $57.58 | $0.42 |
| 07/11/24 | PAYMENT | $280.18 | $23.17 | $257.01 |
| 06/11/24 | PAYMENT | $280.18 | $24.92 | $255.26 |
| 05/11/24 | PAYMENT | $85.22 | $18.13 | $67.09 |
| 05/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 05/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 05/11/24 | PAYMENT | $22.86 | $4.19 | $18.67 |
| 05/11/24 | PAYMENT | $18.71 | $5.98 | $12.73 |
| 04/11/24 | PAYMENT | $85.22 | $15.83 | $69.39 |

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|---|---|---|---|---|
| 04/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 04/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 04/11/24 | PAYMENT | $22.86 | $3.55 | $19.31 |
| 04/11/24 | PAYMENT | $18.71 | $5.53 | $13.18 |
| 03/11/24 | PAYMENT | $85.22 | $20.25 | $64.97 |
| 03/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 03/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 03/11/24 | PAYMENT | $22.86 | $4.79 | $18.07 |
| 03/11/24 | PAYMENT | $18.71 | $6.36 | $12.35 |
| 02/11/24 | PAYMENT | $85.22 | $15.71 | $69.51 |
| 02/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 02/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 02/11/24 | PAYMENT | $22.86 | $3.53 | $19.33 |
| 02/11/24 | PAYMENT | $18.71 | $5.50 | $13.21 |
| 01/11/24 | PAYMENT | $85.22 | $62.73 | $22.49 |
| 01/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 01/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 01/11/24 | PAYMENT | $22.86 | $16.61 | $6.25 |
| 01/11/24 | PAYMENT | $18.71 | $14.44 | $4.27 |
| 11/11/23 | PAYMENT | $85.22 | $85.22 | $0.00 |
| 11/11/23 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 11/11/23 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 11/11/23 | PAYMENT | $22.86 | $22.86 | $0.00 |

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|---|---|---|---|---|
| 11/11/23 | PAYMENT | $18.71 | $18.71 | $0.00 |
| 10/02/23 | PAYMENT | $85.22 | $85.22 | $0.00 |

**EXHIBIT 4**

**CURRENT STATUS OF LOANS**

# Loan Details As of 07/19/2025 (ET)

## Loan

| 1-02 Direct Loan - Subsidized ▾ | Print |

| | |
|---|---|
| **Loan Status** | Administrative Forbearance-Ends 10/31/2025 |
| **Repayment Plan** | Saving on a Valuable Education - Ends 09/11/2026 |
| **Repayment Start Date** | 11/02/2021 |
| **Estimated Payoff Date** ⓘ | 09/11/2036 |

**25%**

| | | |
|---|---|---|
| **Ready to pay off this loan today?** | Here are the amounts: | ⓘ |
| **Online** | $5,621.40 | |
| **By U.S. Mail** | $5,621.40 | |

| | |
|---|---|
| **Unpaid Principal** | $5,418.06 |
| **Unpaid Interest** | $203.34 |
| **Current Balance** | $5,621.40 |
| **Interest Rate** | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| **Interest Type** | Fixed |
| **Interest Accrued Through** ⓘ | 07/19/2025 |

 **Federal Student Aid**
An Office of the U.S. DEPARTMENT OF EDUCATION

FAFSA® Form ⌄     Grants and Loans ⌄     Loan Repayment ⌄     Loan Forgiveness ⌄         Taylor ⌄     🔍

Dashboard › My Aid › Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Subsidized

*University of Mississippi*   OPE ID   00244000



# Loan Details As of 07/19/2025 (ET)

## Loan

| 1-03 Direct Loan - Unsubsidized ▾ | Print |

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 12/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ⓘ | 12/11/2036 |

**25%**

| Ready to pay off this loan today? | Here are the amounts: ⓘ |
|---|---|
| Online | $16,855.83 |
| By U.S. Mail | $16,855.83 |

| | |
|---|---|
| Unpaid Principal | $16,397.71 |
| Unpaid Interest | $458.12 |
| Current Balance | $16,855.83 |
| Interest Rate | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| Interest Type | Fixed |
| Interest Accrued Through ⓘ | 07/19/2025 |



FAFSA® Form ⌄   Grants and Loans ⌄   Loan Repayment ⌄   Loan Forgiveness ⌄

  Taylor ⌄ 

Dashboard › My Aid › Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness. Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



**Loans**
**$16,855.83**
Total Balance ⍰

● $16,397.71
Principal ⍰

● $458.12
Interest ⍰

*Loan Information as of 07/01/2025*

LOAN PERIOD ⍰
08/20/2018 - 05/10/2019

LOAN STATUS ⍰
● Forbearance
View loan status history

INTEREST RATE ⍰
6.60% (fixed)

AMOUNT YOU'VE PAID OFF ⍰
$6,799

REAFFIRMATION DATE ⍰
N/A

PSLF CUMULATIVE MATCH MONTHS ⍰
11 months
Learn more about loan forgiveness

# Loan Details As of 07/19/2025 (ET)

## Loan

1-04 Direct Loan - Unsubsidized ▾

Print

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 09/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ⓘ | 09/11/2036 |

**25%**

| | |
|---|---|
| **Ready to pay off this loan today?** | Here are the amounts: ⓘ |
| **Online** | $20,618.45 |
| **By U.S. Mail** | $20,618.45 |

| | |
|---|---|
| **Unpaid Principal** | $20,500.00 |
| **Unpaid Interest** | $118.45 |
| **Current Balance** | $20,618.45 |
| **Interest Rate** | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| **Interest Type** | Fixed |
| **Interest Accrued Through** ⓘ | 07/19/2025 |



FAFSA® Form ⌄    Grants and Loans ⌄    Loan Repayment ⌄    Loan Forgiveness ⌄      Taylor ⌄    

Dashboard  ›  My Aid  ›  Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
[Learn more about loan forgiveness and complete the certification form](#).

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



**Loans**

**$20,618.45**

Total Balance ?

● $20,500
Principal ?

● $118.45
Interest ?

*Loan Information as of 07/01/2025*

**LOAN PERIOD** ?
08/26/2019 - 05/08/2020

**LOAN STATUS** ?
● Forbearance
[View loan status history](#)

**INTEREST RATE** ?
6.08% (fixed)

**AMOUNT YOU'VE PAID OFF** ?
$1,168

**REAFFIRMATION DATE** ?
N/A

**PSLF CUMULATIVE MATCH MONTHS** ?
11 months
[Learn more about loan forgiveness](#)

7

# Loan Details As of 07/19/2025 (ET)

## Loan

1-05 Direct Loan - Unsubsidized ▼

🖨 Print

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 09/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ℹ | 09/11/2036 |

**25%**

| Ready to pay off this loan today? | Here are the amounts: ℹ |
|---|---|
| Online | $20,156.40 |
| By U.S. Mail | $20,156.40 |

| | |
|---|---|
| Unpaid Principal | $20,096.58 |
| Unpaid Interest | $59.82 |
| Current Balance | $20,156.40 |
| Interest Rate | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| Interest Type | Fixed |
| Interest Accrued Through ℹ | 07/19/2025 |

 FAFSA® Form ⌄    Grants and Loans ⌄    Loan Repayment ⌄    Loan Forgiveness ⌄    ③  Taylor ⌄ 

Dashboard ▸ My Aid ▸ Loan Details

 **STUDENT AID TIP**
Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



● $20,096.58
Principal ⍰

● $59.82
Interest ⍰

**Loans**
$20,156.4
Total Balance ⍰

*Loan Information as of 07/01/2025*

LOAN PERIOD ⍰
08/24/2020 - 04/30/2021

LOAN STATUS ⍰
● Forbearance
View loan status history

INTEREST RATE ⍰
4.30% (fixed)

AMOUNT YOU'VE PAID OFF ⍰
$841

REAFFIRMATION DATE ⍰
N/A

PSLF CUMULATIVE MATCH MONTHS ⍰
11 months
Learn more about loan forgiveness

**EXHIBIT 5**

**JUNE LETTER FROM MOHELA**

**MOHELA**® | Official Servicer of Federal Student Aid

633 Spirit Drive, Chesterfield, MO 63005

June 1, 2025



ACCT NUMBER: 2820196400-1

TAYLOR A STORY
19 BARRACUDA ST
SANTA RSA BCH FL 32459-4525

TAYLOR A STORY:

### Loan Update

In an effort to keep you updated on your federal loan(s), we have enclosed details about your loan(s), including the accrued interest, interest rate, and total balance. The loan(s) listed in this letter are currently in forbearance.

Although no payments are due at this time, interest continues to accrue on your loan(s) during the forbearance period. You have the option to pay the interest during forbearance.

**Here are some helpful tips to manage your account:**

- You may cancel the forbearance at any time to resume immediate repayment.
- Create an online account and enroll in eDelivery. Log in to mohela.studentaid.gov to keep tabs on your student loan balance.
- To obtain the outstanding principal and accrued interest balance on your loan(s), log in to your account online at mohela.studentaid.gov.
- Pay now vs. later. You are not required to make payments at this time. However, if you can afford to make even some payments, it can save you money down the road and reduce the total amount that you repay.
- You remain obligated to pay your loan(s), and payments will resume at the end of the forbearance.
- To make a payment, use one of the following methods:

**Ways to Make Your Payment**
- Online: mohela.studentaid.gov
- Phone: 1-888-866-4352 (Toll Free)
- Mail: Include your account number on the check or money order made payable to MOHELA. Send your payment to: U.S. Department of Education, MOHELA, PO Box 790453, St. Louis, MO 63179-0453

NOTE: Mailing your payment may delay its posting. This could result in additional outreach from MOHELA until the payment posts to your account. All payments must be withdrawn on U.S. financial institutions or TD Bank, and in U.S. currency.

MOHELA is an official servicer of Federal Student Aid, an office of the U.S. Department of Education.

Learn more at StudentAid.gov

MOHELA | NMLS #1442770 | PO Box 790453 | St. Louis, MO 63179-0453
1-888-866-4352 (Toll Free) | mohela.studentaid.gov
in @MOHELA  X @MOHELA  f @MOHELA.usa

**Loan Information**

| Loan Sequence | Original Principal Amount | Current Balance | Interest Rate | Unpaid Accrued Interest To Date* |
|---|---|---|---|---|
| 1-02 | $5,500.00 | $5,418.06 | 0.000% | $203.34 |
| 1-03 | $20,500.00 | $16,397.71 | 0.000% | $458.12 |
| 1-04 | $20,500.00 | $20,500.00 | 0.000% | $118.45 |
| 1-05 | $20,500.00 | $20,096.58 | 4.300% | $561.36 |

**Unpaid Accrued Interest To Date:**
The total amount of unpaid interest as of the date of this letter.

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or visiting reportfraud.ftc.gov.

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

**EXHIBIT 6**

**JULY 15, 2025, DEPARTMENT EMAIL**

 Gmail

Taylor Story <taylorstory2020@gmail.com>

**0% interest ending soon—consider a new repayment plan.**
1 message

**U.S. Department of Education** <noreply@studentaid.gov>    Tue, Jul 15, 2025 at 11:07 PM
Reply-To: "U.S. Department of Education" <noreply@studentaid.gov>
To: taylorstory2020@gmail.com

Click here to view this email as a web page.

# 0% Interest on SAVE Forbearance is Ending Soon

Dear Taylor,

In July 2024, a federal court injunction blocked parts of the Saving on a Valuable Education (SAVE) Plan. As a result, your federal student loans were placed in forbearance with a 0% interest rate. Because interest has not accrued, your federal student loan balance (which includes principal and interest) has not grown during your forbearance.

In February 2025, a second federal court injunction ended this 0% interest rate. To comply with this injunction, **your loan(s) in the SAVE forbearance will begin accruing interest on Aug. 1, 2025.**

**You won't have to make payments until the courts reach a final decision and the SAVE forbearance ends, but your balance will**

Case: 4:24-cv-00520-JAR    Doc. #: 73-1    Filed: 07/21/25    Page: 63 of 73 PageID #: 1386

**grow when interest starts accruing on Aug. 1, 2025.** When the SAVE forbearance does end, you'll be responsible for making monthly payments that include any accrued interest as well as your principal. If you're working toward loan forgiveness, are enrolled in the SAVE Plan, and want to start making qualifying payments, you must apply to switch to another eligible repayment plan.

Use the Loan Simulator tool to estimate monthly payments, determine your repayment plan eligibility, and learn which available plan best meets your repayment goals.

<div style="border:1px solid #4a90d9; padding:16px; text-align:center; color:#999;">Try Loan Simulator</div>

## Benefits of Switching Repayment Plans

 **Avoid Growing Your Debt: Now that interest will start accruing on Aug. 1, staying in the SAVE forbearance will increase the total amount of federal student loan debt you owe. Having interest accrue while you're not making payments will cost you more in the long run.**

 **Pay Off Debt Faster: If you switch to a different plan now and start making payments, you'll pay off your debt more quickly than if you stayed on the SAVE Plan in an interest-bearing forbearance.**

 **Plan for the Future: By enrolling in a different plan now, you'll learn your new monthly payment amount and can better plan for how your student loans fit into**

Gmail - 0% interest ending soon—consider a new repayment plan.    7/18/25, 12:23 PM

your budget.

 **Public Service Loan Forgiveness:** Time spent in the SAVE forbearance does not provide credit toward **Public Service Loan Forgiveness (PSLF).** If you're pursuing PSLF, you'll reach your required 120 qualifying monthly payments faster by starting payments on a different plan.

 **IBR Loan Forgiveness:** If you switch to the Income-Based Repayment (IBR) Plan, you'll be eligible to have any remaining balance on your loans discharged after 20 or 25 years, depending on when you took out your loans. **Apply for IBR** on StudentAid.gov.

## Apply Faster with Federal Tax Information

If you have eligible loans, applying for a new income-driven repayment (IDR) plan is quick and easy if you provide consent for us to obtain your federal tax information directly from the IRS. This allows us to process your application faster and eliminates the time-consuming work of manually uploading your income information.

By providing consent for us to access your federal tax information, we can automatically recertify your IDR plan.

**Apply for IDR**

## ⛔ Beware of Scams

You **never have to pay for help** with your federal student aid. You might be contacted by a company saying they will help you get loan forgiveness or cancellation for a fee. Make sure you work **only** with the U.S. Department of Education (ED) and our loan servicers—we will always help you for free. Emails from ED only come from noreply@studentaid.gov.

Never reveal your personal information or account password to anyone.

Learn more about how to **avoid student aid scams** and report scam attempts to the Federal Trade Commission at **reportfraud.ftc.gov**.

### How helpful was this email?



Not at all helpful          Extremely helpful


Sign up for text alerts to stay updated on our grant programs, loan forgiveness programs, repayment plans, and information about your loans.

Gmail - 0% interest ending soon - consider a new repayment plan.

Case: 4:24-cv-00520-JAR    Doc. #: 73-1    Filed: 07/21/25    Page: 66 of 73 PageID    7/18/25, 12:23 PM
#: 1389

This email was sent by: Office of Federal Student Aid

U.S. Department of Education

400 Maryland Ave. SW,

Washington, DC, 20002, US

Please do not reply to this email. Messages sent to this email
address are not monitored. If you wish to contact us, please use the
StudentAid.gov contact page. For more information about financial
aid, visit StudentAid.gov.

**EXHIBIT 7**

**DEPARTMENT OIG EMAIL**

## Department of Education OIG Complaint C25IOU03763  Student Loans ×

**HQOPSHL** <HQOPSHL@ed.gov>                                                    Wed, May 21, 5:43 PM
to me ▾

Thank you for contacting the Department of Education, Office of Inspector General (OIG) Investigative Services. We have reviewed your complaint **C25IOU03763** and determined the Department's Office of Federal Student Aid (FSA) is the appropriate office to address your concerns. You should file a complaint at the FSA Feedback Center Submit a Complaint (studentaid.gov) and reference the OIG case number provided in this email.

Please refer to the information below to contact FSA for additional assistance.

The FSA Information Center
1-800-433-3243
Hours of operation:
Monday – Friday: 8:00am to 10:00pm (Eastern time - ET)
Saturday: 11:00am to 5:00pm (ET)
Sunday: Closed
Contact Us | Federal Student Aid

Avoiding Student Aid Scams | Federal Student Aid (Report Identity Theft)

The OIG will take no further action, and your complaint has been closed.

Thank you,
Investigative Services
Department of Education
Office of Inspector General
OIG Hotline | U.S. Department of Education OIG

**This is a send only email address, replies will not be received.**

 Reply    Forward   

**EXHIBIT 8**

**LOAN 1-01 PAY OFF**



**MOHELA**  Official Servicer of
Federal **Student** Aid

Contact Us

Payment Methods      In Repayment      Loan Forgiveness & Discharge ⌄      Support ⌄

Account Summary
Loan Details
Payments & Billing ⌄
Repayment Options
Inbox
Upload
More...

👤 Taylor ⌄

# Account History

The information contained on this page is current as of the day the information is requested. Transactions in your Account History may change due to normal account processing, such as a change in payment allocation or a retroactive change in your account status. After a transaction has been reapplied, you will no longer be able to view prior applications.



## Display

By Loan

## Date Range

Last 6 months

## Loan

1-01 Direct Loan - Subsidized

Current Balance $0.00

## History

Download    Print

| Date ▾ | Description ▾ | Principal ▾ | Interest ▾ | Fees ▾ | Total ▾ | Unpaid Principal ▾ |
|--------|--------------|-------------|------------|--------|---------|--------------------|
| 05/03/2025 | Payment | -$4,393.52 | $0.00 | $0.00 | -$4,393.52 | $0.00 |



  


Official Servicer of
Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

Federal Student Aid (FSA) is your federal loan provider. FSA uses servicers (private companies) like Mohela to manage billing, questions, and payments, and to help you enroll in the best repayment plan for you.

**Learn more about Federal Student Aid** ⬈

**See your repayment options with *Loan Simulator*** ⬈

**Federal Student Loan Management**

Postpone Payments

Loan Forgiveness & Discharge

Loan Consolidation

Military Benefits

**Help & Support**

Contact Us

Info Center

FAQs

Sitemap

**About Us**

New to MOHELA

About MOHELA

Careers

Feedback

**Contact Info**

1-888-866-4352 (Toll Free)

636-532-0060 (International)

TTY: Dial 711

Fax

1-866-222-7060 (Toll Free)

636-787-4038 (International)

Public Service Loan Forgiveness

800-4-FEDAID (Toll Free)

Privacy Policy    Security    Accessibility    Disclaimer of Endorsement    Massachusetts State Ombudsman

usa.gov ⬈    ed.gov ⬈    StudentAid.gov ⬈

NMLS Resource Center ⬈   NMLS # 144277

Copyright © 2024 Higher Education Loan Authority of the State of Missouri (MOHELA). All Rights Reserved.

**EXHIBIT 9**

**APRIL 14 STATUS LOAN 1-05**

