**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

STATE OF MISSOURI, *et al*.,

      Plaintiffs,

v.

DONALD J. TRUMP, *et al*.,

      Defendants.

Civil Action No. 4:24-cv-000520-JAR

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

### STATEMENT OF FACTS

On April 9, 2024, seven states, led by Missouri, (the "Plaintiffs") sued the then-President Jospeh Biden and Secretary of Education Miguel Cardona,[1] and the U.S. Department of Education (individually the "Department") (collectively the "Government") challenging the SAVE Plan for student loans implemented by the administration. This Court's previous Memorandum and Order, ECF No. 35 (Jun. 24, 2024) and the opinion of the United States Court of Appeals for the Eighth Circuit in this matter, *Missouri v. Trump*, No. 24-2332, ECF No. 66 (Feb. 18, 2025), thoroughly recount the procedural background.

Intervenor's Memorandum in Support of the Motion for Leave to Intervene recounts the post Eighth Circuit decision history. *See* Memorandum in Support of the Motion for Leave to Intervene, ECF No. ___ at Pg. 2-4. It also recounts the relevant factual background of Intervenor as it relates to this matter. *Id*. at 4-8. Due to the lengthiness of that factual background, and to

---

[1] Pursuant to Federal Rule of Civil Procedure President Donald J. Trump and Secretary of Education Linda McMahon were substituted as parties for the President and Secretary of Education. Fed. R. Civ. P. 25(d).

remain within the page limitation imposed by Local Rule 4.01(D), Intervenor incorporates it by reference.

## LEGAL STANDARD

Courts have broad discretion when ruling on requests for injunctive relief. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (citation omitted) Temporary restraining orders ("TRO") and preliminary injunctions are extraordinary remedies for which the burden of establishing such relief is on the moving party. *Ng. v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (quoting *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021)); *see also King v. Blake*, Civ. No. 4:08-cv-1050, 2009 WL 73678, at *1 (E.D. Mo. Jan. 9, 2009). The "primary function" of such relief "is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Ferry-Morse Seed Co. v. Food Corn, Inc*., 729 F.2d 589, 593 (8th Cir. 1984); *see also Amdocs, Inc. v. Bar*, 2016 WL 9405679, at *3 (E.D. Mo. May 23, 2016) (quoting *Kansas City S. Trans. Co., Inc. v. Teamsters Local Union* #41, 126 F.3d 1059, 1065 (8th Cir. 1997)).

In deciding whether to grant a TRO or preliminary injunction, the Court must consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *see also Winter v. NRDC*, 555 U.S. 7, 24 (2008); *City of Berkeley v. Ferguson-Florissant Sch. Dist*., Civ. No. 4-1:19-cv-168, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019). No single factor is dispositive, but the Court should afford substantial weight to the movant's likelihood of success on the merits. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

## ARGUMENT

I.    **Intervenor will suffer Irreparable Harm Without a TRO or Preliminary Injunction**.

Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The movant "must show more than the mere possibility that irreparable harm will occur." *Ng*, 64 F.4th at 997 (quoting *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021)). Rather, "[t]o demonstrate irreparable harm, [the movant] must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *H&R Block, Inc. v. Block, Inc*., 58 F.4th 939, 951 (8th Cir. 2023) (internal quotation marks omitted).

The irreparable harm analysis largely overlaps with the injury in-fact analysis in Intervenor's Memorandum in Support of the Motion for Leave to Intervene. *See* Memorandum in Support of the Motion for Leave to Intervene, ECF No. ___ at Pgs. 10-14. In July 2024, the Government placed loans in the SAVE Plan, such as Intervenor's, into a zero-interest forbearance during the pendency of litigation over the plan. The Government now intends to terminate the zero-interest forbearance and reinstate interest and restart interest accrual on those loans on August 1, 2025 (the time between July 2024 and planned end of the zero-interest forbearance is collectively referred to as the "Forbearance Period.")

According to the Government, loans in that zero-interest forbearance, like Intervenor's, have not had any increase in the balances or accrued interest during the Forbearance Period. *See* Exhibit 1 July 15, 2025, Department Email, Pg. 2-3. For Intervenor's loan, however, that is not the case.

From July 2024 through the start of December 2024, no glaring issues arose with Intervenor's student loans. Therefore, the analysis picks up at the start of December 2024, when Interventor received a communication from the Missouri Higher Education Loan Authority ("MOHELA") that contained the following breakdown of his student loans:

**LOAN INFORMATION**

| Loan Sequence | Original Principal Amount | Current Balance | Interest Rate | Unpaid Accrued Interest To Date |
|---|---|---|---|---|
| 1-01 | $4,500.00 | $4,342.73 | 0.000% | $43.13 |
| 1-02 | $5,500.00 | $5,333.37 | 0.000% | $42.01 |
| 1-03 | $20,500.00 | $16,369.93 | 0.000% | $0.00 |
| 1-04 | $20,500.00 | $20,500.00 | 0.000% | $92.97 |
| 1-05 | $20,500.00 | $20,090.93 | 0.000% | $0.00 |

(hereinafter the "December Letter"). *See* Exhibit 2 December Letter from MOHELA, Pg. 3. Intervenor's Memorandum in Support of the Motion for Leave to Intervene extensively outlines the various changes in his loan balances and accrued interest, and addition of other unaccounted for sums, during the Forbearance Period.  *See* Memorandum in Support of the Motion for Leave to Intervene, ECF No. ___ at Pgs. 10-14.

However, demonstrating the clear and great irreparable harm requires only comparing the December 2024 balances and accrued interest to those at present. For Loan 1-01, as of the December Letter the balance was $4,342.73 and the accrued interest was $43.13. Because it was the least problematic loan, Intervenor paid it off in May 2025, in the amount of $4,393.52. Which required paying the extra $50.79 added during the Forbearance Period. *See* Exhibit 3 Loan 1-01 Pay Off. For the remaining loans, as of the December Letter, the total balance was $62,294.23 and accrued interest was $134.98. At present, the balance is $63,252.08 and the accrued interest is $839.73. *See generally* Exhibit 4 Current Status of Loans. Resulting in a balance increase of $957.85 and an accrued interest increase of $704.75, during the same period which the Government asserts neither grew at all. *See* Exhibit 1 at Pg. 2.

That irreparable harm grows when one considers that during the Forbearance Period Intervenor made $1,450.00 in targeted payments (on top of the $4,393.52 to pay off Loan 1-01). If those payments are deduced from the December Letter balance of Loans 1-02 through 1-05, the difference is $2,407.85. If the increase in Loan 1-01 during the Forbearance Period prior to its payoff is added in, then the difference is $2,458.64. But that is not all, the Government now contends that those targeted payments of $1,450.00 went exclusively to interest despite just $178.11 ($134.98 if Loan 1-01 is removed from the calculation) in accrued interest existing as of the December Letter. *See* Exhibit 5 April Letter from MOHELA, Pg. 6

Without injunctive relief, those irreparable harms will fully materialize. Come August 1, 2025, they will grow further every day. After all, as of August 1, 2025, Proposed Intervenor will be forced to pick between the lesser of two harms. He can continue making payments further complicating the ability to remedy the already existing errors. Or he can withhold from making payments until the issues are fixed during which interest will continue to accrue with no guarantee the Government will ever fix the errors.

Regardless of the route taken, Intervenor will be further irreparably harmed by greater interest accrual due to the increased loan balances. As well as the greater interest accrual that will result from Intervenor necessarily having to pay down the sums added during the Forbearance Period before he can return to paying down the sums that existed as of the December Letter. All of which will further complicate the already impossible task of remedy these issues. *See* Memorandum in Support of the Motion for Leave to Intervene, ECF No. ___ at Pgs 20-21.

If that is not sufficient irreparable harm, consider simply that the sums added during the Forbearance Period will result in not only having to repay more in total than would otherwise be owed, but also repaying more than other similarly situated persons who the Government properly

applied the zero-interest forbearance to their loans. As a result, he will also have to pay for a longer period. And he will have a higher monthly payment due to the increase balances and added interest than he otherwise would have had the zero-interest forbearance been properly applied and the targeted payments made during the Forbearance Period properly accounted for. All these harms are certainly impending given the Government's August 1, 2025, restart date. Especially given the Government's seeming unawareness of the issues and dis-interest in redressing them, there is also a substantial risk of the financial injury's occurrence.

An award of damages would not fully compensate Intervenor for those harms. Money damages would not remedy the sums added to Intervenor's student loans during the Forbearance Period. Nor would they remedy the failure to properly account for payments made during the Forbearance Period. Such damages would also not remedy the number of impending additional harms resulting from those failures.

Even if money damages could remedy the harm, "the United States, as sovereign, is generally immune from suits seeking money damages." ECF No. 35, Pg. 55 (quoting *Dep't of Agric. Rural Dev. Rural Housing Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (citation omitted)); *see also Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994) (finding irreparable harm in circumstance where there was an inability to recover money damages due to the application of sovereign immunity).

For those reasons, Intervenor has established the existence of irreparable harm sufficient to warrant the granting of a TRO or preliminary injunction.

## II.    **Intervenor is Likely to Succeed on the Merits.**

"A movant shows a likelihood of success on the merits when it demonstrates a 'fair chance,' not necessarily 'greater than fifty percent,' that it will ultimately prevail under applicable

law." *Cigna Corp. v. Bricker*, ___ F.4th ___, 2024 WL 2839930, at *3 (8th Cir. June 5, 2024) (citing *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003)).[2]

### a. Fifth Amendment Due Process Claim.

The Fifth Amendment provides that "[n]o person . . ." shall "be deprived of life, liberty or property, without due process of law. . ..) U.S. CONST. AMEND V. That generally means notice and an opportunity to be heard before the government deprives a person of a protected property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The hearing required by the Due Process Clause must be "meaningful." *Armstrong*, 380 U.S. at 552.

In this case at least two property interests are at stake. The first is Intervenor's protected property interest in his money. *See Board of Regents of State Colleges v. Roth*, 408 U. S. 564, 571-72 (1972)[3] (noting that the Supreme Court has "made clear that the property interests protected by procedural due process *extend well beyond* actual ownership of real estate, chattels, or *money*") (emphasis added). The second is Intervenor's property interest in the benefit – the placement of loans in the SAVE Plan into zero interest forbearance – announced and put into effect by the Government in July 2024.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting. *Roth*, 408 U. S. at 577). Such property interests "are created and their dimensions are defined by existing

---

[2] In this case, the Eighth Circuit applied the heightened likely to prevail on the merit's standard, instead of the traditional "fair chance" of success standard, to the existing parties request for injunctive relief. ECF No. 66 at 17. The heightened standard does not apply here. Unlike the previous request for injunctive relief, which involved enjoining the implementation of a final rule, the action here lacks any semblance of reasoned democratic processes.

[3] *Roth* arises in the Fourteenth Amendment context. However, the Supreme Court has construed the Fourteenth Amendments due process clause to impose the same procedural due process limitations on the states as the Fifth Amendment does on the federal government. *See Cf. Arnett v. Kennedy*, 416 U.S. 134 (1974).

rules or understandings that stem from an independent source." *Id*. Sometimes that independent source is a statute or a written contract. *See Cf. Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (benefit in welfare assistance created by statutory entitlement to such benefits); *Perry v. Sindermann*, 408 U.S. 593, 602 (1972) (tenure interest of professor created, even without written contractual provision, by rules and understanding sufficient to justify legitimate claim of entitlement). But that in not always the case.

As the Supreme Court explained in *Perry*, "property interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, property denotes a broad range of interests that are secured by existing rules or understandings. A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 408 U.S. at 601 (quoting *Roth*, 408 U.S. at 577) (internal quotations omitted).

In *Roth*, the Supreme Court held that no protected interest existed in a teacher's renewal of his one-year term contract because there was nothing in the public university's contract, regulations, or policies that "created any legitimate claim" to reemployment. 436 U.S. 576-78. By contrast, in *Perry*, a professor employed for several years at a public college was found to have a protected interest, even though his employment contract had no tenure provision and there was no statutory assurance of it. 408 U.S. 601-03. Instead, the Supreme Court held that the "existing rules or understandings" were deemed to have the characteristics of tenure, and thus provided a legitimate expectation independent of any contract provision. *Id*. at 601. This present matter has the policy that was lacking in *Roth*, and the existing rules and understanding sufficient in *Perry* to create a legitimate claim to a benefit.

In July 2024 the Government announced that it would place student loans in the SAVE Plan into a zero-interest forbearance during the pendency of litigation. In doing so, it created a rule that loans in that plan would be placed into zero-interest forbearance. Which in turn created the existence of an understanding that for those with such loans they would be in zero-interest forbearance until such time as a change was announced. In an email sent just days ago, the Government explicitly confirmed that understanding:

> In July 2024, a federal court injunction blocked parts of the Saving on a Valuable Education (SAVE) Plan. As a result, your federal student loans were placed in forbearance with a 0% interest rate. Because interest has not accrued, your federal student loan balance (which includes principal and interest) has not grown during your forbearance.

Exhibit 1 Department Email, Pg. 2.  On July 9, 2025, it announced that on August 1, 2025, it will reinstate and restart interest accrual on such loans. Taken all together, the Government established a policy (or stated a rule) that loans in the SAVE Plan, such as those held by Intervenor, were to be in zero-interest forbearance from July 2024 to August 1, 2025. That, in turn, created an understanding sufficient to create legitimate expectation on the part of Intervenor that because his loans are in the SAVE Plan they would be in zero-interest forbearance during the Forbearance Period. That interest is not abstract. Nor is the expectation unilateral– after all the Government elected to provide the benefit and announced it to the public. And, after all, the Government confirmed the existence of the policy, and its shared understanding of the policy just days ago. *See id*.

Here, just like in *Perry*, Intervenor has alleged the existence of rules and understandings, promulgated and fostered by the Government, sufficient to justify his legitimate claim of entitlement to the zero-interest forbearance during the Forbearance Period. To be certain, the Government's decision to terminate that zero-interest forbearance is not at issue. At issue is the

failure to provide the benefit it created a legitimate claim of entitlement to. After all, "[i]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth*, 408 U. S. at 577. But that is exactly what has happened here.

Having demonstrated the existence of a protected interest, the only remaining requirement is to show a deprivation of that interest. That deprivation is outlined extensively above. *See supra* Pgs. 3-6. In short, Intervenor's loans were supposed to be in a zero-interest forbearance and the balance and interest of those loans were not supposed to have grown during the Forbearance Period according to the Government. Yet, that is exactly what happened. The balances grew. The accrued interest grew. And the payments that Intervenor were not properly accounted for and later classified as all going towards interest even though the payments made were multiples greater than the interest outstanding. *See supra* Pg. 5.

Taken together, it is clear Intervenor was deprived of his protected interest in the zero-interest forbearance. That deprivation, combined with the imminent restarting of interest accrual with further deprive Intervenor of a protected property interest in his money. *See Roth*, 408 U. S. at 571-72 (noting that the Supreme Court has "made clear that the property interests protected by procedural due process *extend well beyond* actual ownership of real estate, chattels, or *money*"). And each deprivation has occurred without notice or a hearing.

In sum, Intervenor has a protected property interest in his own money and in the zero-interest forbearance benefit announced by the Government in July 2024. The Government seeks to deprive him of both without any semblance of notice or a hearing. Absent injunctive relief that

deprivation will fully materialize as of August 1, 2025. But it will also continually grow each passing day thereafter. Still without any opportunity to be heard.[4]

b. **5 U.S. Code §702**.

Section 702 of Chapter 7, Title 5, of the United States Code provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." It further provides that such an action shall not be dismissed, or relief denied "on the ground that it is against the United States or that the United States is an indispensable party." 5 U.S. Code §702. However, it limits such actions to those seeking relief other than monetary damages. *Id*.

A "person" within the meaning of the statute includes "an individual." 5 U.S. Code §702(2). An "agency action" "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." §702(13). A "rule" is defined as:

> the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or accounting, or practices bearing on any of the foregoing[.]

§702(13). The term "relief" includes an agency's "grant of money, assistance, license, authority, exemption, exception, privilege, or remedy[.]" §702(11)(A).

Intervenor, as an individual, qualifies as a person under §702. The Department's development and pronouncement of the zero-interest forbearance for SAVE Plan loans constitutes

---

[4] While the obligation to provide notice and a hearing belongs to the Government, it is worth noting that Intervenor has made numerous attempts to try to be heard but each avenue has been effectively foreclosed. *See* Memorandum in Support of the Motion for Leave to Intervene, ECF No. ___ at Pgs 20-21.

an agency action. It first qualifies as an agency action in the form of a rule. The Department made an agency statement of particular applicability – zero-interest forbearance for loans in the SAVE Plan. That action had a future effect – from that date forward such loans would be in and remain in zero-interest forbearance. Which was designed to implement the Department's policy of placing SAVE Plan loans into zero-interest forbearance. Or, in the alternative, to describe the procedure or practice of the Department with respect to the administration of SAVE Plan loans. It also qualifies as an agency action in the form of relief – the Department implemented the zero-percent interest forbearance exempting such loans from regular process during the pendency of litigation.

Intervenor has also suffered a legal wrong and been adversely affect by the Department's action, or inactions under its alleged action. *See* Memorandum in Support of Motion for Leave to Intervene, Pgs. 4-8; 11-14. That action emanates from a relevant statute – Title IV of the Higher Education Act of 195. Specifically, Section 1082(4) which permits the secretary of the Department of Education to, within certain limits, to "consent to modification, with respect to rate of interest, time of payment of any installment of principal and interest or any portion thereof []" federal student loans. 20 U.S. Code §1802(a)(4). The final statutory element is that an action under §702 cannot seek monetary damages. Intervenor seeks only injunctive relief.

This analysis in consistent with this Court's statement that while the United States is immune from suits for monetary damages, "[ ] 5 U.S.C. § 702 permits suits "seeking relief other than money damages." ECF No. 35, at 55 (Jun. 24, 2024).[5] Having satisfied all the statutory elements, Intervenor is entitled to judicial review of the Department of Education's zero-interest

---

[5] To the extent the Government may assert that the delay in raising this matter undermines the claims of imminent harm that argument is without merit. Intervenor seeks to file the motions for leave and injunctive relief within days of the Government's announcement that it would restart interest accrual August 1, 2025. *Cf.* ECF No. 35 at 56 (finding the nine-month delay in filing from the publication of the final rule, while diminishing to the degree of irreparable harm, insufficient to negate irreparable harm).

forbearance action and injunctive relief is warranted to serve its main function – preserve the status quo, until this Court has had a chance to conduct a hearing on these issues and can grant full relief

III.    **The Balance of Harm and Public Interest Factors Favor Intervenor**.

The final two factors for consideration are the of balance between the irreparable harm and the injury that granting the injunction will inflict on other parties and the public interest. *Dataphase Sys., Inc.*, 640 F.2d at 114. When the party opposing a TRO or injunction is the federal government, the balance-of- harms factor "merge[s]" with the public-interest factor. *Nken*, 556 U.S. at 435.

Here, the balance of harms weighs in Intervenor's favor. Intervenor has already had significant sums and interest as well as other unexplained amounts added to his loans during the Forbearance Period. *See* Memorandum in Support of Motion for Leave to Intervene, Pgs. 4-8; 11-14. That injury is certainly irreparable. And without court intervention that injury will grow daily beginning on August 1, 2025. On the other hand, Intervenor cannot ascertain any injury to the Government that would result from requiring it to honor the terms of the Forbearance Period it announced or from requiring it as part of that to remove the errant sums added to Intervenor's student loans. After all, the Government "does not have an interest in the enforcement of [illegal government action]." *Walsh*, 733 F.3d at 488. Nor will the requested relief injure the Plaintiffs' as it would have no effect on the injunctive relief they have sought and been granted or any effect on the claims regarding the constitutionality of the SAVE Plan.

In analyzing the balance of equities and public interest, the Eighth Circuit held that the equities strongly favored an injunction because of the irreversibility of debt forgiveness. ECF No. 66 at 22. Debt forgiveness is not at issue here. The Eighth Circuit further held that "[t]here is no doubt some harm to borrowers who are enrolled in the SAVE plan." *Id.* at 22. It reasoned that "[t]his harm, however, is minimized by the fact their loans have been placed in forbearance and

they have a preexisting obligation to repay their loans. Any change in borrowers' expectations was caused by the likely unlawful agency action challenged here." *Id*. at 22-23. As Intervenor's experience makes clear, the harm is not minimal because the Government did not actually implement the forbearance. And unlike the forgiveness question, the legality of the modification of the interest and repayment for SAVE Plan loans during this question has not been called into question.[6]

In this instance, the public interest also weighs heavily in Intervenor's favor. After all, "the public's true interest lies in the correct application of the law." *Kentucky v. Biden*, 23 F.4th at 612; *see also Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). Accordingly, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2020). And "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2490 (2021).

The public rightly has an interest in having the funds borrowed by students to pay for their education repaid. Intervenor has no problem doing so. But the public interest here is not repayment of the loans, it is the public's interest in having borrowers pay back only what is lawfully owed. As well as the public interest in being able to rely on the Government's representations, such as the one here: loans in the SAVE Plan will be in a zero-interest forbearance for the Forbearance Period. Regardless of whether doing so was wise is irrelevant. What is relevant is whether when

---

[6] In *Biden v. Nebraska*, the majority rebutted a charge that the decision would "control any challenge to the Secretary's temporary suspensions of loan repayments and interest accrual," by explaining that "We decide only the case before us. A challenge to the suspensions may involve different considerations with respect to both standing and the merits." 600 U.S. ___ (Slip. Op. at 18, n. 5) (internal quotation omitted).

It is worth mentioning that the zero-interest forbearance appears a further modification. Unlike the original modification, cancellation of debt principal, this one was necessary to ensure SAVE Plan borrowers did not end up in a worse financial position during the pendency of litigation. The daunting task now, though, would be showing have failing to actually implement that modification did not place those like Intervenor in worse financial circumstances.

the Government makes such specific representations, the public can rely on them. And that the public need not transform into full-time accountants to know whether the Government has done what it said it would. After all, absent Intervenor's good fortune in having kept records of his loan balances at the start and end of each month, it would be exceedingly difficult to demonstrate what has occurred with his loans. Finally, there is also a public interest in having avenues available for persons affected by governmental action to seek redress and given that the Government has effectively foreclosed all existing avenues, *see* Memorandum in Support of Motion for Leave to Intervene, Pgs. 20-21, this is the last meaningful one that remains.

## CONCLUSION

Because Intervenor has established irreparable harm absent relief, a likelihood of success on the merits, and that the balance of harms and public interest weigh in his favor, the Court should grant Intervenor's request for a TRO, or in the alternative, a preliminary injunction, prohibiting the Government from restarting interest accrual on Intervenor's loans until it corrects the errors made during the Forbearance Period.


Date: July 21, 2025

Respectfully submitted,

*/s/ Taylor A. Story*
Taylor A. Story
Pro se Intervenor
244 Exuma Way, Apt. 121
Santa Rosa Beach, FL 32459
(850) 419-6730
taylorstory2025@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 21, 2025, a true and accurate copy of the foregoing document was sent via email to all counsel of record.

Service upon a represented party must be made on the party's attorney, Fed. R. Civ. P. 5(b)(1), through the Court's ECF system or through other electronic means that the person has consented to, Fed. R. Civ. P. 5(b)(2). Consistent with Local Rule 2.12(A) and Section II(G) and Appendix B, of the District's Case Management/Electronic Filing (CM/ECF) Procedures, such service has been made via email to all counsel of record, which constitutes effectives service.

<u>*/s/ Taylor A. Story*</u>
Taylor A. Story
Intervenor
244 Exuma Way, Apt. 121
Santa Rosa Beach, FL 32459
(850) 419-6730
taylorstory2025@gmail.com

**EXHIBIT 1**

**JULY 15, 2025, DEPARTMENT EMAIL**

Gmail - 0% interest ending soon—consider a new repayment plan.

Case: 4:24-cv-00520-JAR    Doc. #:  75    Filed: 07/21/25    Page: 18 of 46 PageID #:
1416

7/18/25, 12:23 PM

 Gmail

Taylor Story <taylorstory2020@gmail.com>

**0% interest ending soon—consider a new repayment plan.**

1 message

**U.S. Department of Education** <noreply@studentaid.gov>                    Tue, Jul 15, 2025 at 11:07 PM
Reply-To: "U.S. Department of Education" <noreply@studentaid.gov>
To: taylorstory2020@gmail.com

Click here to view this email as a web page.

# 0% Interest on SAVE Forbearance is Ending Soon

Dear Taylor,

In July 2024, a federal court injunction blocked parts of the Saving on a Valuable Education (SAVE) Plan. As a result, your federal student loans were placed in forbearance with a 0% interest rate. Because interest has not accrued, your federal student loan balance (which includes principal and interest) has not grown during your forbearance.

In February 2025, a second federal court injunction ended this 0% interest rate. To comply with this injunction, **your loan(s) in the SAVE forbearance will begin accruing interest on Aug. 1, 2025.**

**You won't have to make payments until the courts reach a final decision and the SAVE forbearance ends, but your balance will**

Case: 4:24-cv-00520-JAR    Doc. #: 75    Filed: 07/21/25    Page: 19 of 46 PageID #: 1417

**grow when interest starts accruing on Aug. 1, 2025.** When the SAVE forbearance does end, you'll be responsible for making monthly payments that include any accrued interest as well as your principal. If you're working toward loan forgiveness, are enrolled in the SAVE Plan, and want to start making qualifying payments, you must apply to switch to another eligible repayment plan.

Use the Loan Simulator tool to estimate monthly payments, determine your repayment plan eligibility, and learn which available plan best meets your repayment goals.

> **Try Loan Simulator**

# Benefits of Switching Repayment Plans

 **Avoid Growing Your Debt: Now that interest will start accruing on Aug. 1, staying in the SAVE forbearance will increase the total amount of federal student loan debt you owe. Having interest accrue while you're not making payments will cost you more in the long run.**

 **Pay Off Debt Faster: If you switch to a different plan now and start making payments, you'll pay off your debt more quickly than if you stayed on the SAVE Plan in an interest-bearing forbearance.**

 **Plan for the Future: By enrolling in a different plan now, you'll learn your new monthly payment amount and can better plan for how your student loans fit into**

Gmail - 0% interest ending soon—consider a new repayment plan.

Case: 4:24-cv-00520-JAR    Doc. #: 75    Filed: 07/21/25    Page: 20 of 46 PageID #: 1418

7/18/25, 12:23 PM

your budget.



**Public Service Loan Forgiveness: Time spent in the SAVE forbearance does not provide credit toward Public Service Loan Forgiveness (PSLF). If you're pursuing PSLF, you'll reach your required 120 qualifying monthly payments faster by starting payments on a different plan.**



**IBR Loan Forgiveness: If you switch to the Income-Based Repayment (IBR) Plan, you'll be eligible to have any remaining balance on your loans discharged after 20 or 25 years, depending on when you took out your loans. Apply for IBR on StudentAid.gov.**

## Apply Faster with Federal Tax Information

If you have eligible loans, applying for a new income-driven repayment (IDR) plan is quick and easy if you provide consent for us to obtain your federal tax information directly from the IRS. This allows us to process your application faster and eliminates the time-consuming work of manually uploading your income information.

By providing consent for us to access your federal tax information, we can automatically recertify your IDR plan.

**Apply for IDR**

Gmail - 0% interest ending soon—consider a new repayment plan.

Case: 4:24-cv-00520-JAR    Doc. #: 75    Filed: 07/21/25    Page: 21 of 46 PageID #: 1419

7/18/25, 12:23 PM

🛑 **Beware of Scams**

You **never have to pay for help** with your federal student aid. You might be contacted by a company saying they will help you get loan forgiveness or cancellation for a fee. Make sure you work **only** with the U.S. Department of Education (ED) and our loan servicers—we will always help you for free. Emails from ED only come from noreply@studentaid.gov.

Never reveal your personal information or account password to anyone.

Learn more about how to **avoid student aid scams** and report scam attempts to the Federal Trade Commission at **reportfraud.ftc.gov**.

### How helpful was this email?



Not at all helpful                    Extremely helpful

 Sign up for text alerts to stay updated on our grant programs, loan forgiveness programs, repayment plans, and information about your loans.

7/18/25, 12:23 PM

This email was sent by: Office of Federal Student Aid

U.S. Department of Education

400 Maryland Ave. SW,

Washington, DC, 20002, US

Please do not reply to this email. Messages sent to this email address are not monitored. If you wish to contact us, please use the StudentAid.gov contact page. For more information about financial aid, visit StudentAid.gov.

**EXHIBIT 2**

**DECEMBER LETTER FROM MOHELA**

**MOHELA**® | Official Servicer of
Federal **Student** Aid

633 Spirit Drive, Chesterfield, MO 63005

December 1, 2024



ACCT NUMBER: 2820196400-1

TAYLOR A STORY
19 BARRACUDA ST
SANTA RSA BCH FL 32459-4525

TAYLOR A STORY:

### Loan Update

In an effort to keep you updated on your federal loan(s), we have enclosed details about your loan(s), including the accrued interest, interest rate, and total balance. The loan(s) listed in this letter are currently in forbearance.

Although no payments are due at this time, interest continues to accrue on your loan(s) during the forbearance period. You have the option to pay the interest during forbearance.

**Here are some helpful tips to manage your account:**

- You may cancel the forbearance at any time to resume immediate repayment.
- Create an online account and enroll in eDelivery. Log in to mohela.studentaid.gov to keep tabs on your student loan balance.
- To obtain the outstanding principal and accrued interest balance on your loan(s), log in to your account online at mohela.studentaid.gov.
- Pay now vs. later. You are not required to make payments at this time. However, if you can afford to make even some payments, it can save you money down the road and reduce the total amount that you repay.
- You remain obligated to pay your loan(s), and payments will resume at the end of the forbearance.
- To make a payment, use one of the following methods:

**Payment Methods**

There are three easy ways to make your payment:

- Online: mohela.studentaid.gov
- Phone: 1-888-866-4352 (Toll Free)
- Mail: Include your account number on the check or money order made payable to MOHELA. Send your payment to:

U.S. Department of Education

TTY Dial 711 | 1-888-866-4352 (Toll Free) |
mohela.studentaid.gov
Hours of Operation: Monday: 8 a.m.–9 p.m. Eastern time (ET)
Tuesday–Wednesday: 8 a.m.–8 p.m. ET
Thursday–Friday: 8 a.m.–6 p.m. ET
NMLS #1442770

MOHELA is an official servicer of Federal Student Aid,
an office of the U.S. Department of Education.

Learn more at StudentAid.gov

in @MOHELA  ✕ @MOHELA  f @MOHELA.usa

2

MOHELA
PO Box 790453
St. Louis, MO 63179-0453

NOTE: Mailing your payment may delay its posting. This could result in additional outreach from MOHELA until the payment posts to your account. All payments must be withdrawn on U.S. financial institutions or TD Bank, and in U.S. currency.

## LOAN INFORMATION

| Loan Sequence | Original Principal Amount | Current Balance | Interest Rate | Unpaid Accrued Interest To Date |
|---|---|---|---|---|
| 1-01 | $4,500.00 | $4,342.73 | 0.000% | $43.13 |
| 1-02 | $5,500.00 | $5,333.37 | 0.000% | $42.01 |
| 1-03 | $20,500.00 | $16,369.93 | 0.000% | $0.00 |
| 1-04 | $20,500.00 | $20,500.00 | 0.000% | $92.97 |
| 1-05 | $20,500.00 | $20,090.93 | 0.000% | $0.00 |

**Unpaid Accrued Interest To Date:**
The total amount of unpaid interest as of the date of this letter.

**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or visting reportfraud.ftc.gov.

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

**EXHIBIT 3**

**LOAN 1-01 PAY OFF**



Official Servicer of
**Federal Student Aid**

Contact Us

Payment Methods    In Repayment    Loan Forgiveness & Discharge ⌄    Support ⌄

Account Summary
Loan Details
Payments & Billing ⌄
Repayment Options
Inbox
Upload
More...



# Account History

The information contained on this page is current as of the day the information is requested. Transactions in your Account History may change due to normal account processing, such as a change in payment allocation or a retroactive change in your account status. After a transaction has been reapplied, you will no longer be able to view prior applications.



| Display | | Date Range | |
|---|---|---|---|
| By Loan | ⌄ | Last 6 months | ⌄ |

| Loan | |
|---|---|
| 1-01 Direct Loan - Subsidized | ⌄ |

Current Balance $0.00

## History

Download    Print

| Date ▾ | Description ▾ | Principal ▾ | Interest ▾ | Fees ▾ | Total ▾ | Unpaid Principal ▾ |
|---|---|---|---|---|---|---|
| 05/03/2025 | Payment | -$4,393.52 | $0.00 | $0.00 | -$4,393.52 | $0.00 |

 

**MOHELA**®

Federal Student Loan Management

Postpone Payments

Loan Forgiveness & Discharge

Loan Consolidation

Military Benefits

Help & Support

Contact Us

Info Center

FAQs

Sitemap

About Us

New to MOHELA

About MOHELA

Careers

Feedback



Official Servicer of
Federal Student Aid
An OFFICE of the U.S. DEPARTMENT of EDUCATION

Federal Student Aid (FSA) is your federal loan provider. FSA uses servicers (private companies) like Mohela to manage billing, questions, and payments, and to help you enroll in the best repayment plan for you.

Learn more about Federal Student Aid ⬈

See your repayment options with *Loan Simulator* ⬈

### Contact Info

1-888-866-4352 (Toll Free)
636-532-0060 (International)
TTY: Dial 711

Fax
1-866-222-7060 (Toll Free)
636-787-4038 (International)

Public Service Loan Forgiveness
800-4-FEDAID (Toll Free)

Privacy Policy     Security     Accessibility     Disclaimer of Endorsement     Massachusetts State Ombudsman

usa.gov ⬈     ed.gov ⬈     StudentAid.gov ⬈

NMLS Resource Center ⬈     NMLS # 144277⬈

Copyright © 2024 Higher Education Loan Authority of the State of Missouri (MOHELA). All Rights Reserved.

**EXHIBIT 4**

**CURRENT STATUS OF LOANS**

# Loan Details  As of 07/19/2025 (ET)

## Loan

1-02 Direct Loan - Subsidized ▾

Print

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 09/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ⓘ | 09/11/2036 |

25%

| Ready to pay off this loan today? | Here are the amounts: ⓘ |
|---|---|
| Online | $5,621.40 |
| By U.S. Mail | $5,621.40 |

| | |
|---|---|
| Unpaid Principal | $5,418.06 |
| Unpaid Interest | $203.34 |
| Current Balance | $5,621.40 |
| Interest Rate | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| Interest Type | Fixed |
| Interest Accrued Through ⓘ | 07/19/2025 |

  

FAFSA® Form ⌄   Grants and Loans ⌄   Loan Repayment ⌄   Loan Forgiveness ⌄    Taylor ⌄

Dashboard › My Aid › Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Subsidized

*University of Mississippi*  OPE ID  00244000



# Loan Details As of 07/19/2025 (ET)

## Loan

| 1-03 Direct Loan - Unsubsidized | ▼ |

Print

| | |
|---|---|
| **Loan Status** | Administrative Forbearance-Ends 10/31/2025 |
| **Repayment Plan** | Saving on a Valuable Education - Ends 12/11/2026 |
| **Repayment Start Date** | 11/02/2021 |
| **Estimated Payoff Date** ⓘ | 12/11/2036 |

`25%`

| **Ready to pay off this loan today?** | Here are the amounts: ⓘ |
|---|---|
| **Online** | $16,855.83 |
| **By U.S. Mail** | $16,855.83 |

| | |
|---|---|
| **Unpaid Principal** | $16,397.71 |
| **Unpaid Interest** | $458.12 |
| **Current Balance** | $16,855.83 |
| **Interest Rate** | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| **Interest Type** | Fixed |
| **Interest Accrued Through** ⓘ | 07/19/2025 |



Federal **Student** Aid
AN OFFICE OF THE U.S. DEPARTMENT OF EDUCATION

FAFSA® Form ⌄    Grants and Loans ⌄    Loan Repayment ⌄    Loan Forgiveness ⌄     Taylor ⌄

Dashboard › My Aid › Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



Loans
**$16,855.83**
Total Balance ⓘ

● **$16,397.71**
Principal ⓘ

● **$458.12**
Interest ⓘ

*Loan Information as of 07/01/2025*

LOAN PERIOD ⓘ
08/20/2018 - 05/10/2019

LOAN STATUS ⓘ
● Forbearance
View loan status history

INTEREST RATE ⓘ
6.60% (fixed)

AMOUNT YOU'VE PAID OFF ⓘ
$6,799

REAFFIRMATION DATE ⓘ
N/A

PSLF CUMULATIVE MATCH MONTHS ⓘ
11 months
Learn more about loan forgiveness

# Loan Details As of 07/19/2025 (ET)

## Loan

| 1-04 Direct Loan - Unsubsidized | ▼ |

🖶
Print

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 09/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ⓘ | 09/11/2036 |

**25%**

**Ready to pay off this loan today?**        Here are the amounts:        ⓘ

| | |
|---|---|
| Online | $20,618.45 |
| By U.S. Mail | $20,618.45 |

| | |
|---|---|
| Unpaid Principal | $20,500.00 |
| Unpaid Interest | $118.45 |
| Current Balance | $20,618.45 |
| Interest Rate | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| Interest Type | Fixed |
| Interest Accrued Through ⓘ | 07/19/2025 |



FAFSA® Form ⌄     Grants and Loans ⌄     Loan Repayment ⌄     Loan Forgiveness ⌄       Taylor ⌄ 

Dashboard  ▸  My Aid  ▸  Loan Details

 **STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



**Loans**

**$20,618.45**

Total Balance ⓘ

● $20,500
Principal ⓘ

● $118.45
Interest ⓘ

*Loan Information as of 07/01/2025*

LOAN PERIOD ⓘ

08/26/2019 - 05/08/2020

LOAN STATUS ⓘ

● Forbearance

View loan status history

INTEREST RATE ⓘ

6.08% (fixed)

AMOUNT YOU'VE PAID OFF ⓘ

$1,168

REAFFIRMATION DATE ⓘ

N/A

PSLF CUMULATIVE MATCH MONTHS ⓘ

11 months

Learn more about loan forgiveness

# Loan Details As of 07/19/2025 (ET)

## Loan
| 1-05 Direct Loan - Unsubsidized ▾ |

Print

| | |
|---|---|
| Loan Status | Administrative Forbearance-Ends 10/31/2025 |
| Repayment Plan | Saving on a Valuable Education - Ends 09/11/2026 |
| Repayment Start Date | 11/02/2021 |
| Estimated Payoff Date ⓘ | 09/11/2036 |

| 25% |

**Ready to pay off this loan today?**    Here are the amounts:    ⓘ

| | |
|---|---|
| Online | $20,156.40 |
| By U.S. Mail | $20,156.40 |

| | |
|---|---|
| Unpaid Principal | $20,096.58 |
| Unpaid Interest | $59.82 |
| Current Balance | $20,156.40 |
| Interest Rate | 0.000% |
| | Interest rates on federal student loans are set by Congress. |
| Interest Type | Fixed |
| Interest Accrued Through ⓘ | 07/19/2025 |



FAFSA® Form ⌄    Grants and Loans ⌄    Loan Repayment ⌄    Loan Forgiveness ⌄     ③  Taylor ⌄    

Dashboard ▸ My Aid ▸ Loan Details



**STUDENT AID TIP**

Remember to submit an employment certification form annually to ensure you are on track for Public Service Loan Forgiveness.
Learn more about loan forgiveness and complete the certification form.

LOAN TYPE

# Direct Unsubsidized

*University of Mississippi*  OPE ID  00244000



EXHIBIT 5

APRIL LETTER FROM MOHELA

**MOHELA**® | Official Servicer of Federal **Student** Aid

633 Spirit Drive, Chesterfield, MO 63005

April 2, 2025



ACCT NUMBER: 2820196400-1

TAYLOR A STORY
19 BARRACUDA ST
SANTA RSA BCH FL 32459-4525

TAYLOR A STORY:

**Understanding Your Financial Activity Summary**

- This summary only includes only financial activity for the loan(s) referenced.
- The summary reflects up to the most recent 50 financial transactions while being serviced at MOHELA. If additional financial transactions are needed, they can be accessed via your on-line account at mohela.studentaid.gov.
- Financial activity is subject to change (i.e., returned payments, financial adjustments, school enrollment updates, and refunds of payments).
- If you wish to pay off your loan(s), log in to mohela.studentaid.gov to obtain a payoff calculation, which includes accrued interest, or contact us using the contact information provided below.

K056

MOHELA is an official servicer of Federal Student Aid, an office of the U.S. Department of Education.

Learn more at StudentAid.gov

MOHELA | NMLS #1442770 | PO Box 790453 | St. Louis, MO 63179-0453
1-888-866-4352 (Toll Free) | mohela.studentaid.gov

[in] @MOHELA  [X] @MOHELA  [f] @MOHELA.usa

2

**Financial Activity Summary**


**Loan Information**

| First Disbursement Date | Original Principal Amount | Current Balance |
|---|---|---|
| 09/01/16 | $4,500.00 | $4,355.87 |
| 08/25/17 | $5,500.00 | $5,418.06 |
| 08/15/18 | $20,500.00 | $16,397.71 |
| 08/28/19 | $20,500.00 | $20,500.00 |
| 09/21/20 | $20,500.00 | $20,090.92 |


**Beware of scams.** You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your  loan payments, you can contact MOHELA for free help through mohela.studentaid.gov or by calling 1-888-866-4352 (Toll Free). You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like MOHELA and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams. Our emails to borrowers come from noreply@mohela.studentaid.gov or info@mohela.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or visiting reportfraud.ftc.gov.

This message, from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

**California residents:** The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgement. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-382-4357 or ftc.gov.

**Massachusetts residents**: If you are struggling with your student loans, please visit mass.gov/ago/studentloans to get help from the Ombudsman's Student Loan Assistance Unit.

**FINANCIAL TRANSACTIONS**

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|---|---|---|---|---|
| 03/01/25 | PAYMENT | $300.00 | $0.00 | $300.00 |
| 03/01/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 02/02/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 02/02/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 02/02/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 01/07/25 | PAYMENT | $100.00 | $0.00 | $100.00 |
| 01/07/25 | PAYMENT | $200.00 | $0.00 | $200.00 |
| 12/22/24 | PAYMENT | $250.00 | $0.00 | $250.00 |
| 11/11/24 | PAYMENT | $175.00 | $0.00 | $175.00 |
| 10/21/24 | PAYMENT | $75.00 | $72.77 | $2.23 |
| 10/21/24 | PAYMENT | $62.00 | $0.00 | $62.00 |
| 10/21/24 | PAYMENT | $60.00 | $0.00 | $60.00 |
| 10/21/24 | PAYMENT | $58.00 | $57.58 | $0.42 |
| 07/11/24 | PAYMENT | $280.18 | $23.17 | $257.01 |
| 06/11/24 | PAYMENT | $280.18 | $24.92 | $255.26 |
| 05/11/24 | PAYMENT | $85.22 | $18.13 | $67.09 |
| 05/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 05/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 05/11/24 | PAYMENT | $22.86 | $4.19 | $18.67 |
| 05/11/24 | PAYMENT | $18.71 | $5.98 | $12.73 |
| 04/11/24 | PAYMENT | $85.22 | $15.83 | $69.39 |

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|---|---|---|---|---|
| 04/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 04/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 04/11/24 | PAYMENT | $22.86 | $3.55 | $19.31 |
| 04/11/24 | PAYMENT | $18.71 | $5.53 | $13.18 |
| 03/11/24 | PAYMENT | $85.22 | $20.25 | $64.97 |
| 03/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 03/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 03/11/24 | PAYMENT | $22.86 | $4.79 | $18.07 |
| 03/11/24 | PAYMENT | $18.71 | $6.36 | $12.35 |
| 02/11/24 | PAYMENT | $85.22 | $15.71 | $69.51 |
| 02/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 02/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 02/11/24 | PAYMENT | $22.86 | $3.53 | $19.33 |
| 02/11/24 | PAYMENT | $18.71 | $5.50 | $13.21 |
| 01/11/24 | PAYMENT | $85.22 | $62.73 | $22.49 |
| 01/11/24 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 01/11/24 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 01/11/24 | PAYMENT | $22.86 | $16.61 | $6.25 |
| 01/11/24 | PAYMENT | $18.71 | $14.44 | $4.27 |
| 11/11/23 | PAYMENT | $85.22 | $85.22 | $0.00 |
| 11/11/23 | PAYMENT | $85.22 | $0.00 | $85.22 |
| 11/11/23 | PAYMENT | $68.17 | $0.00 | $68.17 |
| 11/11/23 | PAYMENT | $22.86 | $22.86 | $0.00 |

| Effective Date | Transaction Type | Total Amount of Transaction | Amount to Principal | Amount to Interest |
|:---:|:---:|:---:|:---:|:---:|
| 11/11/23 | PAYMENT | $18.71 | $18.71 | $0.00 |
| 10/02/23 | PAYMENT | $85.22 | $85.22 | $0.00 |

9