**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

STATE OF MISSOURI, *et al.,*

      Plaintiffs,

v.

DONALD J. TRUMP, *et al.,*

      Defendants.

Civil Action No. 4:24-cv-00520-JAR

## MEMORANDUM IN SUPPORT OF GRANTING MOTION FOR

## RECONSIDERATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT .................................................................................................................. 6

    I.    Notwithstanding the Eighth Circuit's Mandate, this Court can Reconsider and Provide Requested Relief ....................................................................................................... 6

    II.    The Court Order does not Consider the Implications of Congress's Ratification of the SAVE Final Rule ....................................................................................................... 8

        A.    In passing the OBBBA Congress ratified the SAVE Final Rule ................................. 10

        B.    Ratification precludes vacatur as a remedy ................................................. 11

    III.    The Eighth Circuit's Direction to Grant Voluntary Vacatur Exceeds Federal Courts' Equitable Authority ..................................................................................................... 13

        A.    Parties are seeking and the Eighth Circuit directed an impermissible voluntary vacatur 14

        B.    The Court's Equitable Authority Does Not Extend to Consent Vacatur ...................... 15

    IV.    The Administrative Procedure Act Expressly Forbids Vacatur Absent an Unlawfulness Holding ...................................................................................................................... 16

        C.    The APA's preconditions for providing a remedy are not satisfied.............................. 16

        D.    Vacatur is not proper where there is no finding of illegality under the statute ............ 17

    V.    The Court's Failure to Fully Conduct the Required Analysis for Vacatur is a Manifest Error of Law ................................................................................................................ 18

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997). ................................................................... 7

*Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993) .......................................................................................... 18

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015). ................................. 16

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1282, 1290 (11th Cir. 2015)* ....................................................................................... 18

*Custom Communications Inv. v. Federal Trade Commission* 142 F.4th 1060 (8th Cir. 2025) 12, 18

*Elbert v. United States Dep't of Agric.,* 2022 WL 2670069 (D. Minn. July 11, 2022) ........... 18, 19

*Forest Grove School District v. T.A.*, 557 U.S. 230 (2009) ........................................... 10

*Illinois v. Wheeler (In re Clean Water Act Rulemaking)*, 60 F.4th 583 (9th Cir. 2023) ............... 15

*Lorillard v. Pons*, 434 U.S. 575 (1978) ................................................................... 10

*Marin Piazza v. Aponte Roque*, 909 F.2d 35 (1st Cir. 1990) .......................................... 7

*Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025). ..................................................... 3

*Missouri v. Trump*, Nos. 24-2332/24-2351, Order (8th Cir. Mar. 9, 2026), ECF No. 00805471279 ..................................................................................... 13

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) .................................................. 18

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) ............................................. 7

*United States v. Bell*, 988 F.2d 247 (1st Cir. 1993) .................................................... 7

*United States v. Castellanos*, 608 F.3d 1010 (8th Cir. 2010) ........................................ 6

*United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930 (8th Cir. 2006) ..................... 6

*United States v. Rosen*, 929 F.2d 839 (1st Cir. 1991) ................................................. 7

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ................................................... 14

*WaterLegacy v. EPA*, 300 F.R.D. 332 (D. Minn. 2014) ............................................. 18

*West Virginia v. EPA*, 597 U.S. 697 (2022) ........................................................... 11

**Statutes**

20 U.S.C. § 1087e(d)(1)(D) ................................................................................. 9

5 U.S.C. § 706 ................................................................................................. 16

5 U.S.C. § 706(2)(C) ......................................................................................... 11

One Big Beautiful Bill Act § 72, Pub. L. No. 119-21 (2025) .................................... 1, 4, 9

**Rules & Regulations**

16A Fed. Prac. & Proc. ...................................................................................... 5

34 C.F.R. § 685.209(k)(4)(iv) .............................................................................. 1

*Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820 (July 10, 2023) (to be codified at 34 C.F.R. pts. 682 and 685)* ............................................ 20

**Other Authorities**

H.R. 1, 119th Cong. (as engrossed in the House, May 22, 2025).................................................. 4

Notice of Proposed Rule Making (NPRM) on January 30, 2026. Reimagining and Improving
    Student Education, 91 Fed. Reg. 4,254 (proposed Jan. 30, 2026) (to be codified at 34 C.F.R.
    pts. 674, 682, and 685)........................................................................................................ 15
    5, 14

Press Release, U.S. Dep't of Educ., U.S. Department of Education Announces Agreement with
    Missouri to End Biden Administration's Illegal SAVE Plan (Dec. 9, 2025),
    https://www.ed.gov/about/news/press-release/us-department-of-education-announces-
    agreement-missouri-end-biden-administrations-illegal-save-plan ............................................ 4

Wright & Miller § 3950.4 (5th ed.)................................................................................................ 5

## INTRODUCTION

The Court's Order dated March 10, 2026, granting parties' joint motion [ECF No. 91], vacating the SAVE Final Rule except 34 C.F.R. § 685.209(k)(4)(iv), and closing the case should be reconsidered and reversed. Reconsideration is warranted for three independent reasons.

First, at the direction of the Eighth Circuit, this Court vacated the SAVE Final Rule with no analysis of the impact of the most significant piece of legislation dealing with income-driven repayment since 2010. By passing the One Big Beautiful Bill Act, Congress ratified the SAVE Final Rule critically undercutting both the plaintiff states' case and the Eighth Circuit's rationale for its preliminary injunction. One Big Beautiful Bill Act § 72, Pub. L. No. 119-21 (2025) ("OBBBA").

Second, the Eighth Circuit's direction to vacate the SAVE Final Rule did not account for the plain text of the Administrative Procedure Act which requires a finding of illegality for the court to provide a remedy; nor did it account for controlling Supreme Court precedent which prevents federal courts from vacating agency actions absent a ruling on the merits under principles of equity.

Finally, Eighth Circuit precedent requires courts to conduct a balancing test prior to awarding vacatur as a remedy which no court performed. That analysis would have required considering the equities of the millions of student loan borrowers who are relying on the Rule; a near-impossible task in the current posture, as the United States affirmatively requested that the Court take away the critical protections to which borrowers are entitled under the law. Proposed Intervenors file this motion to correct these manifest legal errors directed by the Eighth Circuit's two-sentence mandate at the request of two non-adverse parties.

## BACKGROUND

The present case was filed April 9, 2024, nearly a year after the Department fully implemented major parts of SAVE Final Rule, after more than seven million borrowers had enrolled, and after the Department discharged tens of thousands of student loans under the regulation. The plaintiff states explained that they were injured by the Rule for four reasons. Complaint, *Missouri v. Trump*, No. 4:24-cv-00520-JAR (E.D. Mo. Apr. 9, 2024), ECF No. 1. First, because of the alleged loss of revenue from student loan servicing giant MOHELA. In addition, plaintiff states explained that it will be harder to recruit and retain employees as loan discharge will make public service loan forgiveness a less valuable incentive; they will lose tax revenue because an entirely different law exempted student loan discharge from Federal income tax calculations; and the Bank of North Dakota would not be able to issue as many private student loans.

On June 24, 2024, this Court granted a preliminary injunction preventing the Department from further loan forgiveness for borrowers under the SAVE Final Rule. ECF no. 36. Three days later the Department noticed an interlocutory appeal and the following day the plaintiff states cross-appealed.

In its attempt to comply with this preliminary injunction, the Department of Education involuntarily placed the more than 7 million borrowers repaying their loans under the SAVE plan into forbearance – likely costing the United States millions of student loan payments while it continued to pay student loan servicers like MOHELA to service these accounts. Under the terms of this initial forbearance, the Department, presumably because the forbearance was involuntary, reduced borrowers' interest rate to zero percent. This forbearance lasted through the Eighth Circuit's hearing of the parties' cross appeal.

During this cross appeal, the most detailed record in this matter was developed. Between June and October 2024 parties fully briefed both an emergency stay and preliminary injunction resulting in the Eighth Circuit's February 18, 2025, ruling. *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025). This, the most detailed Eighth Circuit analysis on the record, affirmed this Court's preliminary injunction and directed this Court to modify the preliminary injunction to go further and enjoin the entire SAVE Final Rule. *Id*. This Court executed on the Eighth Circuit's direction and issued an order in accordance with the ruling on April 14, 2025.

In response to the expanded injunction, the Department restarted interest accrual for borrowers in forbearance. The Department, now operating under leadership that publicly criticized the SAVE plan and who were well aware of the Eighth Circuit's opinion, did not initiate rulemaking to repeal the SAVE Final Rule.

For the next eight months the litigation slowed, with the most notable docket entry being the attempted intervention by a borrower who alleged MOHELA was charging him interest during the period when the Department had directed interest rates be set to zero percent for borrowers in SAVE. ECF No. 72.

During this summer, Congress engaged in protracted, public debate leading up to the ultimate passage of the OBBBA. The OBBBA made significant changes to the part of the Higher Education Act that authorized the Department to promulgate the SAVE regulation – section 455(e). Congress seriously considered the appropriate repayment terms and conditions of federal student loans. In fact, it considered directing the Department to start the process to end all income-contingent repayment plans immediately upon passage and transition all borrowers into a different repayment plan as soon as practicable. H.R. 1, 119th Cong. (as

3

engrossed in the House, May 22, 2025). Those provisions were included in the version of the Bill that passed the House.

The House Bill went so far as to authorize the Department to issue an interim final rule and forgo its normal negotiated rulemaking process which would have eliminated SAVE much more quickly. *Id*. In effect, the House Bill would have authorized the exact thing that the parties have asked this Court to do through vacatur – eliminate the SAVE Final Rule without the protections of the APA or a transition period for borrowers.

However, after further consideration, Congress agreed to allow all income-contingent repayment plans to remain in place until July 1, 2028, and require the Department to conduct its regular notice and comment rulemaking before acting. OBBBA § 72. The President signed the bill on July 4, 2025.

On December 9, 2025, the parties publicly announced a proposed settlement to this matter and informed the public that, "if the parties' joint proposal is approved by the court, borrowers currently enrolled in the illegal SAVE Plan will have a limited time to select a new, legal repayment plan…" Press Release, U.S. Dep't of Educ., U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan (Dec. 9, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-announces-agreement-missouri-end-biden-administrations-illegal-save-plan.

The parties did not submit the settlement to the court for review but did ask the court to vacate the SAVE Final Rule with one exception related to certain limited periods in forbearance being credited toward loan discharge under income-driven repayment plans. ECF No. 93.

Rightfully recognizing the lack of adversary and the significant impact of the passage of the OBBBA, this Court did not grant the parties' motion but rather dismissed the case. Plaintiff states requested a stay – which this Court denied – and subsequently appealed to the Eighth Circuit. *Id.*

In its motion for an Emergency Stay from the Eighth Circuit, the plaintiff states requested either a stay pending appeal of the dismissal or, in the alternative, reversal of this Court's decision and for the Circuit to direct this Court to enter judgment in accordance with the parties' joint motion. Plaintiffs-Appellants' Emergency Motion for Stay of District Court Dismissal Order Pending Appeal, *Missouri v. Trump*, Nos. 24-2332/24-2351 (8th Cir. Mar. 5, 2026), ECF No. 00805469134. The Eighth Circuit elected the second option and on March 9, 2026, it directed this Court to vacate the SAVE Final Rule with the one small exception. This Court complied with that mandate the following day.

The Plaintiff's request, and the Eighth Circuit's order, resulted in this Court implementing a legally deficient resolution to this matter that only serves to end-run the protections guaranteed by the APA and allows the Executive and a handful of politically aligned plaintiffs to vacate any major agency rule through judicial fiat.

## STANDARD OF REVIEW

Proposed Intervenors requests reconsideration relief under Federal Rule of Civil Procedure 59(e). *See* 16A Fed. Prac. & Proc., Wright & Miller § 3950.4 (5th ed.) ("Any kind of motion, made within Civil Rule 59(e)'s 28-day limit, that draws into question the correctness of the district-court judgment may be considered a motion 'to alter or amend a judgment' under Civil Rule 59(e)."). A district court has broad discretion to decide to grant or deny a motion to alter or amend a judgment under this rule. *United States v. Metro. St. Louis*

*Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Rule 59 motions are generally limited to correct manifest errors of law or to present newly discovered evidence. *Id*.

## ARGUMENT

The relief requested by the parties cannot be granted by this Court and what the Eighth Circuit directed was a manifest error of law. This Court should reconsider and vacate its March 10, 2026, order on three independent grounds. First, Congress acted to ratify the SAVE Final Rule through its passage of the OBBBA, which preserved the precise statutory authority, with full knowledge of the SAVE Final Rule, this litigation, and the Eighth Circuit's preliminary injunction opinion. That intervening change in the controlling legal landscape required consideration by the Court and now requires reconsideration of the final order.

Second, the vacatur was entered pursuant to a consent judgment without adversarial testing, without any finding of illegality on the merits, and without consideration of or notice to the millions of borrowers whose legal rights the order purports to extinguish.

Third, even if vacatur were an otherwise appropriate remedy, the Court failed to conduct the equitable analysis that APA vacatur requires, including consideration of the significant financial and reliance interests of borrowers enrolled in the SAVE Final Rule.

The appropriate remedy on any of these grounds is remand without vacatur, leaving the regulatory and legislative process to determine the future of the SAVE Final Rule rather than a consent judgment that substituted private negotiation for judicial resolution.

## I.    Notwithstanding the Eighth Circuit's Mandate, this Court can Reconsider and Provide Requested Relief

The Mandate Rule or Law of the Case jurisprudence is clear that, "inferior tribunals are bound to honor the mandate of superior courts within a single judicial system." *United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010). This rule is enforced with

6

regularity in the federal courts, however, there are important exceptions that give this Court authority to provide the requested relief. District courts retain authority to address collateral and independent matters not resolved by the mandate. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168 (1939). They may also consider intervening changes in the legal landscape — new legal developments that were not presented to or considered by the circuit when it issued its directive. *Agostini v. Felton*, 521 U.S. 203, 236 (1997).

"Even where an appellate court's mandate does not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations." *United States v. Bell*, 988 F.2d 247, 250-51 (1st Cir. 1993) (collecting cases from the Second, Fifth, Sixth, Eighth, Ninth, Eleventh, and D.C. Circuits). This is such a situation.

Courts have defined this narrow exception to be appropriate only where there are exceptional circumstances. A party satisfies this standard by demonstrating one of three things: controlling legal authority has changed dramatically; significant new evidence, not earlier obtainable in the exercise of due diligence; or blatant error in the prior decision will, if uncorrected, result in a serious injustice. *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993) (citing *Rivera-Martinez*, 931 F.2d at 151; *United States v. Rosen*, 929 F.2d 839, 842 n.5 (1st Cir. 1991); *see also Marin Piazza v. Aponte Roque*, 909 F.2d 35, 38 (1st Cir. 1990)).

Here, as described in more detail below, all three exceptions are independently satisfied.  First, the passage of the OBBBA is a fundamental change in controlling legal authority for which there is no consideration in the record or opinion – with the notable exception of this Court's denial of plaintiff states' motion to stay the first dismissal.

Second, the manifest legal errors described in the remaining section of this memorandum are significant. If uncorrected, these errors coupled with the drastic financial consequences for millions of borrowers enrolled in or eligible for the SAVE Plan is the serious injustice that justifies a district court to consider additional factors before implementing a mandate.

Third, granting the attached motion to intervene will introduce significant evidence that was not previously obtainable – not because it did not exist, but because no party representing borrowers' interests was before any court over the past two weeks as this series of dismissals unfolded. Proposed Intervenor Robeson faces income tax liability on $90,000 in discharge income against an annual income of approximately $8,000; that Proposed Intervenor Grunseth needs a single payment of $165 to qualify for immediate loan discharge; that Proposed Intervenor Havens faces more than $500 per month in additional payments and potential tax liability on a discharge with a pre-December 31, 2025 effective date; and that Proposed Intervenor Boykin faces more than a decade of additional payments but for the vacatur of the IDR buyback provision. This evidence is directly relevant to the *Allied-Signal* equitable analysis no court has yet conducted, an analysis that should determine whether vacatur is an appropriate remedy here.

## II.    The Court Order does not Consider the Implications of Congress's Ratification of the SAVE Final Rule

Congress provided access to income-driven repayment options for Direct Loan borrowers since the program's inception. These programs have fallen under two statutory grants of authority; income-based repayment (IBR) and income-contingent repayment (ICR). Congress required that the Department of Education provide access to, "an income contingent repayment plan" for Direct Loan borrowers (except Direct PLUS loan borrowers). 20 U.S.C. §

8

1087e(d)(1)(D). This statute directs the Secretary to establish, by regulation, a payment schedule that varies in relation to "the appropriate portion of the annual income of the borrower (and the borrower's spouse, if applicable)…" 20 U.S.C. § 1087e(e)(1)(D).

Since first authorized by statute, the Department of Education has conducted numerous rulemakings establishing or modifying the three primary ICR based repayment plans: the Income-Contingent repayment plan, Pay as You Earn, and Revised Pay as You Earn. The REPAYE Plan was renamed SAVE in the 2023 SAVE Final Rule.

In the period between the Eighth Circuit's opinion affirming and expanding this Court's preliminary injunction, and this Court's initial dismissal of the case, Congress intervened.

The OBBBA ratified the Department of Education's earlier rulemaking by ratifying the statutory provision authorizing the SAVE Plan during the transition to a new repayment scheme. OBBBA § 72. In effect, the OBBBA directed the Department to end all ICR plans authorized under the ICR statutory mandate by July 1, 2028. The legislation treats SAVE and other ICR plans equally. Despite the prevalence of the SAVE plan in the media, the extended public debate over the OBBBA, extensive modifications to student loan repayment in the Bill, and the opportunity and desire to reform student loan repayment, the OBBBA did not terminate or otherwise invalidate the SAVE plan.

It also did not repeal section 455(e) of the Higher Education Act immediately—an option debated by Congress during the consideration of the OBBBA and included in an earlier version of this legislation passed by the U.S. House of Representatives. Ultimately, Congress elected to preserve section 455(e) of the Higher Education Act for nearly three full calendar years following the enactment of OBBBA. It is clear that, if Congress intended to repeal the SAVE Plan, effective immediately, it would have done so.  It did not. In fact, by grouping all

9

the ICR related repayment plans together the OBBBA provides for the continuation of the benefits under these plans during the transition period to the new repayment system envisioned by the statute.

A. *In passing the OBBBA Congress ratified the SAVE Final Rule*

The Eighth Circuit's opinion on preliminary injunction draws a close analogy to the Supreme Court's decision to strike down the United States' attempt to provide loan discharge in the aftermath of the COVID-19 pandemic. In doing so it relies heavily on the major questions doctrine, suggesting that the SAVE Final Rule was so significant that Congress would not have authorized an executive agency to do it through rulemaking. In other words, the decision rightly rests with Congress, not the President.

But shortly after the Eighth Circuit's opinion, the similarity between the SAVE Final Rule and the COVID related loan discharges was extinguished. Here, unlike there, Congress answered the question for the Court. Because the OBBBA specifically considered the authorizing section within the Higher Education Act and in fact amended that section significantly, we can presume that Congress knew of the SAVE Final Rule and of the present matter. *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), *Forest Grove School District v. T.A.*, 557 U.S. 230, 239-40 (2009). By amending the statute without disturbing the agencies reading or acting on the Eighth Circuit's concerns (eliminating SAVE immediately), Congress ratified the SAVE Final Rule. *Id.*

Indeed, this Court rightfully noted as much in its denial of the Plaintiff's request for a stay of the first dismissal explaining that it is, "not persuaded by Plaintiffs' apparent attempt to ignore the One Big Beautiful Bill Act,3 which requires Defendants to begin transitioning all borrowers enrolled in the SAVE plan to a different repayment plan or the parties' settlement

10

agreement that would presumably require the same." ECF No. 96.

B. *Ratification precludes vacatur as a remedy*

Passage of the OBBBA extinguished significant portions of the plaintiff states' argument and the reasoning in the Eighth Circuit's preliminary injunction opinion. The plaintiff states' claims rest on § 706(2)(C), that the SAVE Final Rule exceeded the Department's statutory authority and on the major questions doctrine, which requires clear congressional authorization for agency action of significant economic and political magnitude. 5 U.S.C. § 706(2)(C); *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). The OBBBA was enacted with full knowledge of this litigation, the Eighth Circuit's preliminary injunction opinion, and the $475 billion price tag that triggered major questions scrutiny. Congress then preserved the precise statutory authority the plaintiff states challenged, while explicitly rejecting immediate repeal. Since Congress ratified the SAVE Final Rule, it is impossible to conclude that the rule exceeded the Department's statutory authority or that it violates the separation of powers doctrine. Section 706(2)(C) authorizes vacatur only of agency action that exceeds statutory authority. An action ratified by Congress cannot simultaneously exceed that authority. Vacatur under § 706(2)(C) is therefore unavailable. In effect, the Eighth Circuit said that the rule required congressional authorization and Congress did just that by ratifying the Rule while student loan repayment transitions to the new statutory scheme.

There are no analysis, briefing, or motions in the record that address the impact of the OBBBA on the case. Until this week, the Eighth Circuit had not even considered this case since the passage of the OBBBA and the only information in the record provides only three sentences of factual information about the Bill. There was no legal analysis provided and no adversarial hearing or briefing of any kind. There is almost no record on which a court could make a

11

determination about the legal effect on this matter.

The Eighth Circuit's direction to vacate the SAVE Final Rule without considering the implications of the passage of a major piece of legislation that addresses the very statutory scheme in question is a manifest legal error.

Even assuming for the moment that the agency action was procedurally defective in violation of the APA and that the plaintiff states may be entitled to a remedy. That remedy cannot be vacatur. Ratification changes the legal landscape such that any ongoing challenge to the rule is more properly understood as a challenge to Congress's decision to preserve § 455(e) — a challenge that cannot be resolved through APA review of the underlying rulemaking.

Further, any faithful application of the *Allied-Signal* test, which courts use to determine whether vacatur is a proper remedy, compels the same conclusion. *Custom Communications Inv. v. Federal Trade Commission,* 142 F.4th 1060, 1074 (8th Cir. 2025). As discussed further below, even absent legislation, those factors weighed in favor of remand without vacatur. Here, Congressional action has the effect of both curing the most severe alleged deficiencies in the rule while also significantly increasing the disruptive consequences of vacatur. Before the passage of the OBBBA, some third parties may have understood the controversy of this case and discounted the potential benefits of the SAVE Final Rule based on the likelihood of an adverse ruling. After the OBBBA, that uncertainty was resolved by Congress itself. Borrowers who continued in SAVE accrued buyback and loan discharge rights during the transition period did so with the reasonable understanding that Congress had settled the question of the rule's legal authority. Vacating the rule now, after Congress has ratified it, inflicts precisely the kind of retroactive disruption the *Allied-Signal* test exists to prevent — and does so without any corresponding legal justification.

### III.    The Eighth Circuit's Direction to Grant Voluntary Vacatur Exceeds Federal Courts' Equitable Authority

The March 10, 2026, order vacating the SAVE Final Rule rests on no identifiable legal foundation. *Missouri v. Trump*, Nos. 24-2332/24-2351, Order (8th Cir. Mar. 9, 2026), ECF No. 00805471279. The record contains no finding that the SAVE Final Rule is unlawful, no merits adjudication of the claims alleged in the complaint, and no analysis of the regulatory, statutory, or equitable basis for the extraordinary remedy of vacatur. The order was entered solely because two aligned parties asked for it.

The Eighth Circuit's direction to this Court was two sentences: "The District Court's order of dismissal is reversed, and the District Court is directed to enter the final judgment, as jointly requested by the parties. The emergency motion is denied as moot." 8th Cir. Order, ECF No. 00805471279. There is no suggestion in those sentences that any court found a legal defect in the SAVE Final Rule sufficient to justify vacatur. The court directed entry of a judgment. It did not find the Rule unlawful. It did not instruct this Court to conduct any independent analysis. It did not provide any consideration of the intervening legislation that fundamentally changed the legal landscape of this case. It simply ratified the parties' agreement and directed its implementation. This Court then entered that vacatur without any independent finding of illegality.

Intervenors and the public are left to guess about what if any legal basis was used to justify taking such a drastic action. The original complaint alleges five counts under the APA. Counts I and II generally allege the SAVE Final Rule is outside of the authority granted by Congress in the Higher Education Act, Count III alleges the rule is arbitrary and capricious, Count IV and V addressed alleged procedural errors in issuing the Final Rule.

13

There are only two ways to understand the legal basis for the vacatur, and both constitute legal error. The first is that vacatur was granted purely on the basis of the parties' joint request – a voluntary settlement made to look like a merits decision. Or in the alternative, vacatur was based in authority conferred by the APA and rationalized by some implicit extension of the Eighth Circuit's analysis in affirming the preliminary injunction.

   A.   _Parties are seeking and the Eighth Circuit directed an impermissible voluntary vacatur_

At no point during this litigation has any court considered the full merits of the underlying cause of action. Plaintiff states contend that because the "case's merits have effectively already been decided," the interests of judicial economy justify a final judgment. Plaintiffs-Appellants' Emergency Motion for Stay. That contention is wrong as a matter of law. The Eighth Circuit's opinion, written prior to the passage of the OBBBA, addressing the cross appeal of this court's preliminary injunction was not and could not be a substitute for an adjudication on the merits. The purpose of a preliminary injunction is solely to preserve the position of the parities pending resolution of the dispute. "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A likelihood-of-success finding at the preliminary injunction stage carries no preclusive effect and cannot serve as the legal foundation for a permanent vacatur of a federal regulation. Whatever persuasive or precedential weight that analysis carried evaporated when Congress provided a nearly three-year transition period for borrowers enrolled in the SAVE repayment plan.

14

In practice, what the parties are requesting is that this Court effectuate a repeal of the SAVE Final Rule without a full determination that the rule is illegal. The United States is free to do that through the appropriate rulemaking process. In fact, it has already begun that process by completing the Department's required negotiated rulemaking and issuing a Notice of Proposed Rule Making (NPRM) on January 30, 2026. Reimagining and Improving Student Education, 91 Fed. Reg. 4,254 (proposed Jan. 30, 2026) (to be codified at 34 C.F.R. pts. 674, 682, and 685).

The parties seek to circumvent that process, however, by ostensibly using this Court's equitable authority as a shortcut. This is directly contrary to the law.

### B. _The Court's Equitable Authority Does Not Extend to Consent Vacatur_

Vacatur is rooted in the courts' equitable authority. That authority, however, is not unlimited. In considering analogous attempts by new political leadership to have courts do what the Executive cannot accomplish through its own processes, the Ninth Circuit found that federal courts lack the authority to vacate an agency rule merely at the request of the parties. _Illinois v. Wheeler (In re Clean Water Act Rulemaking)_, 60 F.4th 583, 594 (9th Cir. 2023). Relying on Supreme Court precedent, that court held that permanent equitable remedies can be awarded only against illegal executive action, and illegality requires establishing that there has been or will be a violation of law. _Id._ Consent between the parties is not a finding of illegality. Agreement is not adjudication. No precedent permits a court to permanently extinguish the regulatory rights of millions of absent third parties on the basis of a settlement between two parties who, by the time that settlement was reached, shared identical interests. To permit otherwise would make this Court, in the words of the Ninth Circuit, an accomplice of parties seeking to avoid the APA's statutory requirements for repealing a rule. _Id._ at 595.

15

IV.    **The Administrative Procedure Act Expressly Forbids Vacatur Absent an Unlawfulness Holding**

When interpreting a statute, the Eighth Circuit begins with the text. *Zimmer Radio of Mid-Missouri, Inc. v. FCC*, 145 F.4th 828, 844 (8th Cir. 2025) (quoting *Lackey v. Stinnie*, 604 U.S. 192 (2025)). Courts must, "presume that a legislature says in a statute what it means and means in a statute what it says," and where the words are unambiguous the inquiry is complete. *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 465-66 (8th Cir. 2015) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). Here the text is clear.

The plain reading of the Administrative Procedure Act independently forecloses the possibility of vacatur in this posture. "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

C.    *The APA's preconditions for providing a remedy are not satisfied*

Before providing the court with remedies under § 706 (1) & (2), the statute sets both controversy and process preconditions. 5 U.S.C. § 706. The first clause of the section requires that the court is presented with an actual controversy that is "necessary to decision." The statute goes on to tell courts what they must do prior to directing a remedy. Neither precondition is satisfied here.

First, at the time of issuing the order vacating the SAVE Final Rule, it was not yet necessary to decide on the underlying legality. The record had not been sufficiently developed to make that determination, particularly in light of the OBBBA.

Second, once a need to decide a matter arises, the relevant provision, 5 U.S.C. § 706, directs reviewing courts to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency

16

action." Only then, does the courts' authority to "hold unlawful and set aside agency action…" ripen. The sequence is mandatory, not discretionary.

At no point did any court complete the prerequisite review, interpretation, and resolution of legal questions that § 706(2) requires to hold the SAVE Final Rule unlawful. The most relevant opinion in this record, the Eighth Circuit's preliminary injunction opinion, did not thoroughly consider, interpret, or adjudicate the payment threshold provisions, the interest accrual provisions, the IDR buyback provisions, or the numerous other regulatory changes contained in the Final Rule. The record is simply not developed enough. Intervenors do not need to show at this point that those provisions are lawful, but merely that there are significant outstanding work to, "determine the meaning or applicability of the terms," for the SAVE Final Rule.

### D. _Vacatur is not proper where there is no finding of illegality under the statute_

Federal courts' authority to set aside agency actions as a remedy under the APA is limited to actions that it holds unlawful under § 706(2)(A) through (F). The statute does not authorize a court to set aside an agency action by consent. It does not authorize a court to set aside an agency action at the request of a party that has abandoned its defense of the challenged rule, it only authorizes this action when the court holds an action unlawful for the specific reasons identified in the APA.

The plain reading of the statute makes this clear. The first part of § 706(2) tells the court what remedies are available, specifically to "hold unlawful" and to "set aside." It goes on to condition the ability of a court to grant those remedies upon a court's determination that the action satisfies one of the provisions in § 706(2)(A) through (F). The statute's "found to be" language is unambiguous.

17

This is an important check on judicial and executive authority. The APA's procedural protections govern both promulgation and the repeal of agency rules. Agencies are required to use, "the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). The parties' strategy in this case has directly undermined those protections and turned this Court and the Eighth Circuit into instruments for achieving through litigation what the APA requires be accomplished through rulemaking.

## V.     The Court's Failure to Fully Conduct the Required Analysis for Vacatur is a Manifest Error of Law

Even if the Court views the record in this case as sufficient to establish a ruling on the merits, vacatur does not follow automatically. "Courts generally apply a two-factor test, drawn from *Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146, 300 U.S. App. D.C. 198 (D.C. Cir. 1993), when deciding whether to remand with or without vacatur." *Elbert v. United States Dep't of Agric.,* 2022 WL 2670069, at *13-14 (D. Minn. July 11, 2022). (citing *Allied-Signal*, 988 F.2d at 150-51); *see also Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng;rs*, 781 F.3d 1282, 1290; *WaterLegacy v. EPA*, 300 F.R.D. 332, 345-46 (D. Minn. 2014) (applying *Allied-Signal* factors). They consider (1) the seriousness of the deficiencies in the agency action, and (2) the disruptive consequences of vacatur as a remedy. *Id*.

The Eighth Circuit recently recognized the necessity for this analysis in *Custom Communications*. 142 F.4th at 1074. In that per curiam opinion, The Eighth Circuit aligned itself with jurisdictions that have embraced the *Allied-Signal* test, considering the seriousness of the challenged rule's deficiencies and the disruptive consequences of the proposed remedy.

18

This is consistent with long-standing practice in this circuit which have remanded agency actions while leaving them intact and "no circuit court has found that courts lack the power to remand without vacatur." *Elbert*, 2022 WL 2670069, at 14.

The reason for requiring this analysis is grounded in the APA's procedural protections. As discussed above, agencies are required to use the same procedures to revoke a rule as they are when they write one. Courts are therefore obliged to ensure that the remedy of vacatur is warranted by the record and not merely done at the request of parties. This is a mandatory requirement and the failure of any court to do it here is a clear error.

Had a court conducted the analysis it should have concluded as a matter of law that the *Allied-Signal* factors weigh against vacatur and in favor of remand.

Based on the record in the case, the seriousness of the rule's deficiencies are minimal at best. As detailed above, no court has completed the review that § 706 requires before holding an agency action unlawful and in fact did not hold the SAVE Final Rule unlawful. To the extent the Eighth Circuit's preliminary injunction opinion identified deficiencies in the rule, it did so prior to the passage of the OBBBA and only at the likelihood of success standard. No court has held that an agency action ratified by Congress is sufficiently deficient to justify equitable relief under the APA.

On the second *Allied* factor, the record is overwhelming. The Department of Education conducted an exhaustive rulemaking process to develop the SAVE Final Rule, including a negotiated rulemaking committee that reached consensus, publication of a Notice of Proposed Rulemaking, and consideration of nearly 14,000 public comments. *See Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program, 88 Fed. Reg. 43,820 (July 10, 2023) (to be codified*

19

*at 34 C.F.R. pts. 682 and 685).* The Final Rule spans 86 pages of detailed regulatory analysis, including evaluation of the rule's impact on borrower default and delinquency rates, enrollment in income-driven repayment programs, budgetary implications, and alternatives to the regulatory approach adopted. *Id.* Vacatur of that rule in a two-sentence order, without any corresponding analysis, is precisely the kind of disproportionate remedy the *Allied-Signal* test exists to prevent.

The disruptive consequences extend directly to Intervenors and the millions of borrowers they represent. More than seven million borrowers were enrolled in the SAVE Final Rule. Tens of thousands are entitled to automatic loan discharge by operation of the Rule's terms — discharges that vested upon satisfaction of the qualifying payment thresholds and required no application or further agency action. For borrowers like Intervenors Havens and Robeson, vacatur does not merely delay relief, it eliminates discharges with specific effective dates that cannot be reconstructed after the fact, including dates that fall within the window of tax exclusion established by the American Rescue Plan Act through December 31, 2025. For borrowers like Intervenors Grunseth and Boykin, vacatur eliminates the IDR buyback provision foreclosing their ability to obtain credit for the nearly two years of involuntary forbearance the preliminary injunction imposed on them. These are concrete, irreversible harms that a remand without vacatur would avoid entirely.

Nothing in the record to suggest that the Court conducted any *Allied-Signal* analysis before entering the March 10 vacatur. The first instance that the Court even considered a remedy to the alleged APA violation was the Eighth Circuits reversal of this Court's initial dismissal. There is no explanation anywhere in the record to justify vacatur of the SAVE Final

Rule. This Court, in following the Eighth Circuit's direction, conducted no independent equitable analysis of its own. That failure is a manifest error of law requiring reconsideration.

## CONCLUSION

The Court's order vacating the SAVE Final Rule was a clear error of law warranting reconsideration and reversal. The only legally permissible solution that appropriately balances the equities of parties to this case and uninvolved third parties while providing the necessary finality is to remand the SAVE Final Rule without vacatur.

Date: March 13, 2026

Respectfully submitted,

*/s/ William Austin Hinkle*
William Austin Hinkle
Public Goods Practice LLP
1502 W 7th St.
STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com
313856(CA)

*Counsel for Intervenors*

**CERTIFICATE OF SERVICE**

I certify that on March 13, 2026, a true and accurate copy of the forgoing document was electronically filed through the Court's CM/ECF System and that a copy of the foregoing will be sent via email to all parties by operation of the Court's electronic filing system, consistent with Federal Rule of Civil Procedure 5(b).

*/s/ William Austin Hinkle*

*Counsel for Intervenors*