**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| STATE OF MISSOURI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*. | Case No. 4:24-cv-520-JAR |

## <u>OPPOSITION TO MOTION TO INTERVENE</u>

Movants asked to join this action three months after the parties settled it, and after entry of final judgment. ECF Nos. 104-105. If they are challenging the parties' request to vacate the SAVE Plan, intervention is untimely, as the parties filed that request three months ago. ECF No. 91 (filed Dec. 9, 2025). In fact, Movants were on notice that Defendants might seek a negotiated resolution of this case no later than May 2025, when the parties told the Court they were in settlement talks. ECF No. 70. If Movants are challenging this Court's order implementing the Eighth Circuit's order to grant the parties' request—and they are, *see* ECF Nos. 106-107—intervention is also futile, as the mandate rule requires district courts to follow directions from circuit courts. The Court should deny the motion to intervene on the merits and the motion for reconsideration as moot.

## BACKGROUND

On February 18, 2025, the Eighth Circuit issued its decision in *Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025). It directed this court to issue a universal preliminary injunction premised on the eventual availability of Administrative Procedure Act (APA) vacatur, explaining that under the APA, the "default remedy is to set aside or vacate the rule." *Id.* at 997. On April 11, 2025, the Eighth Circuit issued the mandate. ECF No. 68. Three days later, this Court issued the injunction. ECF No. 69.

The Court directed the parties to submit a joint status report "advising the Court of the outstanding matters in this case." *Id.* On May 5, 2025, the parties disclosed that they were discussing

1

"a negotiated resolution of this litigation." ECF No. 70. The deadline to file a cert petition expired two weeks later, on May 19. S. Ct. R. 13.1, 13.3. Defendants did not petition for cert. On August 4, 2025, the parties updated the Court that settlement discussions were ongoing. ECF No. 81.

On December 9, 2025, the parties told the Court that they had settled the case. ECF No. 91 (the Joint Motion). They reasoned that because the Eighth Circuit had issued a "precedential opinion" saying that the SAVE Plan violated its purported enabling statute, "further litigation on the merits would likely not serve any useful purpose." *See id.* at 2. They submitted a proposed final judgment, asking the Court to convert the preliminary injunction against the SAVE Plan Final Rule to a final order vacating most of that rule—including all aspects of the rule creating the SAVE Plan. *Id.* at 3.

On February 27, 2026, this Court dismissed the case as moot in lieu of entering the proposed final judgment. ECF Nos. 93-94. Plaintiffs sought a stay pending appeal. ECF Nos. 95-97; Emergency Motion for Stay Pending Appeal, No. 26-1394 (8th Cir. filed Mar. 5, 2026), Entry No. 5615320.

Three relevant events took place on Monday, March 9.

*First*, Movants filed suit in the U.S. District Court for the District of Columbia. *See Havens v. Department of Education*, No. 1:26-cv-816-LLA (D.D.C.). They alleged that by dismissing the *Missouri* lawsuit, this Court had thereby "dismissed" the preliminary injunction against the SAVE Plan; that as a result, the SAVE Plan Final Rule had automatically sprung back into effect; and that the Government was thereby required to reopen the SAVE Plan. Complaint ¶¶ 48, 114, *Havens*, ECF No. 1.

*Next*, the Plaintiff States notified the Eighth Circuit of Movants' demands and requested prompt intervention "to put the uncertainty of the SAVE Plan to rest." *See* Supplemental Authority under [FRAP] Rule 28(j), No. 26-1394 (8th Cir. filed Mar. 9, 2026), Entry No. 5616220.

*Finally*, the Eighth Circuit directed this Court to enter the parties' proposed final judgment vacating the SAVE Plan. ECF Nos. 100-101 (judgment and mandate). The next day, the Court issued the judgment and closed the case. ECF No. 102.

On March 13, the *Havens* plaintiffs moved to intervene in this now-closed action so they could move for reconsideration of this Court's March 10 order vacating the SAVE Plan. ECF Nos. 104,

107. The gravamen of the motion for reconsideration is that the Court lacked authority to vacate the SAVE Plan as directed by the Eighth Circuit without further factfinding, and that the Court should remand to the agency in lieu of vacatur. *See* ECF No. 106-1 at 6 ("[W]hat the Eighth Circuit directed was a manifest error of law," and "[t]he appropriate remedy … is remand without vacatur[.]").

## ARGUMENT

The Court should deny the motion to intervene for two reasons. *First*, the motion is untimely because it was filed after final judgment, in a case that is many years old, based on facts that had been publicly available for months. *Second*, the motion is futile because granting the motion for reconsideration would violate the mandate rule. Each deficiency independently precludes intervention. If the Court nonetheless grants leave to intervene, Defendants respectfully request the opportunity to present a full response to the motion for reconsideration on a 14-day briefing schedule.[1]

## I.      Intervention Is Untimely

"Federal Rule of Civil Procedure 24 permits intervention only '[o]n timely motion.' The timeliness of a motion to intervene is based on all the circumstances, including: '(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.'" *U.S. Bank Nat'l Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 869 (8th Cir. 2014) (citation omitted).

The proposed post-judgment intervention is untimely for at least the following two reasons:

### A.      Movants Knew (or Should Have Known) About the Status of This Litigation

"When a party had knowledge of all the facts … and failed to raise the issue when first presented with an opportunity to do so, subsequent intervention is untimely." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 833 (8th Cir. 2010). Here, Movants were on notice that Defendants were discussing a negotiated resolution of this lawsuit no later than March 5, 2025, when

---

[1] Technically, Defendants are not sure that they need to respond at all, because the Court has not ruled on the motions for leave to exceed the page limit. Defendants file this response out of an abundance of caution, as responses are generally due within 14 days. E.D. Mo. L.R. 4.01(b).

Defendants explicitly stated, in a public filing, that the parties were engaged in active settlement talks. ECF No. 70. (In fact, on July 21, 2025, one borrower openly voiced his suspicion that Defendants were changing position in this very action, when Taylor Story moved to intervene—a motion this Court denied without waiting for a response. *See* ECF Nos. 73-1 (moving),[2] 77 (denying).) At this time, Movants still had ample time to move to intervene. They did not.

At the very latest, Defendants' position on next steps in this litigation became crystal clear on December 9, 2025, when the parties announced a settlement and filed a joint motion for entry of final judgment in this Court. ECF No. 91. The Joint Motion was accompanied by extensive press coverage; a Department of Education press release;[3] and an op-ed in *The Wall Street Journal* jointly authored by Under Secretary of Education Nicholas Kent and Missouri Attorney General Catherine Hanaway.[4] The press release and op-ed were published the same day the parties filed the Joint Motion.

Movants frame their intervention as a challenge not to the Joint Motion, but to this Court's March 10 order on remand from the Eighth Circuit. That framing is wrong. Movants invite the Court to order further briefing and take evidence before ruling on the suitability of vacatur. ECF No. 105-1 at 15, 20-21. That request could and should have been raised at any point during the two months that this Court deliberated on the Joint Motion, which explicitly requested vacatur. Put differently, the motion for reconsideration's argument has nothing to do with this Court's order dismissing the case as moot, or the Eighth Circuit's reversal of that order. Its real target is the Joint Motion, filed last December—which Movants waited until this Court closed the case to challenge.

Movants note that the settlement agreement was not presented to the Court. ECF No. 105-1. That is irrelevant. The Joint Motion clearly disclosed the existence of the settlement agreement, and

---

[2] Story complained that there is "ample reason to believe the Government will abandon its defense of the SAVE Plan following the change of administration," and suggested that "Plaintiffs[] and the Government[] now share a common legal goal." ECF No. 73-1 at 22; *see also id.* at 24 (same).

[3] Press Release, "U.S. Department of Education Announces Agreement with Missouri to End Biden Administration's Illegal SAVE Plan," U.S. DEP'T OF EDUC. (Dec. 9, 2025), perma.cc/QBH5-7Y9P.

[4] Nicholas Kent and Catherine Hanaway, "The Era of Illegal Student Loan Forgiveness Is Over," WALL ST. J. (Dec. 9, 2025), https://www.wsj.com/opinion/the-era-of-illegal-student-loan-forgiveness-is-over-a5677b9a [version dated Dec. 10 archived at perma.cc/AB7W-XDK6].

the nature of the parties' requests for relief. ECF No. 91 at 1. (The Department also posted the settlement on its website.[5]) It just as clearly identified the key term of the agreement—that the Court should (in effect) convert its preliminary injunction into a permanent one through vacatur. *Id.* And the availability of APA vacatur is the centerpiece of Movants' motion for reconsideration.

Ultimately, it is "hard to believe" that Movants lacked notice of Defendants' position as of December 2025 at the very latest, "in light of the publication of the [agency's] decisions and the [borrowers'] presumably heightened awareness of and interest in [student loan] regulation issues." *Minnesota Milk Prods. Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998). If they did lack actual notice, then that is only because of their own failure to review publicly available information.

### B.      Late Intervention Would Prejudice the Parties

Unwinding a settlement that has already been implemented by final judgment prejudices the parties. *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011). Movants' position glosses over how much ink has been spilled over this case in the last several years. After years of contested litigation and multiple trips to the Eighth Circuit and the Supreme Court, these issues have been exhaustively worked over, and the parties reasonably concluded that further litigation "would likely not serve any useful purpose." ECF No. 91 at 2.[6]

### II.     Intervention Would Be Futile, as the *Havens* Plaintiffs' Motion for Reconsideration Would Be Barred by the Mandate Rule

A court may deny intervention for futility—even intervention as of right. *Haddley v. Isanti County*, 2015 WL 13697929, at *10 (D. Minn. Nov. 18, 2015) (collecting cases); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) (the intervenor must "allege a legally sufficient claim or defense"); *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 854, 858 (2d Cir. 1998) (affirming denial of intervention "on the ground of futility"); *see generally Solien for and on*

---

[5] Settlement Agreement, U.S. DEP'T OF EDUC. (Dec. 9, 2025), perma.cc/T32E-7CLZ.

[6] Movants also say there is no "prejudice" from a fresh round of "adversarial briefing on a judgment that was entered without any." ECF No. 105-1 at 20-21; *see also id.* at 15. But having to rebrief the case after the closing bell has rung is itself a form of prejudice. *Minnesota Milk Producers*, 153 F.3d at 646.

*behalf of NLRB v. Miscellaneous Drivers & Helpers Union, Local No. 610*, 440 F.2d 124, 132 (8th Cir. 1971) ("Intervention as of right presupposes that the applicant has a right to maintain a claim for the relief sought, a right which the charging parties clearly do not have.").

Here, the relief requested in the motion for reconsideration would entail the Eastern District of Missouri countermanding an express order of the Eighth Circuit. That is futile by definition. "Reconsidering" the order entering that judgment would defy the mandate rule, under which "[w]hen matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court." *Insurance Group Comm. v. Denver & R.G.W.R. Co.*, 329 U.S. 607, 612 (1947).

A.   **The Mandate Rule Prevents This Court from Second-Guessing the Eighth Circuit's Instructions**

An appellate decision binds a lower court on remand, including with respect to the scope of the remand. *Insurance Group Comm.*, 329 U.S. at 612; *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992) ("The sentencing court must [] adhere to any limitations imposed on its function at resentencing by the appellate court."); *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 870 (8th Cir. 2004) (trial court may not venture "beyond the scope of [a] limited remand").

Following those established principles, the Court did what the Eighth Circuit told it to do. Movants admit this over and over. ECF 106-1 at 5 (recognizing that this Court "complied with [the Eighth Circuit's] mandate"); *see also id.* at 6 (arguing that the Eighth Circuit committed "a manifest error of law"); *id.* at 13 (arguing that the Eighth Circuit's decision "rests on no identifiable legal foundation" and incorrectly failed to "instruct this Court to conduct any independent analysis"); *id.* at 5 (arguing that the Eighth Circuit pushed this Court into "implementing a legally deficient resolution"); *id.* at 21 ("This Court, in following the Eighth Circuit's direction, conducted no independent equitable analysis of its own. That failure is a manifest error of law requiring reconsideration.").

Based on these concessions, the motion for reconsideration is dead on arrival. Rule 59 allows a district court to "rectify *its own* mistakes in the period immediately following the entry of judgment." *Clayton v. DeJoy*, 2020 WL 7625010, at *1 (E.D. Mo. Dec. 22, 2020) (Ross, J.) (emphasis added) (quoting

*White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)). But a court may not "reconsider" a decision it had no discretion to make. There was nothing for this Court to consider on remand. The Eighth Circuit gave the Court specific instructions, and this Court followed them precisely.

Movants respond that the mandate rule does not compel vacatur because the Eighth Circuit's order did not address vacatur. ECF 106-1 at 7 (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). That is wrong. "[A] mandate is controlling as to matters within its compass[.]" *Sprague*, 307 U.S. at 168. The Eighth Circuit "directed [this Court] to enter the final judgment, as jointly requested by the parties." The parties requested vacatur. ECF Nos. 91, 100.

### B.      The Law of the Case Doctrine Does Not Permit a Different Result

Anticipating this response, Movants point to First Circuit decisions outlining when a district court may reconsider its past rulings on matters that are *not* decided by an appellate court. ECF 106-1 at 7. These cases say only that the law of the case doctrine allows a district court to reconsider a pre-appeal ruling that was not addressed on appeal. They do not suggest that a district court may second-guess a direct order from a circuit court. In fact, one of their cases directly refutes that contention:

> The "different evidence" exception to the law of the case doctrine does not apply when a trial court gratuitously jettisons the rule in order to address an issue explicitly decided, and foreclosed, in an earlier appeal in the same case. Any other outcome would severely undermine the efficacy of the doctrine. If, by the simple expedient of flaunting the law of the case, a trial court which should have deferred to an appellate court's resolution of an issue could proceed to address the issue anew, then the doctrine would disappear into thin air.

*United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991) (cited in ECF No. 106-1 at 7). This restates the rule that the Supreme Court described in *Sprague* back in 1939: a district court is "bound to carry the mandate of the upper court into execution and could not consider the questions which the mandate laid at rest." 307 U.S. at 168.

Movants' primary case, *United States v. Bell*, 988 F.2d 247 (1st Cir. 1993), is not to the contrary. There, the First Circuit stated in dicta that the mandate rule was not jurisdictional, so a trial court "may still possess some limited discretion to reopen the issue in very special situations." *Id.* at 251. The panel

focused on a trial court's ability to reexamine its own earlier decisions that the reviewing court did not touch. In that case, the First Circuit affirmed the trial court's refusal, on remand following reversal for a separate legal issue, to allow a defendant to withdraw his unappealed, pre-appeal concession that he had a record of prior convictions. *Id.* at 249-50. Citing (*inter alia*) Eighth Circuit authority, the panel emphasized that the first appeal had been limited to "the single issue that appellant chose to proffer" and that a remand "does not automatically rejuvenate the entire case." *Id.* at 250 (citing *Cornelius*, 968 F.2d at 706). Following these warnings against retreading old ground, the First Circuit noted that the mandate rule was not jurisdictional and could be sidestepped in three exceptional situations, which did not apply. *See id.* at 251-52.

The remaining First Circuit cases cited in the motion for reconsideration are equally inapplicable. *See* ECF 106-1 at 7. *Marin Piazza v. Aponte Roque*, 909 F.2d 35, 38 (1st Cir. 1990) addressed the same issue as *Bell*; *United States v. Rosen*, 929 F.2d 839, 842 n.5 (1st Cir. 1991) addressed whether a First Circuit panel was bound by a prior First Circuit panel on the same hearing (there were two panels because two co-defendants shared a suppression hearing but took separate appeals); and as previously discussed, *Rivera-Martinez* contradicts Movants' position.

At most, *Bell* suggests that under the law of the case doctrine, a district court may revisit an issue that (a) was not directly litigated on appeal, or (b) was "dramatically" undermined by intervening authority *after* the controlling appellate decision. 988 F.2d at 251; *Agostini v. Felton*, 521 U.S. 203, 236 (1997). Neither ground applies. The Eighth Circuit ordered this Court to enter the parties' requested judgment, and the Court did so. That ended this case.

## CONCLUSION

The Court should deny the motion to intervene on the merits and the motion for reconsideration as moot.

8

Date:    March 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Branch Director
Federal Programs Branch

*/s/ Winston Shi*
STEPHEN M. PEZZI (FL Bar No. 1041279)
Senior Trial Counsel
WINSTON SHI (NY Bar No. 5747068)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: 202-880-0387
Email: winston.g.shi@usdoj.gov

*Counsel for Defendants*

9